United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

```
3COM CORPORATION,                        No C 03-2177 VRW

        Plaintiff,                       ORDER

        v

D-LINK SYSTEMS, INC,

        Defendant,
_____

REALTEK SEMICONDUCTOR CORP,

        Intervenor
_____/
```

        Plaintiff 3Com Corporation (3Com) brought this suit alleging that two products of defendant D-Link Systems, Inc (D-Link) infringe three of 3Com's patents.  Doc #1 (Compl), ¶10.  D-Link now moves to strike 3Com's preliminary infringement contentions (PIC).  Doc #156.  Also, 3Com objects to a September 14, 2004, discovery order of Magistrate Judge Zimmerman and moves

to amend its PIC. Docs ##149, 175. A hearing was held on these matters on March 3, 2005. Based upon the parties' memoranda and arguments, as well as the applicable federal law, the court GRANTS D-Link's motion to strike, OVERRULES 3Com's objections, GRANTS IN PART 3Com's motion to amend and SANCTIONS 3Com pursuant to 28 USC § 1927.

I

On January 17, 2003, 3Com filed its infringement complaint against D-Link in the United States District Court for the District of Delaware. Doc #1. That court transferred the action to this court pursuant to 28 USC § 1404(a) on April 24, 2003, and the case was assigned to the undersigned. On November 17, 2003, pursuant to Pat L R 3-1, 3Com served its PIC on D-Link. Doc #157 (Morr Decl) Ex A. The PIC accused two specific D-Link products, DFE-530TX (530TX) and DFE-550TX (550TX), both a type of network interface card (NIC), of infringing three 3Com patents, namely United States patent Nos 5,434,872 ('872), 5,732,094 ('094) and 5,307,459 ('459). Id. Pursuant to Pat L R 3-1(c), 3Com attached a "[two-column] chart identifying specifically where each element of each asserted claim is found within each accused product of D-Link * * *." Id at 2, Appendix A. The first column listed the specific elements of the asserted claims of 3Com's three patents and the second column stated that "testing demonstrated that the processor included in the D-Link DFE-530TX and DFE-550TX is operable to * * *," followed by language that is virtually identical to the language of the claim itself. Realizing that this court has granted motions to strike a party's PIC when they "simply

2

1 mimic that language of the claim," <u>Network Caching Tech, LLC v
2 Novell, Inc</u>, 2002 US Dist LEXIS 26098, *18 (ND Cal 2002), D-Link
3 asserts that it considered bringing a motion to strike 3Com's PIC.
4 Doc #156 at 2.

5 Rather than moving to strike 3Com's PIC, however, D-Link
6 chose to "examine the alleged testing of the accused products, and
7 thus sought discovery of the testing" of 530TX and 550TX.  Id; Doc
8 #157 Ex B-D (Disc Req) (requesting 3Com provide to D-Link "[a]ll
9 documents and things relating to any 'testing' referred to in * * *
10 3Com's [PIC]."). 3Com objected to these production requests
11 stating that the requests "seek documents and things covered by the
12 attorney-client work privilege and/or work product immunity."  Id,
13 Ex E at 21.  3Com also asserted that D-Link's requests were "overly
14 broad," "unduly burdensome" and "[ir]relevant to any claim or
15 defense in this case."  Id.  Believing that where there is a
16 smokescreen there must be fire, on May 3, 2004, D-Link filed a two-
17 page letter requesting leave to file a motion to compel documents
18 and depositions regarding the underlying testing conducted by 3Com
19 on the 530TX and 550TX products.  Id, Ex G.  And so began the
20 melodrama that has plagued this case for almost a full year.

21 In response to D-Link's request, the court scheduled a
22 discovery hearing for May 20, 2004.  On May 19, 2004, the day
23 before the hearing, 3Com unexpectedly produced "responsive"
24 documents regarding its testing of the accused products.  Id, Ex H.
25 Not only were these documents heavily redacted (three full pages
26 are blank), but, more importantly, the documents are devoid of <u>any
27 reference</u> to 530TX and 550TX, much less any <u>testing</u> of these
28 accused products.  Id.  Rather, the documents related to the

3

testing of a product called "Realtek RTL8139C ASIC." Id at 1. No specific D-Link product was referenced in the documents.

