IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 3COM CORP, | No C 03-2177 VRW |
| Plaintiff, | ORDER |
| v | |
| D-LINK SYSTEMS, INC, | |
| Defendant, | |
| _____ | |
| REALTEK SEMICONDUCTOR CORP, | |
| Intervenor. | |
| _____/ | |

   Plaintiff 3Com Corporation (3Com) brought this suit alleging that two products of defendant D-Link Systems, Inc (D-Link) infringe three of 3Com's patents. Doc #1, ¶10. Realtek Semiconductor Corporation (Realtek) later intervened. Doc #108. 3Com also alleges that Realtek infringes seven 3Com patents. Doc #120. In the first two years of this case, the undersigned judge

and Magistrate Judge Zimmerman dealt with myriad disputes related to 3Com's seriously troubling conduct. The current dispute relates to Realtek's motion to strike 3Com's amended preliminary infringement contentions (PICs), which reference products not accused in 3Com's original PICs. Magistrate Judge Zimmerman denied Realtek's motion. Doc #286. Realtek subsequently filed a motion in this court objecting to Magistrate Judge Zimmerman's ruling. Doc #295. The court vacated Magistrate Judge Zimmerman's ruling and ordered 3Com to show cause "why Realtek products not named in 3Com's original preliminary infringement contentions should not be stricken in light of (1) Pat L R 3-7, (2) 3Com's representations to the court during the further case management conference held on June 21, 2005, and (3) the understandings of the parties and their counsel when drafting the stipulated proposed discovery order, Doc #269." Doc #306. 3Com has now responded to the order to show cause and opposes Realtek's motion to strike. Doc #316. For the reasons that follow, the court DENIES Realtek's motion to strike.

I

On January 17, 2003, 3Com filed its infringement complaint against D-Link in the United States District Court for the District of Delaware. Doc #1. That court transferred the action to this court pursuant to 28 USC § 1404(a) on April 24, 2003, and the case was assigned to the undersigned. On November 17, 2003, pursuant to Pat L R 3-1, 3Com served its PICs on D-Link. Doc #157 (Morr Decl) Ex A. The PICs accused two specific D-Link products, DFE-530TX (530TX) and DFE-550TX (550TX), both a type of network interface card (NIC), of infringing three 3Com patents,

2

namely United States patent Nos 5,434,872 ('872), 5,732,094 ('094) and 5,307,459 ('459). Id. Pursuant to Pat L R 3-1(c), 3Com attached a "[two-column] chart identifying specifically where each element of each asserted claim is found within each accused product of D-Link * * *." Id at 2, Appendix A. The first column listed the specific elements of the asserted claims of 3Com's three patents, and the second column stated that "testing demonstrated that the processor included in the D-Link DFE-530TX and DFE-550TX is operable to * * *," followed by language that is virtually identical to the language of the claim itself. In due course, D-Link moved to strike 3Com's PICs, and 3Com opposed. Docs ##156, 205. In addition, 3Com moved to amend its PICs, and D-Link opposed. Docs ##175, 204.

Realtek intervened in the case on June 23, 2004. Doc #108. In 3Com's answer to Realtek's complaint requesting declaratory judgment, 3Com accused Realtek of infringing seven of 3Com's patents, including the patents asserted against D-Link (the '459, '872 and '094 patents) as well as United States patent Nos 6,115,776 ('776), 6,327,625 ('625), 6,526,446 ('446) and 6,570,884 ('884). Docs ##108, 120. 3Com served Realtek with PICs on January 14, 2005 (the "original PICs"). The PICs served on Realtek were similar to the PICs served on D-Link, but the PICs against Realtek did not include the assertion that "testing" was conducted. Doc #296 (Rader Decl) Ex B. Realtek wrote the court to complain that the original PICs were insufficient. Id, Ex C.

On May 5, 2005, the court issued an order (the "May 5 order"). Doc #251. The May 5 order granted D-Link's motion to strike 3Com's PICs. Id at 14. The court also granted 3Com's

3

motion to amend its PICs <u>in part</u>. Id at 18.  3Com was permitted to amend its PICs to accuse the 530TX+ product (which happened to contain a Realtek chipset) and no others.  Id.  Finally, the court sanctioned 3Com pursuant to 28 USC § 1927.  Id at 20.  Realtek, however, was not substantively involved in the motions related to the May 5 order.  See Docs ##156, 175, 204 and 205.  To be sure, the PICs at issue in the May 5 order were the PICs 3Com served on D-Link before Realtek intervened.  The court summarizes the May 5 order because its analysis is relevant to the discussion below.

