**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT
9          FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11   3COM CORP,                           No    C   03-2177   VRW
12          Plaintiff,                          ORDER
13
14          v
15   D-LINK SYSTEMS, INC,
16          Defendant,
17   _____
18
19   REALTEK SEMICONDUCTOR CORP,
20          Intervenor.
     _____/
21
22
23          Plaintiff 3Com Corporation (3Com) brought this suit
24   alleging that two products of defendant D-Link Systems, Inc (D-
25   Link) infringe three of 3Com's patents:  United States patents
26   5,434,872, 5,732,094 and 5,307,459.  Doc #1, ¶10.  Realtek
27   Semiconductor Corporation (Realtek) later intervened.  Doc #108.
28   3Com also alleges that Realtek infringes seven 3Com patents

United States District Court
For the Northern District of California

including the patents asserted against D-Link as well as United States patents 6,115,776, 6,327,625, 6,526,446 and 6,570,884.  Docs ##108, 120.  United States patent 6,115,776 was subsequently dropped from this case.  3Com and D-Link have since settled claims in this action, leaving Realtek as the sole defendant.  Doc #108. D-Link remains a party to the 05-0098 case.

Here, the court addresses four discovery disputes between 3Com and Realtek raised by 3Com in its letter brief of February 15, 2007.  Doc #378.

I

Every patent in this litigation relates to network interface technology, which facilitates the transfer of data between a host device (such as a personal computer) and a network. Data transferred between the host and a network must first be formatted into data "packets" or "frames," which are bits of data that have been packaged for transmission according to standardized network protocols.  Network interface devices that are the subject of the patents contain buffer memory for temporarily storing packets that are being received from the host and transmitted to a network (or vice versa).  Realtek designs chips which are used in certain network interface cards.  As the court writes principally for the parties, it will not further discuss the details of the inventions.

As a preliminary matter, Realtek's position in a previous motion was that only five products (the products accused in the January 14, 2005 PICs) were properly in the case and that the court should strike 3Com's amended PICs, which accuse new products.  Doc

United States District Court

For the Northern District of California

#295.  The court has since denied Realtek's motion to strike.  Doc #390.  In several of the disputes below, Realtek has not produced information related to – or its Rule 30(b)(6) witnesses were not prepared to testify about – all the products accused in the amended PICs.  Accordingly, to the extent that Realtek has not produced the requested information for all accused products, and instead limited its production to the five products originally accused, the court ORDERS Realtek to produce information for the additional products.

II

The court visits the remaining issues in turn.  First, 3Com asserts that Realtek has not produced all versions of the relevant source code.  Doc #378 at 1-3.  Second, 3Com asserts that Realtek has not produced technical information related to the internal design of Realtek's chips.  Id at 3-4.  Third, 3Com seeks Realtek's financial information in a more detailed form than Realtek has thus far provided.  Id at 4-8.  Fourth, 3Com complains that Realtek's 30(b)(6) witnesses were inadequate and seeks sanctions.  Id at 8-10.  Realtek opposes 3Com's requests.  Doc #383.

Relevancy, for the purposes of discovery, is defined broadly, although it is not without "ultimate and necessary boundaries."  Hickman v Taylor, 329 US 495, 507 (1947).  "Once an objection to the relevance of the information sought is raised, the burden shifts to the party seeking the information to demonstrate that the requests are relevant to the subject matter involved in the pending action."  Allen v Howmedica Leibinger, Inc, 190 FRD 518, 522 (WD Tenn 1999), citing Andritz Sprout- Bauer, Inc v Beazer

United States District Court
For the Northern District of California

East, Inc, 174 FRD 609, 631 (MD Pa 1997).  Appropriate discovery includes, of course, inspection of "any designated documents * * * which are in the possession, custody or control of the party upon whom the request is served."  See FRCP 34(a)(1).  With these basic and well-known tenets in mind, the court addresses 3Com's specific discovery requests.