At the hearing, after listening to both sides, the court stated that "[t]he issue is whether or not 3Com is required to disclose the tests that are referred to in the [PIC]." Id, Ex I (Transcript) at 18:2-4. The court invited further "guidance" on the issue, id at 11-12, and set a further discovery hearing for June 2004. The court's invitation prompted a flurry of memoranda. See Docs ## 90-110. Realtek Semiconductor Corporation (Realtek), realizing that testing had been done on its products and fearful that it was about to be accused of infringement, filed a motion to intervene. Doc #86. The undersigned, in the midst of a lengthy antitrust trial, referred the discovery issue to Magistrate Judge Zimmerman for prompt resolution pursuant to FRCP 72(a) and simultaneously granted Realtek's motion to intervene on June 23, 2004. Doc #108.

On June 30, 2004, Magistrate Judge Zimmerman held the first of two hearings on this discovery matter. Doc #114. From the transcript of the initial hearing, it is clear that Magistrate Judge Zimmerman became frustrated with 3Com's waffling on production of these testing documents. Speaking directly to 3Com's counsel, Magistrate Judge Zimmerman stated:

> This is why I am having trouble with your position. * * *. [Y]ou say in [your memorandum] that the testing documents that you used, which you say in your own [PIC] that you used [as] the basis for all of your infringement contentions, [that] the testing demonstrates that X, Y and Z happens.
> [But] you tell me that those documents are not relevant, they're not reasonably calculated to lead to the discovery of admissible evidence. You tell me that they're burdensome. You tell me that they're privileged and you tell me that they're immune from

4

> production because of work product. And I am sitting here thinking to myself, <u>how can any of those contentions be true if you injected [the testing documents] into [your PIC]</u>?
> And [now] you're standing up here * * * telling me there are no such documents. But I read your response, which is the only thing I have that's under oath, and it tells me that yes, you were trying to protect documents * * * which [are] the underpinnings to [the PIC]. What am I missing?
> Tr at 18:14-19:8 (emphasis added).

In the end, Magistrate Judge Zimmerman ordered 3Com to produce all "testing documents that [3Com] believe[s] are entitled to work product [privilege] that [were] used in creating [the PIC]." Tr at 23:16-18. Judge Zimmerman finished by stating: "[W]hat I will probably wind up ruling * * * is that when [3Com] used those testing documents, as you admit you have * * * to help construct [the PIC], I believe you waived [all privileges]." Tr at 23:25-24:4.

In response, 3Com produced the declaration of Chadwick Jackson (Jackson), the associate at Swidler Berlin (3Com's counsel at the time) who prepared the PIC at issue in this case. Doc #232 (Jackson Decl) at 2. Annexed to his declaration, Jackson included three exhibits, each consisting of several apparently exhaustive infringement charts. Id. The three exhibits were labeled J-2, J-3 and J-4. Id. Jackson represented to the court, under penalty of perjury, that "[n]o testing information other than that disclosed by Exhibit[s] [J-2, J-3 and J-4] was used for preparing the [PIC]." Id. Thus, pursuant to Magistrate Judge Zimmerman's order, 3Com represented that it had produced "all testing documents" that were used in preparing the PIC. Oddly enough, all three of these exhibits pertain to testing regarding D-Link products that contain a Realtek controller chipset (RTL 8139). Id. As mentioned above,

5

3Com, in response to D-Link's discovery letter to the court, produced some testing information that also referred to testing of the RTL 8139. Doc #157, Ex H. But it is undisputed that neither the 530TX or 550TX contains controller chipsets manufactured by Realtek; only the D-Link product called DFE-530TX+ (530TX+), a product not accused in the PIC, contains a Realtek controller chip. Id, Ex M (Lin Decl) at 2. In short, none of the testing documents produced by 3Com could form the basis for a PIC that accused the 530TX or 550TX, yet these were the products accused in 3COm's PIC filed on November 17, 2003. This incongruity became known to 3Com as early as June 10, 2004, via D-Link's response to Realtek's motion to intervene. Id, Ex N. In this response, D-Link states: "3Com filed [its PIC] * * * identifying only two products, the DFE-530TX and DFE-550TX [NICs], both of which contain components from manufacturers other than Realtek. * * *. <u>Realtek components are included only in the D-Link's DFE-530TX+ cards</u>." Id at 2 (emphasis added).