        3Com's PICs against D-Link asserted that 3Com had tested the 530TX and 550TX when it had not.  3Com's claim that "testing demonstrated * * *" led D-Link to seek discovery on the alleged testing.  Doc #251 at 3.  3Com attempted to hide its lack of testing in two ways.  First, in one maneuver, 3Com heavily resisted discovery of the testing information.  Id at 3.  Pursuant to Magistrate Judge Zimmerman's order, 3Com eventually produced three documents that were represented to be the <u>only</u> documents relied upon in preparing the PICs against D-Link.  Id at 5.  But the documents did not relate to either the 530TX or the 550TX.  Id at 5-6.  Instead, 3Com had tested a D-Link product, the 530TX+ that contained a Realtek RTL8139 chipset.  Id.  Second, when faced with the correct finding that 3Com had not tested either the 530TX or 550TX (in fact, 3Com admitted this to Magistrate Judge Zimmerman), 3Com tried to downplay the differences between the 530TX and the 530TX+.  Id at 7.  Magistrate Judge Zimmerman rejected the argument that the 530TX "family of products" was broad enough to capture the 530TX+.  Id at 6.

\\

In short, the court struck 3Com's PICs because the only products accused in the PICs were the 530TX and the 550TX. 3Com, by accusing these two products, did not accuse the 530TX+. Since no testing had been conducted on the accused products (i e, the 530TX and 550TX), all references to "testing demonstrated" were struck. Id at 11. The court struck the remainder of the PICs served on D-Link because 3Com did not otherwise conduct a "reasonable prefiling inquiry." Id at 14.

Only when 3Com's improper actions failed did 3Com admit its mistake and move to amend it PICs to accuse the correct product. Id at 17. Accordingly, the court next examined 3Com's motion for leave to amend. The court rejected 3Com's "scrivener's error" argument because, as a factual matter, that argument necessitated the conclusion that either 3Com lied in its Rule 30(b)(6) deposition or 3Com's counsel lied in representing what documents he relied upon in preparing the PICs. Id at 16. Left with "nothing but 3Com's misrepresentations and shifting positions," the court weighed this "heavily against a finding of good cause" to amend. Id at 18. On the other hand, because D-Link and Realtek were fully aware, as of June 2003, that 3Com had tested the D-Link 530TX+ (and hence the Realtek RTL8139), neither party could claim surprise. Id. The court also relied on the fact that the suit was "in its early stages and no <u>Markman</u> hearing date has been set." Id. The court concluded that a compromise was appropriate: 3Com could amend its PICs to accuse the 530TX+ only, and the damage period would be truncated. Id. Following the May 5 order, 3Com retained new counsel. From this point, the current dispute takes shape.

5

In mid-June 2005, the parties (including 3Com's new counsel) conferred, tentatively agreed on a joint schedule and filed a joint discovery schedule and proposed order.  Doc #269.  An email chain was generated from the parties' efforts to reach a joint agreement.  See Doc #317 (Gutman Decl), Exs N-S.  A case management conference was held on June 21, 2005.  Doc #271.  Then, on September 16, 2005, 3Com served Realtek with its amended PICs in accordance with the joint schedule.  These amended PICs accused products not identified in the original PICs.  Subsequently, Realtek and 3Com exchanged several letters regarding the substance of the amended PICs and the addition of new products to the amended PICs.  Realtek alleged non-compliance with Pat L R 3-1(c) and 3-2(b), and the court referred the dispute to Magistrate Judge Zimmerman.  Docs ##275, 277.  Through no fault of his own, Magistrate Judge Zimmerman addressed whether the newly accused products should be stricken, which was outside the scope of the matters referred.  Docs ##286, 306.  Accordingly, the court vacated Magistrate Judge Zimmerman's order denying Realtek's motion to strike.  Doc #306.  Additionally, the court ordered 3Com to show cause why the newly accused Realtek products should not be stricken.  Id.

The issue here is whether 3Com's amended PICs against Realtek, which accuse Realtek products not identified in the original PICs, should be stricken.

II

Whether 3Com's amended PICs accusing new products should be stricken depends on two questions:  (1) As required by Pat L R

6

3-7, did 3Com have leave to amend its original PICs against Realtek?  (2) If yes, what was the scope of 3Com's leave to amend given the understanding of the parties and their counsel when drafting the stipulated proposed discovery order (Doc #269), and given 3Com's representations to the court at the June 21 case management conference?