A

Source Code

On February 14, 2006, the undersigned ordered Realtek to produce source code for the Realtek products at issue.  Doc #320.  Realtek produced several versions of source code shortly thereafter.  Docs ##378, 383.  During the week of February 20, 2006, 3Com deposed Realtek's Rule 30(b)(6) witnesses.  One such witness stated that the source code produced was current code, which may have been modified within the preceding three weeks.  Doc #378 Ex A at 55-59.  Further, the witness could not explain what modifications were made and could not explain the differences between the produced codes and earlier, unproduced versions.  Id.  After the Rule 30(b)(6) deposition, Realtek produced additional code.

Realtek maintains that it "has now produced all the versions it maintains."  Doc #383 at 1.  3Com contends it "has good reason to believe that at least some versions of the source code have not yet been produced."  Doc #378 at 3.  According to 3Com, there were many versions of generation 3.xx produced, but there were no versions (or very limited versions) of generations 4.xx, 5.xx and 6.xx.  Doc #378 at 3.  Realtek does not contest this;

4

United States District Court
For the Northern District of California

rather Realtek merely states "[t]here can be many explanations for skipping a number when multiple versions of the code are created." Doc #383 at 1.  Realtek stops there, however, and does not offer any "explanations."  Given the many version numbers in one generation of code, the near absence of all other versions of code and lack of explanation by Realtek, the court agrees that 3Com is entitled to the code to the extent it exists or, alternatively, is entitled to an explanation.

Accordingly, the court ORDERS Realtek to produce all missing versions of the source code that it maintains.  If Realtek cannot produce additional versions, the court ORDERS Realtek to declare so by way of a statement under penalty of perjury of both a Realtek officer, director or managing agent and its counsel at bar. This admission must identify the versions of the source code that may have once existed and must explain their disappearance.


B

Technical Information

3Com requests that Realtek produce technical information related to the internal design and operation of the accused products.  Doc #378 at 4.  3Com seeks the technical information because the court's claim construction further defined physical design elements of an infringing product.  See Doc #375.  Realtek responds that the "netlist codes" already produced identify all components in the accused products and therefore, it argues, it should not be required to produce the additional technical information.  Doc #383 at 1-2.

United States District Court

For the Northern District of California

1        Parties may not meet their obligations by pointing out

2  that the portion of materials thus far produced obviates the need

3  for production of the remaining items in the requested category.

4  See FRCP 34(a)(1) (requiring production of "any [relevant]

5  documents" designated by discovering party); <u>Buycks-Roberson v</u>

6  <u>Citibank Fed Sav Bank</u>, 162 FRD 338, 341-42 (ND Ill 1995).  Here,

7  Realtek does not dispute the fundamental relevance of the VHDL

8  code, "netlist codes" and the related technical information

9  detailing the internal design and operation of the accused chips.

10  Accordingly, Realtek's argument that partial production

11  demonstrates irrelevance of further production misses the mark.

12        If Realtek sought to avoid what it considered to be an

13  unreasonable burden, it could have applied for leave to file a

14  motion for protective order under FRCP 26(c).  Instead, Realtek

15  apparently decided it would be okay to produce just a subset of all

16  the relevant documents and code.  3Com should not have to rely on

17  Realtek's selective representations to determine the physical

18  location of design elements as required by the patents-in-suit.

19        Accordingly, the court ORDERS Realtek to produce VHDL

20  code, "netlist codes" and the related technical information

21  detailing the internal design and operation of the accused chips.

22

23                             C

24               <u>Financial Information</u>

25        3Com seeks discovery on financial information, namely

26  worldwide sales and profits, for all versions of all accused

27  products from 1994 to present.  Doc #378 at 4.  Realtek contends

28  that 3Com is not entitled to worldwide sales and profits, that 3Com

**United States District Court**
For the Northern District of California

is not entitled to any financial information from before the statutory period for damages and that Realtek does not maintain the specific records that 3Com requests.  Doc #383 at 2.

Without saying as much, Realtek is essentially arguing that worldwide sales and profits are not relevant.  The court disagrees.