On September 1, 2004, the parties again appeared before Magistrate Judge Zimmerman to attempt to resolve their discovery dispute. Doc #146. At this hearing, an unamused Magistrate Judge Zimmerman repeatedly and pointedly asked 3Com whether it had tested the two products accused in the PIC or if, in fact, 3Com had tested the 530TX+. Rather than concede that the 530TX and 550TX had not been tested, 3Com first sought to downplay the importance of specifying individually accused products in a party's PIC. 3Com's counsel stated that even if 530TX+ was not specifically accused, the language used in the PIC was broad enough to capture a "family of products" made by D-Link and the dispute before the court was

simply a "nomenclature dispute." Doc #157, Ex Q (Transcript) at 3:9-13. In response, Magistrate Judge Zimmerman disagreed stating that specification was "the reason we have patent [local] rules," and chided 3Com for the "cavalier nature with which [it] treat[s] our local patent rules and the significance of [PIC]." Tr at 12:9-11. Magistrate Judge Zimmerman also hinted that 3Com's behavior was approaching the level warranting sanctions. Tr at 11:20-21 (stating that he did not doubt whether sanctions against 3Com were appropriate, the only issue was "what should the sanction be?").

Judge Zimmerman, again, directly asked 3Com: "And you have not tested – Dr Wang did not test the 550-TX * * * or the 530-TX * * *?" Tr at 17:22-24. Finally, left with no more wiggle room, 3Com's counsel conceded: "[Dr Wang] will tell you he <u>looked at</u> both of these products * * * but he did <u>not physically</u> * * * <u>put them on the test bench</u>." Tr at 18:1-4 (emphasis added).

Based upon these concessions, Magistrate Judge Zimmerman issued a discovery order dated September 14, 2004. First, Magistrate Judge Zimmerman found that 3Com's PIC "only accused two D-Link products: 530TX, which contains a chipset manufactured by VIA Technologies, and 550TX, which contains a chipset manufactured by IC+." Doc #147 (Dico Order) at 1-2. Moreover, Magistrate Judge Zimmerman found, as a matter of fact, that "prior to filing this lawsuit on January 7, 2003, and not withstanding the assertions in its [PIC], no testing had demonstrated that the two accused products infringe 3Com's patents." Doc #147 (Dico Order) at 2. Because he found that no such testing documents existed, Magistrate Judge Zimmerman denied D-Link's motion to compel the production of such documents. Id.

7

On September 28, 2004, 3Com filed objections to both of Magistrate Judge Zimmerman's findings of fact and asked that both findings be set aside as "contrary to law and clearly erroneous." Doc #152 at 1.  In light of Magistrate Judge Zimmerman's findings, on October 27, 2004, D-Link brought a motion to strike 3Com's PIC as insufficient under Pat L R 3-1(c).  Doc #156.  3Com opposes this motion.  Doc #205.  Finally, 3Com filed a motion to amend its PIC to include the 530TX+ product with the Realtek-manufactured controller chip.  Doc #175.  D-Link opposes this motion.  Doc #204.

Into this web of disputes, the court now enters.

II

The applicable standard of review for an objection to a magistrate's order turns on whether the order is dispositive or nondispositive.  FRCP 72(a)-(b).  If the magistrate's order is dispositive of a claim, the reviewing court must apply a *de novo* standard of review.  FRCP 72(b).  *De novo* review requires the court to "consider the matter anew, as if no decision had been rendered [by the magistrate]."  <u>United States v Silverman</u>, 861 F2d 571, 576 (9th Cir 1998).  With respect to nondispositive orders of a magistrate, the reviewing court applies a "clearly erroneous" standard of review.  FRCP 72(a).  Under this more deferential "clearly erroneous" standard, the reviewing court "must accept the [magistrate's order] unless, after reviewing the entire record, [the reviewing court] is 'left with the definite and firm conviction that a mistake has been made.'"  <u>Silverman</u>, 861 F2d at 577 (quoting <u>United States v United States Gypsum Co</u>, 333 US 364, 395 (1948)).  3Com concedes that the latter standard applies to

Magistrate Judge Zimmerman's September 14, 2004, discovery order.

3Com's objections are, in essence, procedural. 3Com believes that Magistrate Judge Zimmerman's "findings were outside the scope of the discovery dispute referred" to him. Doc #152 at 2. The following excerpt suffices to explain 3Com's position:

> The Magistrate Judge was asked to decide whether the testing described in [3Com's] [PIC] is discoverable. In order to resolve the issue, the Magistrate Judge appropriately asked 3Com to identify the documents that its counsel relied upon in preparing the [PIC]. 3Com not only identified all documents that its counsel relied upon * * * but also produced all testing documents that its counsel relied upon in preparing the [PIC]. The issue before the Magistrate Judge was thereby resolved and his denial of D-Link's motion to compel was therefore justified.
> Id at 5.