### A

The first question can be disposed of easily.  Under the patent local rules, there are only two ways to amend PICs.  One is not applicable here.  Pat L R 3-6 (allowing certain amendments after a claim construction ruling or after documents are produced under Pat L R 3-4).  The other is by leave of court.  Pat L R 3-7.  It is clear that both Realtek and D-Link agreed to permit 3Com to amend its PICs.  The court approved this at the June 21 case management conference.  Accordingly, 3Com was permitted by the court, as well as by Realtek and D-Link, to amend its PICs.

### B

This brings the court to the second question concerning the scope of the amendments permitted.  Resolving this question requires examining three issues:  (1) the effect of the May 5 order on 3Com's ability to amend PICs <u>as to Realtek</u>; (2) whether there was any agreement, beyond the May 5 order, that limited 3Com's ability to add products not accused in the original PICs <u>against Realtek</u>; and (3) whether the court would have found good cause to grant leave, had 3Com explicitly moved for leave to amend in the summer of 2005.

1

For the following reasons, the court finds that the May 5 order did not limit 3Com's ability to amend its PICs against Realtek. First, the May 5 order addressed PICs served on D-Link in November 2003, before Realtek intervened in this case. Doc #251. The May 5 order did not address 3Com's PICs served on Realtek in January 2005. Id. Once Realtek intervened, it did not participate in the motions that concluded with the May 5 order. Also, some of D-Link's arguments supporting its motion to strike 3Com's PICs were predicated on the ability to pursue Realtek, the party whose product had been tested. Further, none of the D-Link products excluded by the May 5 order contained a Realtek chipset. The one D-Link product that 3Com was allowed to add in its amended PICs *did* contain a Realtek chipset. Finally, while some of the claims and patents asserted against D-Link and Realtek overlap, the two sets of patents are substantially different. All of these reasons lead the court to conclude that the May 5 order, on its face, did not limit 3Com amending vis-a-vis Realtek.

Second, 3Com's original PICs against Realtek did not contain the incorrect statement "testing demonstrated." It was these words, included in 3Com's PICs against D-Link, that were the subject of so much controversy. The May 5 order was a result of 3Com's troubling conduct around both the testing assertion and its attempts to conceal the fact that no accused products had been tested. This course of conduct started before Realtek intervened in the case and was largely related to the false and misleading testing assertion.

\\

Realtek states that the PICs served on Realtek were nearly identical to those served on D-Link with the exception of the "testing demonstrated" language, and therefore should be stricken for the same reason. Doc #295 at 7. Realtek understates the significance of the distinction. The testing assertion, and disputes related to it, were the "factors weigh[ing] heavily against a finding of good cause in allowing 3Com to amend" and the basis for striking 3Com's PICs. Doc #251 at 18. This false assertion was not made against Realtek. The court finds that the testing assertion in the PICs against D-Link, and lack thereof in the PICs against Realtek, make the two sets of PICs significantly different. Accordingly, the court rejects Realtek's argument that the PICs, as to D-Link and Realtek, were subject to being stricken for the same reasons.

Third, rather than admit its mistake and seek leave to amend its PICs at the appropriate time, 3Com prolonged its deception and made blatant misrepresentations to the court regarding the testing assertion. Id at 17. 3Com was punished for its behavior. This "pattern of deceptive and inconsistent positions" led the court to strike 3Com's PICs, allow only limited amendments to the PICs and impose a significant monetary sanction. Id at 18. In doling out 3Com's punishment, the court did not address <u>any matter</u> as between 3Com and Realtek. With respect to Realtek, 3Com has attempted to fix the mistakes within a reasonable time after serving its original PICs on Realtek. 3Com's deficiencies in its original PICs against Realtek are much less severe because 3Com did not falsely claim testing had been conducted and did not embark on a course of deception regarding

9

non-existent testing. For these additional reasons, the issues addressed in the May 5 order differ from the current issues between 3Com and Realtek.

In sum, the May 5 order did not limit 3Com's ability to amend its PICs against Realtek to accuse new products.

2

Next the court must determine whether there was an agreement or understanding between the parties regarding limitations on 3Com's leave to amend its PICs. Realtek argues that there was an understanding that 3Com would amend its PICs only to the extent required to bring the PICs into compliance with the patent local rules and not to accuse additional Realtek products. Clearly, 3Com is limited as to D-Link by both the May 5 order and an explicit agreement. 3Com admits this. Docs ##251, 269, 316 and 317 Ex R. But 3Com denies any such limitation exists as to Realtek. Doc #316 at 5. There are two possible sources for finding such an agreement between 3Com and Realtek: (1) the June 10-13 email chain related to the proposed discovery schedule (Doc #269); and (2) the June 21 case management conference. Not surprisingly, the parties characterize these two sources differently.