First, Realtek's worldwide sales are reasonably calculated to lead to the discovery of admissible evidence because the worldwide sales relate to 3Com's claim of direct infringement.  The court agrees with 3Com that it is entitled to information concerning Realtek's customers and sales to determine the extent to which those customers sold the accused products into the United States.

Second, Realtek's worldwide sales are reasonably calculated to lead to the discovery of relevant evidence because the worldwide sales relate to 3Com's claim of inducing infringement.  3Com is not required to prove its inducing infringement theory to be entitled to discovery of such information.  See Murata Mfg Co, Ltd v Bel Fuse, Inc, 422 F Supp 2d 934, 944-46 (ND Ill 2006).

Third, worldwide profits and sales are relevant to a reasonable royalty calculation.  See Bose Corp v JBL, Inc, 112 F Supp 2d 138, 168 n 20 (D Mass 2000).  For example, the worldwide profit margin may be indicative of a ceiling amount for a reasonable royalty.  Worldwide sales and profits are also relevant to Realtek's financial condition generally.

Fourth, worldwide sales and profits are relevant to the affirmative defense of obviousness.  That is, the greater the

**United States District Court**

For the Northern District of California

commercial success worldwide, the more likely the patent is not obvious.  Realtek argues that "[e]ven if the worldwide sales were tangentially relevant to the issue of obviousness * * *, 3Com would have to prove that any sales of Realtek's products are attributable to the inventions in the patents-in-suit."  Doc #383 at 2.  Realtek does not address the relevance of worldwide sales and profits.  Rather, Realtek merely states 3Com would have to show a nexus between the commercial success and the invention to rebut a prima facie showing of obviousness by Realtek.  The court finds Realtek's argument unpersuasive.  The existence of one element (i e, the nexus between commercial success and the invention in patent-in-suit) does nothing to narrow the scope of discovery on an entirely separate element (i e, whether the product embodying the invention enjoyed commercial success).

For at least these reasons, 3Com's request for worldwide sales and profits is within the broad scope of discovery.

Regarding the time period of discoverable financial information, as discussed above, worldwide sales and profits generally may be relevant to direct infringement, inducing infringement, determining a reasonable royalty and rebutting a prima facie showing of obviousness.  Similarly, worldwide sales and profits before 1998 are reasonably calculated to lead to the discovery of relevant evidence.  For example here, worldwide sales and profits before the statutory damages period may be relevant to Realtek's assertion that it sold accused products bound for the United States to a single agent/distributor over a nearly ten year period.  Further, the amount of sales and profits before the statutory damages period may be relevant to showing D-Link's intent

**United States District Court**

For the Northern District of California

under an active inducement theory.  Finally, discovery of a
defendant's financial situation may facilitate settlement of the
action, which is one of the purposes behind the broad federal
discovery rules.  <u>Oakes v Halvorsen Marine Ltd</u>, 179 FRD 281, 286
(CD Cal 1998).  Accordingly, D-Link cannot dispose of its discovery
obligations on its own by unilaterally calculating the time period
to which it believes plaintiff is entitled to recover damages.
3Com may discover all information regarding defendant's worldwide
sales and profits to determine the potential scope of damages and
viable infringement theories.

Having determined that all worldwide sales and profits of
all the accused products are within the scope of discovery, the
court must examine Realtek's present ability to produce this
information.  Realtek claims that it has produced the "best
information" it has on which equipment manufacturers ultimately buy
the accused products from the agents and distributors.  Doc #383 at
2.  Realtek sells to agents and distributors, and it asserts that
it does not know with certainty how many chips bought by these
agents and distributors are sold or to whom it sold them.  Id.

The excerpted transcript of the Tseng depositions (Doc
#378 Exs C, F) indicates that there is a database system that
Realtek has maintained since 1999.  That database contains
information such as worldwide sales by product and profits by
product.  Realtek does not reconcile the Tseng deposition with its
statement "Realtek does not calculate [worldwide sales totals for
each accused product]."  Doc #383 at 2.  For the reasons discussed
above, worldwide sales and profits are within the scope of
discovery and 3Com is entitled to such information.