To call this summary of events warped is an understatement. According to 3Com, it completely and quickly complied with Magistrate Judge Zimmerman's requests (an assertion easily belied by the transcripts of the two hearings). Moreover, according to 3Com, Magistrate Judge Zimmerman denied D-Link's motion to compel after he reviewed the testing documents and determined they were subject to privilege. This is not what happened at all.

After 3Com expeditiously "produced all testing documents that its counsel relied upon" in drafting the [PIC], Magistrate Judge Zimmerman _correctly_ concluded that they did not contain _any_ information regarding testing of the two accused products; the documents clearly concerned testing of the 530TX+, a product that was not accused in the PIC. Magistrate Judge Zimmerman appropriately (and repeatedly) questioned 3Com's counsel whether there were any testing documents regarding the two accused

9

products.  Vague and elusive answers led Magistrate Judge Zimmerman bluntly to ask if 3Com had ever tested the two accused products, the answer to which was "no," the accused products had only been "looked at."

Accordingly, Magistrate Judge Zimmerman <u>accurately</u> determined which two products were specifically accused in the PIC pursuant to Pat L R 3-1:  530TX and 550TX.  This finding was necessary and fairly within the scope of the discovery dispute because to determine whether testing documents regarding the accused products were discoverable, Magistrate Judge Zimmerman had to determine which two products were actually accused (a inquiry which was necessitated by 3Com's continued attempts to expand the language of the PIC to capture more and more products).  The court also notes its agreement with Magistrate Judge Zimmerman's concern for the cavalier nature with which 3Com apparently views the local patent rules.  Two products were clearly accused in the PIC and 3Com cannot, consistent with Pat L R 3-1, attempt to capture new and non-accused D-Link products.

After determining which two products were being accused, Magistrate Judge Zimmerman came to the conclusion (based upon 3Com's concession no less) that these two products had never been tested and therefore there were no testing documents.  Because the documents did not exist, Magistrate Judge Zimmerman denied the motion to compel.  The fact that these documents did not exist served as the entire basis for denying the motion to compel, and thus this finding was also squarely within the scope of the discovery dispute referred to Magistrate Judge Zimmerman.

As for the factual findings themselves, after reviewing

10

1 the record, the court not only finds Magistrate Judge Zimmerman's
2 findings to be far from "clearly erroneous," but rather, his
3 findings appear to be completely accurate and well-supported by the
4 evidence.
5    Accordingly, 3Com's objections to Magistrate Judge
6 Zimmerman's discovery order and factual findings are OVERRULED.
7 The court adopts, in full, his findings.

## III

10    Having determined that 3Com conducted no testing on the
11 two accused products, the court next turns to D-Link's motion to
12 strike the PIC.  Doc #156.  D-Link's motion is quite
13 straightforward:  Because no testing of the accused product
14 occurred, the portion of the PIC stating that "testing
15 demonstrated" must be stricken.  Without this "testing," the PIC
16 provide no substantive information regarding 3Com's particular
17 theories of infringement and thus the PIC is insufficient under Pat
18 L R 3-1.  Id at 1-2.
19    In what can only be described as temerariousness, 3Com's
20 opposition backpedals and actually asserts that, in fact, it *did*
21 test the accused products.  Doc #205.  Without so much as a
22 reference to Magistrate Judge Zimmerman's findings or 3Com's
23 counsel's concession on the record to the contrary, 3Com asserts
24 that "prior to filing this case, 3Com tested both a 530TX [] and
25 550TX product."  Id at 2.  3Com's behavior touches the line, for if
26 this latest assertion is true, it is indisputable that, at some
27 point in this litigation, 3Com has lied about the testing of these
28 two accused products.  First, by serving its PIC, 3Com claimed it

11

**did test both of the accused products. Next, on the record before Magistrate Judge Zimmerman, 3Com admitted that no "physical testing" of these two products had occurred; the products had only been "looked at." Now, in attempting to avoid having the PIC stricken, 3Com contradicts itself and claims that the accused products were tested. Again, 3Com does not mention, much less attempt to explain its statements on the record or Magistrate Judge Zimmerman's findings to the contrary. Enough is enough. 3Com is judicially estopped from asserting that it tested the two products accused in the PIC.**