The court takes the email chain up first. Following a conference on the subject, counsel for 3Com, D-Link and Realtek finalized the parties' proposed joint discovery schedule by email between June 10 and June 13. Realtek argues that the emails show an agreement that 3Com was permitted to amend its PICs only to the extent required to conform the PICs to Pat L R 3-1, and not to

10

accuse additional products. Doc #295 at 4-5, 7 and 9. The court disagrees and declines to find an "agreement" from these emails for the following reasons.

The first email was sent by 3Com to D-Link and Realtek on Friday, June 10, in the afternoon. Doc #317 (Gutman Decl) Ex N. Realtek quickly responded that it "looks very close" and mentioned only minor changes regarding dates. Id, Ex O. Shortly thereafter, 3Com amended the dates to conform to Realtek's request. Id, Ex P. Then, Realtek approved the changes and stated that all that was needed was confirmation from D-Link. Id, Ex Q. D-Link chimed in later that evening to clarify that 3Com was not permitted to make any amendments to the PICs that were inconsistent with the May 5 order. Id, Ex R. D-Link made several proposed revisions to the joint discovery schedule and proposed order. Id. "This is fine with Realtek," Realtek responded. Doc #318 (Gutman Decl) Ex S. 3Com's counsel did not agree with the language of the revision on Friday evening, but on Monday D-Link and 3Com agreed to the phrase, "[a]ll amendments are subject to the requirements of the Patent Local Rules and the orders of the Court." Id. Realtek accepted this change as well. Id.

Realtek effectively approved the joint discovery schedule and proposed order before D-Link raised any questions about the scope of the allowed amendments. It is clear that D-Link was clarifying and emphasizing that D-Link was not acquiescing to any amendment by 3Com that was inconsistent with the May 5 order. The extent of Realtek's involvement in these clarifications was "That is fine with Realtek" and "Great." The court finds it difficult to see an "agreement" as between 3Com and Realtek when Realtek agreed

11

to the language before the question of scope was raised by D-Link, and when Realtek's contribution to the discussion was so limited. The email chain, specifically D-Link's proposed redlines (Doc #317 (Gutman Decl) Ex R), does raise the question whether 3Com should have been extraordinarily cautious and specifically requested leave to amend to accuse additional products under Pat L R 3-7.  The email chain does not, however, rise to the level of an agreement between 3Com and Realtek.

      The second source of disagreement between 3Com and Realtek involves the June 21 case management conference.  Realtek states that 3Com "expressly" and "in open court" agreed that it would only amend its PICs to comply with the patent local rules. Doc #295 at 5.  3Com disputes this "open court" agreement. Interestingly, Realtek did not submit the transcript as an exhibit to show this purported express, open court agreement.  Doc #296 (Rader Decl) at 3.  The court has reviewed the transcript.  Doc #317 (Gutman Decl) Ex B.  Again, the statements made at the case management conference hardly support an <u>agreement</u> between 3Com and Realtek.  At best the transcript indicates a wash.  Mr Gutman, 3Com's counsel, stated that 3Com would not only amend the PICs against D-Link in accordance with the May 5 order, but 3Com would be amending its PICs against Realtek.  Id at 4.

      It would not have been possible, however, at the time of the case management conference for 3Com to know that it would accuse new products in its amended PICs because 3Com's new counsel had not yet conducted due diligence.  3Com admits this.  Doc #316 at 4.  This again raises the question of whether 3Com should have been extraordinarily cautious and should have formally requested

United States District Court
For the Northern District of California

leave to amend when it discovered that new products were potentially infringing. Even so, 3Com's representations at the case management conference are not enough to show some kind of "express" agreement between 3Com and Realtek that 3Com would not accuse new products.

Also, the court notes that its conclusion that the email chain and the case management conference did not evidence some type of agreement is bolstered by Realtek's letters to 3Com sent after Realtek was served with the amended PICs, Realtek's November 15 letter to the court and Realtek's arguments to Magistrate Judge Zimmerman. Realtek's letter of October 5 does not object to the addition of new accused products, rather it complains that the substance of the PICs does not satisfy Pat L R 3-1. Doc #317 (Gutman Decl) Ex I. Further, the letter states nothing about the May 5 order or any agreement. Id. Realtek's letter of October 20 is similar in that there is no objection to additional accused products, no mention of the effect of the May 5 order as to Realtek and no allegation of any breached agreement. Id, Ex J. The first objection to the addition of new accused products came in Realtek's October 31 letter to 3Com. Id, Ex K. The objection was based on the May 5 order. Id. But still, no reference was made to any agreement. The same is true of Realtek's November 15 letter to the court. Id, Ex L.