**United States District Court**
For the Northern District of California

Additionally, while Realtek mentions in passing that producing such financial information would be "unduly burdensome," it does not substantiate its claim.  In light of the relevance of the materials 3Com seeks, the court is not convinced that the requests are unduly burdensome.  The relevance of 3Com's discovery requests outweighs the burden on the defendant.

Accordingly, the court ORDERS Realtek to produce the worldwide sales and profits for each accused product from 1994 to present.  For any otherwise discoverable financial information that Realtek does not possess, Realtek is ordered to identify this information by way of formal admission under penalty of perjury, including an explanation why it is unable to produce such information.

### D

### Additional 30(b)(6) Depositions

It is necessary to conduct additional and continued Rule 30(b)(6) depositions for at least the following reasons.  First, the court has now clarified which accused products are properly in this suit.  Realtek must produce Rule 30(b)(6) witnesses to testify on all the accused products.  Second, Realtek's designee on financial issues was unprepared to testify about Realtek's worldwide sales and profits.  Because the court finds this information discoverable, Realtek must produce a designee to testify on these related topics as outlined above.

Third, at the time of the Rule 30(b)(6) depositions, Realtek had not yet produced all versions of the source code that it maintained for the accused products.  For this reason alone, the

**United States District Court**
For the Northern District of California

court finds it appropriate to order continued examination of Realtek's software designee.  On continued deposition, while Realtek's software designee need not compare and contrast each and every version of the source code, he or she must be prepared to explain significant changes or modifications in the source code that occurred.  This will obviously require reviewing, and being informed about, more than the most recent version of the code. Similarly, the hardware and design designee should be prepared to address significant changes in the hardware and design throughout the product development process for all accused products.

For the reasons stated above, the court ORDERS Realtek to produce Rule 30(b)(6) designees to be deposed on all accused products, financial information that the court above deems discoverable and modifications to the source code and accused products' design.

3Com also seeks sanctions against Realtek in the amount of reimbursement for the costs and expenses 3Com incurred in sending its counsel and support personnel to Taiwan to depose Realtek's Rule 30(b)(6) witnesses.  Doc #378 at 10.  3Com contends that Realtek's three Rule 30(b)(6) witnesses were "woefully unprepared" even for the five products Realtek contended were properly in the case.  Doc #378 at 8.  3Com requests that the court order Realtek to produce these three witnesses for continued examination.  Further, 3Com asks the court to order these depositions take place in the United States.

A court's decision to impose sanctions and the choice of an appropriate sanction are discretionary.  See Nat'l Hockey League v Metropolitan Hockey Club, 427 US 639, 642 (1976).  The court

11

United States District Court
For the Northern District of California

cannot conclude that Realtek has acted willfully or in bad faith. Realtek may very well have erroneously believed that it had acted properly.  In addition, there is no doubt that Realtek has expended significant effort in complying with its discovery obligation, which perhaps explains its refusal to do more at this point. Accordingly, the court finds that the sanctions sought by 3Com are unwarranted at this juncture.

The court does find, however, that it would be inappropriate to force 3Com to incur these costs again and ORDERS Realtek to produce its Rule 30(b)(6) witnesses for continued deposition in the United States.  Realtek presumably is now mindful of its legal responsibilities and self-interest in discharging its discovery obligations even at the risk of inconvenience to its employees.  3Com's request for sanctions is DENIED.

III

In sum, to the extent Realtek only produced the information related to the five products originally accused and did not produce information related to all products accused in the amended preliminary infringement contentions, the court ORDERS Realtek to produce such information for all products presently in this case.  The court additionally ORDERS Realtek to produce:  (1) all versions of missing source code for all accused products; (2) VHDL, "netlist codes" and related technical information detailing the internal design and operation of the accused chips; (3) financial information, including worldwide sales and profits, from the period 1994 to present; and (4) Rule 30(b)(6) witnesses to testify on the subjects outlined above and continued examination of

the original Rule 30(b)(6) witnesses, such depositions to occur in the United States.  Finally, the court DENIES 3Com's request for sanctions.

        IT IS SO ORDERED.

_____

VAUGHN R WALKER

United States District Chief Judge