**"Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party form gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." Rissetto v Plumbers & Steamfitters Local 343, 94 F3d 597, 600 (9th Cir 1996). "It is an equitable doctrine 'intended to protect the integrity of the judicial process' by preventing a litigant from 'playing fast and loose with the courts.'" Ibrani v Mabetex Project Engineering, 2002 US Dist LEXIS 10016, *8 (ND Cal 2002) (Breyer, J) (quoting Russell v Rolfs, 893 F2d 1033, 1037 (9th Cir 1990)). "Judicial estoppel applies to a party's stated position whether it is an expression of intention, a statement of fact or a legal assertion." Wagner v Professional Engineering in California Gov't, 354 F3d 1036, 1044 (9th Cir 2004) (citation omitted).**

**As discussed above, at the September 14, 2004, hearing before Magistrate Judge Zimmerman, 3Com's lead counsel stated that although a 3Com engineer (Wang) "looked at both of these products * * * he did not physically * * * put them on the test bench." Tr at**

**12**

18:1-4. Moreover, the same counsel stated that he understood the "distinction between the positive testing" of a product and the mere "evaluation" of the product.  Tr at 20:2-4.

      Accordingly, the doctrine of judicial estoppel prevents 3Com from jettisoning its counsel's prior concessions and simply taking an inconsistent position that is more beneficial. Furthermore, Magistrate Judge Zimmerman has found, and 3Com has conceded and this court agrees, that no testing prior to the filing of this suit occurred regarding the 530TX and 550TX.  The only issue remaining is the effect this holding should have on the PIC.

      As the court recently stated, a PIC meets the "minimum level of detail" required by Pat L R 3-1 if the plaintiff performs a "reasonable prefiling inquiry."  Network Caching Technology, 2002 US Dist LEXIS 26098 at *12-13.  In order to perform a reasonable prefiling inquiry, "'[a law firm], at a bare minimum, [must] apply the claims of each and every patent that is being brought into the lawsuit to an accused device and conclude that there is a reasonable basis for a finding of infringement of at least one claim of each patent so asserted.'"  Id at *15 (quoting View Engineering, Inc v Robotic Vision Systems, Inc, 208 F3d 981, 986 (Fed Cir 2000) (emphasis in original)).  Similarly, in Antonious v Spalding & Evenflo Co, 275 F3d 1066, 1074 (Fed Cir 2002), the court held that a plaintiff must compare the accused device with the construed patent claims.  In doing so, the plaintiff's lawyer may not rely solely on his client's statements regarding infringement. Id.

      Based upon these well-established principles, it is clear that 3Com's PIC falls short of meeting the minimum requirements of

13

Pat L R 3-1.  First, 3Com's counsel admitted that 3Com merely "looked at" the 530TX and 550TX; it did not physically test these products at all, much less apply each and every patent to these accused devices.  Without such an examination, there can be no reasonable or good faith basis for a finding of infringement.

Moreover, 3Com states that "3Com informed its attorney [Jackson] that the DFE-530TX product was tested and [therefore] 3Com's attorney used this designation in preparing 3Com's PIC."  Doc #205 at 2.  Jackson admits that he conducted no independent investigation regarding whether 3Com had tested the 530TX rather than the 530TX+; he simply accepted 3Com's statement that the 530TX and 550TX were tested and he drafted the PIC based upon this information.  Doc #221 (Morr Reply Decl), Ex F at 27:1-13 (Jackson Depo).  3Com's statements alone, however, are not sufficient to meet the standards of Pat L R 3-1.  The claim charts examined by Jackson in drafting the PIC do not mention any D-Link products, much less specify products with certain chip controllers.  Accordingly, Jackson was under a duty to investigate and verify that the 530TX and 550TX had been tested against each and every patent before filing the PIC.  A mere promise by 3Com that it had examined these two products against their patents was insufficient.

The court concludes that 3Com and its counsel did not conduct a reasonable prefiling inquiry regarding the accused products in the PIC.  Accordingly, the court GRANTS D-Link's motion to strike the entire content of the PIC.