The court does not hold that Realtek waived its objections to the addition of new products by failing to object or make arguments related to the May 5 order and any "agreement." The court, however, notes that the lack of objection and argument reinforces the court's conclusion that there was no such agreement

13

and Realtek did not understand the May 5 order as binding on 3Com at the time of the emails and case management conference.

3

While, as discussed above, the May 5 order did not limit 3Com's ability to amend its PICs against Realtek and the court does not find any "agreement" that 3Com would not accuse additional Realtek products, the court does not agree fully with 3Com either. That is, it is not readily apparent that Realtek opened itself up unconditionally to amendments. 3Com states that, at the June 21 case management conference, "counsel for 3Com did not know which Realtek products would be accused in the Amended PICS." Doc #316 at 4. Accordingly, it is not certain that Realtek agreed to grant leave with no conditions attached. Further, as noted above, there is a question whether 3Com should have been extraordinarily cautious regarding the scope of its leave to amend – especially given the conduct of prior counsel. For completeness, the court examines whether 3Com has "good cause" to amend as required by Pat L R 3-7. For the reasons that follow, the court finds that 3Com has good cause.

First, the timing of the amendments supports finding good cause. It is worth noting that Pat L R 3-1 is titled "Disclosure of Asserted Claims and <u>Preliminary</u> Infringement Contentions." "While the Court recognizes that the Patent Local Rules are intended to force patent owners to finalize their contentions early, preliminary infringement contentions are still preliminary." <u>General Atomics v Axis-Shield ASA</u>, 2006 WL 2329464, 2 (ND Cal 2006). Good cause is clearly a flexible standard. In the context

14

of the patent local rules, setting too high a bar for good cause would have the consequence of eliminating the distinction between <u>preliminary</u> contentions and <u>final</u> contentions.  Here, the amendments came before any motions were made regarding the PICs, before a <u>Markman</u> hearing and before the close of discovery.  It is to be expected that a patent holder may find other product designations that infringe as discovery progresses.

Second, the additional accused products appear to be substantially similar to the original accused products.  As the briefing on this subject is limited, the court reaches this conclusion assuming, but without determining whether, the new products accused in the amended PICs are merely more detailed listings of the originally accused products with substantially similar functionality.  3Com has not added any patents or any claims to its amended PICs.  This is consistent with discovering new product number designations of products with substantially similar functionality.

Further, 3Com explicitly stated that the products listed in the original PICs were those "currently known" and would later amend to include additional "chip designations."  Doc #317 (Gutman Decl) Ex F.  While "a party cannot unilaterally amend the Patent Local Rules" by inserting boilerplate language in its PICs, it is consistent with the rules to allow amended PICs to accuse products which represent a more detailed listing of products initially known.  <u>Berger v Rossignol Ski Co, Inc</u>, 2006 WL 1095914, 4 (ND Cal 2006).  This is especially true when the PICs in question are directed at an intervening party and when the intervention occurs in the midst of a lengthy dispute.  Although the lengthy dispute

15

between 3Com and D-Link was caused by 3Com's improper conduct, the court does not believe 3Com is benefitting from its wrongful conduct, as alleged by Realtek.

Third, there is no undue prejudice to Realtek. Absence of a product's name or number is not a covenant not to sue for infringement. This is especially true if a defendant is put on notice by the naming of several products within a line of products possessing similar functionality. Realtek has not presented any evidence that it changed manufacture, sales or distribution with respect to the products originally accused, so there is no reason to infer that Realtek relied on 3Com's original PICs for business decisions in the nine month period between January and September of 2005. The fact that certain, more detailed product numbers were not included in the original PICs would not constitute a defense in a separate infringement action.

The court also notes that judicial economy supports allowing the amendment at this stage of the litigation. Finally, Realtek is getting a second shot at its preliminary invalidity contentions. Realtek has taken this opportunity to add invalidity arguments and prior art references.

Accordingly, the court finds that 3Com had and – due to the parties' misunderstanding, now has – good cause to amend its PICs.

\\
\\
\\
\\
\\

### III

For the reasons discussed above, the court DENIES Realtek's motion to strike.

IT IS SO ORDERED.

VAUGHN R WALKER

United States District Chief Judge