IV

Finally, the court turns to 3Com's motion for leave to

**14**

amend the PIC "to clarify that 3Com is accusing of infringement the 'DFE-530TX+' member of the DFE-530TX family." Doc #175 at 1. 3Com wants simply to append a "+" to every 530TX reference in the PIC. Moreover, "3Com believes that the non-inclusion of the "+" in the original [PIC] was a scrivener's error" that should not prohibit the court from granting leave, especially since D-Link was already on notice that the 530TX+ was infringing 3Com's three patents. Id at 3. Finally, the proposed amended PIC (PPIC), still accuses the 550TX of infringement and still asserts that "testing" occurred on the 550TX. Id, Ex A.

First, it would be futile to allow 3Com to amend its PIC to include accusations against the 550TX based upon alleged "testing," for the court has already held that 3Com is judicially estopped from claiming that testing ever occurred on the 550TX. See *supra* part III.

Next, the court turns to 3Com's assertion that a "scrivener's error" led 3Com to accuse the 530TX rather than the 530TX+. After 3Com filed its motion to amend based upon this supposed scrivener's error, D-Link took a FRCP 30(b)(6) deposition of 3Com to investigate the sum and substance of this "error." Doc #219 (Val Decl), Ex B (3Com Depo). At this deposition, D-Link specifically asked 3Com where the scrivener's error occurred and what result the error produced. Id at 45:1-3. 3Com asserted that the scrivener's error was that Dr Wang failed to include the specific D-Link product number (ie, 530TX versus 530TX+) in his "test report." Id at 46:9-11 ("When Chi-Lie prepared the [test report], he states 'testing on D-Link 10/100NIC,' but he did not specify the D-Link part number"). Thus, according to 3Com, if Dr

15

1  Wang had included the 530TX+ part number in his test report,
2  Chadwick Jackson would have correctly accused the 530TX+ in 3Com's
3  original PIC.
4        This cannot be true as a factual matter.  On July 16,
5  2004, Chadwick Jackson filed a declaration, Doc #125, under penalty
6  of perjury, that all "testing information * * * used for preparing
7  the [PIC]" was contained in the three exhibits attached to his
8  declaration, namely J-2, J-3 and J-4.  The court has combed through
9  every page of exhibits J-2, J-3 and J-4 and Dr Wang's test report
10 is not contained anywhere therein.  Thus, the document that
11 contains the so-called scrivener's error could not have caused
12 Jackson wrongly to accuse the 530TX; Jackson declares, under
13 penalty of perjury, that he did not use Dr Wang's report in
14 drafting the PIC.
15       Accordingly, either 3Com lied in its Rule 30(b)(6)
16 deposition when it stated that the scrivener's error was the
17 absence of the 530TX+ part number from Wang's report or Jackson
18 lied when he said he only relied on J-2, J-3 and J-4 in drafting
19 the PIC.  Either way, 3Com is relying on deception of one kind or
20 another to save its case.
21       The court has a working hypothesis about the facts
22 surrounding what really caused the inaccurate accusation against
23 the 530TX.  The exhibits relied upon Jackson, J-2, J-3 and J-4 all
24 are devoid of any reference to any D-Link product.  When Jackson
25 was drafting the PIC, he therefore must have been told orally by
26 someone at 3Com that Wang had been testing the 530TX and 550TX
27 products.  Rather than conduct an independent investigation as
28 required by Pat L R 3-1 and compare the accused product to each and

**16**

every claim of the patent, Jackson simply relied on 3Com's mistaken representations and thus wrongly accused the 530TX and 550TX.

In June 2004, when this mistake came to light, and D-Link sought discovery on this alleged testing, the law firm of Swidler Berlin naturally became anxious because one of its attorneys (Jackson) had not conducted an adequate prefiling inquiry and thus the PIC was clearly subject to being stricken. At this point, Swidler Berlin, along with 3Com, decided to conceal Jackson's error by (1) trying to withhold the documents which showed no testing had been done on the 530TX and 550TX and (2) trying to downplay the distinction between the two products by arguing that accusing the 530TX was good enough to capture the 530TX+. When Magistrate Judge Zimmerman rejected both arguments, 3Com and Swidler Berlin had no choice but to seek to amend the PIC.

Rather than admit the mistake made by Jackson and seek leave to amend in good faith, Swidler Berlin and 3Com have continued to represent that no mistake was made by Swidler Berlin or by Jackson. Indeed, Jackson still represents that he is "not aware of" any errors he made in drafting the PIC. Doc #234, Ex O (Jack Decl) at 41:23-25. Instead of accepting responsibility, Swidler Berlin represents that Dr Wang had made the scrivener's error by not including the 530TX+ part number in his test report. This cannot be true, and the court rejects it as a factual matter, because Jackson already stated that he did not rely on Dr Wang's test report in drafting the PIC.

Accordingly, the court is left with nothing but 3Com's misrepresentations and shifting positions. While the court understands that amending its PIC is the only way 3Com can continue

17

1 this litigation, the court is seriously troubled by the devices
2 3Com has employed throughout this litigation.  Misrepresentations
3 abound not only in this courtroom, but also before Magistrate Judge
4 Zimmerman.  These factors weigh heavily against a finding of good
5 cause in allowing 3Com to amend.  Allowing 3Com to amend, however,
6 would come as no surprise to D-Link or Realtek.  Both of these
7 parties knew as early as June 2003 that 3Com had tested the 530TX+.
8 In fact, D-Link repeatedly tried to inform 3Com of its mistake.
9 Moreover, Realtek was fully aware that its rights were being
10 implicated and thus it sought to intervene.  It appears that
11 everyone in this lawsuit knew exactly what was going on except
12 3Com, <u>the plaintiff</u>.  Moreover, this suit is still in its early
13 stages and no <u>Markman</u> hearing date has been set.
14         On the one hand, the court is left with a motion to amend
15 filed by a plaintiff that has demonstrated a pattern of deceptive
16 and inconsistent positions.  On the other hand, defendants have
17 been on notice of the real product at issue for almost a year.
18 After careful consideration, the court believes it has found an
19 appropriate compromise.
20         First, the court GRANTS IN PART 3Com's motion to amend
21 its PIC.  3Com's amended PIC may accuse <u>only</u> the 530TX+ product.
22 Moreover, assuming 3Com prevails on its infringement action, it may
23 only recover damages from the date of filing its amended PIC; any
24 damages that accrued in the past or during the period of 3Com's
25 deceptive maneuvers have been lost based upon 3Com's inequitable
26 conduct.  Finally, the court (like Magistrate Judge Zimmerman)
27 believes that 3Com's behavior warrants sanctions.
28         "Any * * * person * * * who so multiplies the

**18**

proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 USC § 1927. As this court has stated: The purpose of § 1927 is "to deter attorney's from multiplying legal proceedings unnecessarily, and to compensate attorneys forced to endure such proceedings." <u>Winfield v Beverly Enterprises</u>, 1994 US Dist LEXIS 2855, *10 (ND Cal 1994) (Walker, J). Sanctioning a party under § 1927 requires a "finding of recklessness or bad faith." <u>Barber v Miller</u>, 146 F3d 707, 711 (9th Cir 1998). "Bad faith is present when a [party] knowingly or recklessly raises a frivolous argument." <u>Estate of Blas v Winkler</u>, 792 F2d 858, 860 (9th Cir 1986).

As early as June 10, 2004, D-Link informed 3Com that it had accused the wrong products. See *supra* Part I. As discussed above, however, 3Com and its counsel refused to admit that such a mistake had been made. Instead, 3Com chose to attempt to hide its mistake through prolonged and deceptive discovery practices that in the end proved fruitless, for 3Com ultimately moved to amend its PIC. The court concludes that the tactics employed by 3Com over the last year were done in bad faith and unreasonably and vexatiously multiplied the proceedings in this case; § 1927 sanctions are appropriate.

Accordingly, D-Link should file its request for attorneys' fees and costs reasonably incurred in (1) preparing for and attending both discovery proceedings before Magistrate Judge Zimmerman, (2) defending against 3Com's motion to amend its PIC and (3) attending the March 3, 2005, hearing. This request should be

**19**

supported by a declaration containing a detailed billing record and in accordance with the principles set forth in <u>In re HPL Technologies, Inc, Securities Litigation</u>, 2005 US Dist LEXIS 7244 (ND Cal 2005) (Walker, J). D-Link's request should be filed on or before May 20, 2005.

Upon payment of any sanctions awarded to D-Link by the court, 3Com may file its amended PIC.

V

In sum, the court OVERRULES 3Com's objections to Magistrate Judge Zimmerman's September 14, 2004, discovery order (Doc #152) and GRANTS D-Link's motion to strike 3Com's PIC (Doc #156). 3Com's motion to amend is GRANTED IN PART (Doc #175) and the filing of an amended PIC is expressly conditioned upon payment of any sanctions awarded to D-Link under § 1927.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge