Yitai Hu (SBN 248085)
Sean P. DeBruine (SBN 168071)
Elizabeth H. Rader (SBN 184963)
S. H. Michael Kim (SBN 203491)
AKIN GUMP STRAUSS HAUER & FELD, LLP
Two Palo Alto Square
3000 El Camino Real, Suite 400
Palo Alto, CA  94306-2112
Telephone:      (650) 838-2000
Facsimile:      (650) 838-2001
Email:          mkim@akingump.com

Attorneys for Defendant
REALTEK SEMICONDUCTOR CORP.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| 3COM CORPORATION,<br><br>   Plaintiff,<br><br>   v.<br><br>D-LINK SYSTEMS, INC.<br><br>   and<br><br>REALTEK SEMICONDUCTOR CORP.,<br><br>   Defendants. | Case No. CV-03-2177-VRW ENE<br><br>**REALTEK'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 5,307,459**<br><br>Judge:      Vaughn R. Walker<br>Date:       December 20, 2007<br>Time:       2:30 p.m.<br>Courtroom:  6, 17th Floor |

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................................1

II. STATEMENT OF FACTS ....................................................................................................2

    A.  The '459 Patent............................................................................................................2

    B.  The Firoozmand Patents .............................................................................................3

    C.  The Commercial AMD SUPERNET II Products.......................................................4

III. ARGUMENT.........................................................................................................................5

    A.  Legal Standard ............................................................................................................5

    B.  The '459 Patent is Invalid in Light of Firoozmand .....................................................6

        1.  Firoozmand Was First to Conceive and First to Reduce to Practice the Claimed Invention.........................................................................................6

        2.  Firoozmand's Patents Disclose Every Element of Claim 1 of the '459 Patent.................................................................................................................7

            a)  "a buffer memory for storing the data frame." ......................................7

            b)  "Network Interface logic for transferring the data frame between the network transceiver and the buffer memory" .................................7

            c)  "threshold logic for allowing the period of time for the host processor to respond to the indication signal to occur during the transferring of the data frame, including:".............................................7

                i.  "a counter, coupled to the buffer memory, for counting the amount of data transferred to or from the buffer memory" .......7

                ii.  "an alterable storage location containing threshold value"........8

                iii. "means for comparing…and generating an indication signal to the host processor responsive to a comparison of the counter and the alterable storage location."..........................8

    B.  The '459 Patent is Invalid In Light of the AMD Supernet 2 Chipset. ..........................9

        1.  AMD Offered the SUPERNET 2 for Sale in February 1991.............................9

        2.  The AMD SUPERNET 2 Included Every Element of Claim 1 of the '459 Patent...............................................................................................................10

            a)  "a buffer memory for storing the data frame." ....................................10

            b)  "network interface logic for transferring the data frame between the network transceiver and the buffer memory" ...............................10

        c)    "threshold logic for allowing the period of time for the host processor to respond to the indication signal to occur during the transferring of the data frame, including:" ........................................... 10

            i.    "a counter, coupled to the buffer memory, for counting the amount of data transferred to or from the buffer memory" ..... 10

            ii.    "an alterable storage location containing threshold value" ...... 11

            iii.    "means for comparing…and generating an indication signal to the host processor responsive to a comparison of the counter and the alterable storage location." ....................... 11

IV.    CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

### CASES

*Access, Inc. v. Echostar Satellite Corp.*,
 383 F.3d 1295 (Fed. Cir. 2004) ................................................................................................ 5

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
 299 F.3d 1336 (Fed. Cir. 2002) .............................................................................................. 10

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) .................................................................................................................. 5

*Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*,
 853 F.2d 1557 (Fed. Cir. 1988) ................................................................................................ 5

*Bai v. L & L Wings, Inc.*,
 160 F.3d 1350 (Fed. Cir. 1998) ................................................................................................ 5

*C.R. Bard Inc. v. Advanced Cardiovascular Sys., Inc.*,
 911 F.2d 670 (Fed. Cir. 1990) .................................................................................................. 5

*Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*,
 150 F.3d 1354 (Fed. Cir. 1998) ................................................................................................ 6

*Desper Prods., Inc. v. Qsound Labs, Inc.*,
 157 F.3d 1325 (Fed. Cir. 1998) ................................................................................................ 5

*Hazeltine Corp. v. United States*,
 820 F.2d 1190 (Fed. Cir. 1987) ................................................................................................ 7

*Mahurkar v. C.R. Bard, Inc.*
 79 F.3d 1572 (Fed. Cir. 1996) .................................................................................................. 7

*Monsanto Co. v. Mycogen Plant Science, Inc.*,
 261 F.3d 1356 (Fed. Cir. 2001) ................................................................................................ 7

*Pfaff v. Wells Electronics, Inc.*,
 525 U.S. 55 (1998) .................................................................................................................. 10

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
 215 F.3d 1246 (Fed. Cir. 2000) ................................................................................................ 5

### STATUTES

35 U.S.C. §§ 101-103 ................................................................................................... 1, 5, 6, 9

### RULES

Fed. R. Civ. P. 56(e) ......................................................................................................................... 5

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 20, 2007 at 2:30 p.m. in Courtroom 6 of this Court located at 450 Golden Gate Avenue, San Francisco, California, or as soon thereafter as the matter may be heard, Defendant Realtek Semiconductor Corporation ("Realtek") will and hereby does move this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment that claim 1 of United States Patent No. 5,307,459 ("the '459 Patent") is invalid.  As grounds for its motion, as set forth fully in the accompanying Memorandum of Points and Authorities, Realtek states that, if claim 1 is construed as asserted by 3Com, the inventors named on the '459 patent were not the first to invent the claimed subject matter and the invention was on-sale in the United States more than one year before the application for the '459 patent was filed, rendering the claim invalid under 35 U.S.C. §§ 102(b) and (g).

This motion is based upon this Notice of Motion and Memorandum of Points and Authorities, the supporting declarations of Farzin Firoozmand ("Firoozmand Decl.") and S.H. Michael Kim ("Kim Decl."), the other papers and pleadings on file herein and on such other argument and evidence as may be presented to the Court at or prior to the hearing on this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

3Com accuses Realtek's network interface controller chips of infringing claim 1 of the '459 patent.  As discussed in Realtek's Motion for Summary Judgment of Noninfringement of that patent, which is filed concurrently herewith, 3Com has no basis for that allegation.  3Com can not identify any Realtek product that "generates an indication signal to the host processor" as required by that claim.  In particular, 3Com's infringement position is premised on its belief that the "indication signal" need not actually be sent to the host processor in advance of a subsequent interrupt.  That position ignores the plain import of the claim language requiring the "indication signal" to be "generated . . . to the host processor"  Because there is no dispute that the alleged "indication signal" in the Realtek products is not "generated to the host" Realtek does not infringe this claim.

1   Realtek brings this motion in the alternative, to demonstrate that if the indication signal need
2   not be sent to the host to satisfy the requirements of claim 1, that claim is invalid.  The subject matter
3   of claim 1, if so construed, was first invented by Farzin Firoozmand at Advanced Micro Devices Corp.
4   well before the alleged invention of the '459 patent.  It was described in at least two issued patents that
5   are prior art to the '459 patent.  That invention was also embodied in AMD's SUPERNET 2 Chip Set
6   product, which was publicly disclosed and placed on sale more than one year before the application for
7   the '459 patent was filed.  Therefore, if construed as 3Com suggests, claim 1 of the '459 patent is
8   invalid.

## II.     STATEMENT OF FACTS

### A.     The '459 Patent

In this action plaintiff 3Com Corporation ("3Com") alleges that claim 1 of the '459 patent is infringed by Realtek products.  The '459 patent issued on April 26, 1994 from an application that was filed on July 28, 1992.  Kim Decl., Ex. A.  The '459 patent discloses and claims an alleged improvement to a network interface card, or NIC.  NICs are used to transfer data to or from a host computer over a network.  *Id.* at 1:15-25.  Data is generally transferred in "packets" or "frames" which are groups of bytes consisting of the user data to be transferred and headers and footers describing the data, its destination and the like.

NICs move data in both directions. That is, they both transmit data from the host over the network, and receive data from the network destined for the host.  In either event, data is first moved into a temporary storage location in the NIC prior to its transmission over the network or its transfer to the host.  Once a data frame is received from the network into the buffer memory, the NIC will issue an "interrupt" signal to the host computer telling the host that the data is available.  The host processor must then stop what it is doing, save its current environment so that it can resume the interrupted function, and then deal with the data transfer request.  The time spent preparing to service the interrupt is called "interrupt latency" and can decrease the speed at which data can be transferred through the NIC.

1    The '459 patent seeks to reduce that latency and increase data throughput by informing the

2  processor of the coming interrupt prior to receipt of all of the data frame in the NIC.  Claim 1 of the

3  '459 patent reads:

> 1.  An apparatus for transferring a data frame between a network transceiver, coupled with a network, and a host system which includes a host processor and host memory, the apparatus generating an indication signal to the host processor responsive to the transfer of the data frame, with the host processor responding to the indication signal after a period of time, comprising:
>
> a buffer memory for storing the data frame;
>
> network interface logic for transferring the data frame between the host system and the buffer memory;
>
> host interface logic for transferring the data frame between the host system and the buffer memory;
>
> threshold logic for allowing the period of time for the host processor to respond to the indication signal to occur during the transferring of the data frame, wherein the threshold logic includes,
>
> a counter, coupled to the buffer memory, for counting the amount of data transferred to or from the buffer memory;
>
> an alterable storage location containing a threshold value; and
>
> means for comparing the counter to the threshold value in the alterable storage location and generating an indication signal to the host processor responsive to a comparison of the counter and the alterable storage location.

Kim Decl., Ex. A at 42:42-68.

### B.   The Firoozmand Patents

On May 29, 1990 Farzin Firoozmand filed several patent applications relating to NICs. Firoozmand Decl., ¶ 9.  Two patents of particular interest here issued from those applications: U.S. Patent 5,210,749 ("the '749 patent" or "Firoozmand I") and U.S. Patent 5,488,724 ("the '724 patent" or "Firoozmand II").  *Id.,* Exs. 2 and 3.  Mr. Firoozmand was an engineer with Advanced Micro Devices Corp. ("AMD") between 1985 and 1989.  *Id.,* ¶ 8. He was responsible for the project that led to AMD's commercial introduction of its Supernet II NIC product.  *Id.*  Mr. Firoozmand provided an

1  invention disclosure statement to AMD's patent counsel on May 15, 1989, which began the process of
2  applying for those patents.  *Id.,* ¶ 11.

3  Like the asserted '459 patent, Mr. Firoozmand's NIC included a buffer memory for storing data
4  temporarily as it was received from or transferred to the network.  *Id.,* ¶ 11.  Like the '459 patent, Mr.
5  Firoozmand's patents disclose a NIC that will initiate the transfer of data out of the buffer memory
6  before an entire frame is received.  *Id.,* ¶ 12.  Like the '459 patent, Mr. Firoozmand's patents disclose
7  that an adjustable threshold value that will determine how much data will be received into the buffer
8  before the host is notified.  *Id.,* ¶ 13.

9  **C.     The Commercial AMD SUPERNET II Products**

10 The NIC circuitry disclosed in the Firoozmand I and II patents was implemented in a
11 commercial product by AMD called the SUPERNET 2 chipset.  Firoozmand Decl., ¶ 14.  As disclosed
12 in the AMD Data Sheets published in 1991, the SUPERNET 2 chipset consisted of the FORMAC Plus
13 controller chip, a physical layer controller and physical data transmit/receiver chips.  *Id.*, Ex. 8 at
14 RT008839.  Just as described in the Firoozmand I and II patents, the FORMAC Plus chip includes a
15 buffer memory, a counter to determine the amount of data transferred to the buffer memory, and an
16 alterable storage location to store a threshold value.  *Id.*, ¶ 17-18.  In operation, the count of data
17 received by the buffer is compared to the threshold value stored in the register and, when a threshold
18 amount of data has been received, the RDATA indication signal is generated to the host.  *Id.*, ¶ 17.  In
19 response to the RDATA signal, the host requests access to the buffer memory and reads the frame data.
20 Thus, the host can begin to receive data from the buffer while the buffer is uploading data from the
21 network.  *Id.,* ¶ 20.

22 The SUPERNET 2 chipset was offered for sale in February 1991.  That month's issue of LAN:
23 Local Area Network Magazine reported AMD's announcement of the commercial availability of the
24 SUPERNET 2 chipset, including the FORMAC Plus chip.  Firoozmand Decl., Ex. 7. That article states
25 that AMD is offering the SUPERNET 2 for sale at a price of $225.00 in lots of one thousand.

26
27
28

III.   ARGUMENT

   A.   Legal Standard

Summary judgment may be appropriate when no genuine dispute of material fact exists. *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1299 (Fed. Cir. 2004), quoting *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998). Once one party moves for summary judgment and supports its motion with admissible evidence, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "A nonmovant must do more than merely raise some doubt as to the existence of a fact" and must set forth enough evidence to enable a jury to reasonably find for the nonmoving party. *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). When the nonmoving party fails to make a showing sufficient to establish evidence of an element essential to its case, the complete failure of proof concerning the essential element necessarily renders all other facts immaterial and a summary judgment is warranted. *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1250 (Fed. Cir. 2000). Summary judgment is as appropriate in a patent case as it is in any other case." *C.R. Bard Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990); *see also Desper Prods., Inc. v. Qsound Labs, Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998).

A patent is not valid if the alleged invention claimed is not novel, or it would have been obvious to one of ordinary skill in the art. 35 U.S.C. §§ 101-103. A lack of novelty can be shown where the claim is anticipated, that is when it is disclosed in a patent filed or a printed publication dated before the alleged invention, *id.* § 102(a), or if the invention was publicly known or on sale more than one year before the patent application was filed. *Id.*, § 102 (b). Finally, a patent claim is invalid if it was first invented in the U.S. by someone other than the patentee who did not abandon, suppress or conceal the invention. *Id.*, § 102(g). Anticipation requires a showing that a prior art reference disclosed or included, either expressly or inherently, every element of the patent claim. *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998).

**B.    The '459 Patent is Invalid in Light of Firoozmand**

    1.    <u>Firoozmand Was First to Conceive and First to Reduce to Practice the Claimed Invention.</u>

A patent claim is invalid if it was invented in this country first by someone other than the named inventor(s). 35 U.S.C. § 102(g). The inventions disclosed in the Firoozmand patents are prior art to 3Com's patents. Presumptively, the first-filed application is prior art to a later application. However, if the patentee on the later-filed patent claims to have invented before the earlier patent application, there is an issue of priority that must be resolved. 35 U.S.C. §102(g) controls such disputes over priority. That section holds that a patent is invalid if

> before [the patentee's] invention thereof, the invention was made by another inventor who had not abandoned, suppressed or concealed it.

35 U.S.C. §102(g)(2).

The person who is first to reduce to practice is *prima facie* the first inventor. *Mahurkar v. C.R. Bard,Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996). Mr. Firoozmand's invention was constructively reduced to practice on May 20, 1990 because filing a patent application is a constructive reduction to practice. *Hazeltine Corp. v. United States*, 820 F.2d 1190, 1196 (Fed. Cir. 1987). Firoozmand therefore reduced his invention to practice no later than the May 20, 1990 filing of his patent application. 3Com may claim to have conceived of the '459 invention before May 20, 1990. In order to prevail on that claim 3Com has the burden of coming forward with sufficient evidence to support its claimed date of conception. *C.R. Bard*, 79 F.3d at 1577. 3Com has not produced or pointed to any evidence to establish a date of conception before Mr. Firoozmand's. Because Mr. Firoozmand was the first to conceive and the first to reduce to practice, he is the first inventor under 35 U.S.C. §102(g).

Even if 3Com could somehow produce evidence to establish its date of conception before Mr. Firoozmand's, 3Com would then bear the burden of providing evidence to prove that its named inventors worked diligently to reduce the invention to practice. *C.R. Bard*, 79 F.3d at 1578. Such a showing requires proof that the inventors worked throughout the entire period from a date just prior to Firoozmand's reduction to practice until their own. *Monsanto Co. v. Mycogen Plant Science, Inc.*, 261 F.3d 1356, 1368-69 (Fed. Cir. 2001). 3Com cannot provide the required evidence to show either that it

was the first to invent or, even if so, that its inventors were diligent. As such, Mr. Firoozmand's prior invention, as described in his patents, constitutes prior art to the '459 patent.

    2. <u>Firoozmand's Patents Disclose Every Element of Claim 1 of the '459 Patent</u>

     a) "a buffer memory for storing the data frame."

Firoozmand I discloses buffer memory 116 for temporary storage of data frames that are transferred between a host system and the network. *See, e.g.,* Firoozmand Decl., Ex. 2 at 8:42-45; 9:8-14; Fig. 4. Firoozmand II likewise discloses the required buffer memory. *See, e.g., id.,* Ex. 3 at Fig 4; and corresponding text, 17:23-36.

     b) "Network Interface logic for transferring the data frame between the network transceiver and the buffer memory"

Firoozmand I and II disclose the FORMAC PLUS Medium Access Controller 20 including logic that transfers data frames between buffer 126 and the network. "The Medium Access Controller 120 implements proper network access protocol, receiving and transmitting frames of data…" Firoozmand Decl., Ex. 2 at 8:48-50. Furthermore, "[t]he medium access controller 120… is interfaced to buffer memory 126…" *Id.* at 8:58-60.

     c) "threshold logic for allowing the period of time for the host processor to respond to the indication signal to occur during the transferring of the data frame, including"

Firoozmand I discloses the required threshold logic. In particular, logic in the MAC controller instructs the DMA controller 124 to indicate the availability of a data frame when a threshold amount of data is available. *See, e.g.*, Firoozmand Decl., Ex. 2 at 15:30-62. Firoozmand II makes the same disclosure. *Id.,* Ex. 3 at 18:65 – 19:15. As will be detailed below, these patents disclose every element required by the "threshold logic."

      i. "a counter, coupled to the buffer memory, for counting the amount of data transferred to or from the buffer memory"

Firoozmand I discloses such a counter to one skilled in the art. It states that the threshold logic determines whether "the number of words [e.g. bytes] received in the buffer 126 received from the network exceeds the value RTHR of the receive threshold." Firoozmand Decl., Ex. 2 at 15:58-60. In order to have that number available, the system required a counter to count the bytes transferred into the buffer memory. *Id*. Such counters were widely known and easily implemented by those skilled in

the art at the time, and one way of implementing such a counter using pointers is disclosed. *Id.* at 15:63-16:5. This disclosure is incorporated by reference and also present in Firoozmand II. *See id.,* Ex. 3 at 18:66-19:14.

                ii.        "an alterable storage location containing threshold value"

Firoozmand I discloses an alterable storage location, register 187, which contains a threshold value RTHR. Firoozmand Decl., Ex. 2 at 15:43-58. Firoozmand II incorporates that disclosure by reference. *Id.,* Ex. 3 at 19:11-14. As such, this claim element is disclosed and enabled. Firoozmand Decl., ¶ 12.

                iii.       "means for comparing…and generating an indication signal to the host processor responsive to a comparison of the counter and the alterable storage location."

3Com is taking the position that the "indication signal" need not be sent to the host. *See* Realtek's Motion for Summary Judgment of Non-Infringement of the '459 Patent. In particular, 3Com is arguing that this claim limitation is met by Realtek products where the comparison circuitry generates a signal to the host interface logic, and the host interface logic then issues an interrupt to the host processor. *Id*. If that scope of claim construction were to be adopted, this claim element is disclosed in the Firoozmand I and II patents. In particular, Firoozmand I disclose a means for comparing the number of bytes received in buffer memory 126 to a threshold value RTHR. Firoozmand Decl., ¶ 12. If that comparison shows that a sufficient number of bytes have been received, the comparison means in controller 120 asserts RDATA signal to the host interface logic in DM, Firoozmand Decl., Ex. 2 at controller 124. *Id.,* ¶ 13. In response to the RDATA signal, DMA controller 124 issues an interrupt to the host indicating that data is available for transfer. *Id.* In this way the host system is allowed time to respond to the interrupt before the entire frame is received into buffer memory 116. Interrupt latency is therefore reduced. *Id.* To the extent that 3Com is correct in its position that a signal created by the comparing means and sent to the host interface logic, but not the host is an "indication signal," the means for comparing claim limitations is disclosed in Firoozmand I and II. That correspondence is set out in more detail in claim charts prepared by Mr. Firoozmand. *Id.,* Exs. 5 and 6.

B.     **The '459 Patent is Invalid In Light of the AMD Supernet 2 Chipset.**

The NIC circuitry described in the Firoozmand patents was implemented into AMD's SUPERNET 2 chipset. Firoozmand Decl., ¶ 14. AMD offered that chipset for sale more than one year before the application for the '459 patent was filed. As such, claim 1 of the '459 patent is invalid under 35 U.S.C. § 102(b). A patent claim is invalid under the on-sale bar of § 102(b) when the invention is both the subject of an offer to sell and it is either reduced to practice or is ready for patenting. *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 67 (1998). As will be shown below, the SUPERNET 2 chipset was clearly on-sale. Since that product included every element of claim 1 as asserted by 3Com, that claim is invalid.

1.     <u>AMD Offered the SUPERNET 2 for Sale in February 1991.</u>

A patent is invalid under 35 U.S.C. § 102(b) if, more than one year before the patent application is filed, the invention was 1) offered for sale in the United States and 2) the invention was reduced to practice or ready for patenting. *Pfaff*, 525 U.S. at 67. The first prong requires a showing of a commercial offer for sale. *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1352 (Fed. Cir. 2002). Whether there has been an offer is determined under general principles of commercial law. *Id.* By February 1991 AMD publicly and widely announced the availability of the SUPERNET 2 chipset, including the price at which it would sell that product. Firoozmand Decl., Ex. 7, Kim Decl., Ex. 3. For example, the February 1991 issue of "LAN: Local Area Network Magazine" included an article entitled "AMD Introduces FDDI Chip for Half-Size Cards." That article describes the SUPERNET 2 chipset as including the FORMAC Plus media access controller chip, a physical layer controller chip and transmit and receive chips. *Id.* The article, which quotes AMD's FDDI product marketing manager Basil Alwan at length, states that AMD is offering the chipset at a price of $225.00 in lots of one thousand, and that AMD anticipated that "commercial quantities" of the chips would be available by the end of March, 1991. *Id.* That same announcement was reported in June 1991 in AMD's own magazine sent to its customers. Kim Decl., Ex. 3 (AMD00574). Those published reports state the price as $225.00 when ordered in quantities of one thousand. These announcements constitute offers to sell the SUPERNET 2 chipset, quoting price and quantity. As such, the first prong of the on-sale bar test is satisfied.

The next prong considers whether the item offered for sale is sufficiently definite that it could be described in a patent application. *Pfaff*, 525 U.S. at 67. That prong is obviously met here as the patent applications were filed well before the offers for sale.

### 2. The AMD SUPERNET 2 Included Every Element of Claim 1 of the '459 Patent.

There is also no dispute that the subject of AMD's offers to sell, the SUPERNET 2 chipset, included every element of claim1 as it has been asserted by 3Com. That is shown by the patent applications Mr. Firoozmand prepared describing the FORMAC Plus chip and associated circuitry. It is also confirmed by the 1991 Data Sheets prepared by AMD describing that product. As will be shown below, that Data Sheet confirms that the SUPERNET 2 chipset included every element of claim1.

    a) "a buffer memory for storing the data frame."

The AM79C830 "FORMAC Plus" chip included a buffer memory for storing data frames communicated between the host and the network medium. Firoozmand Decl., ¶ 18, Ex. 8 at RT008842; RT00884 (Fig. 4).

    b) "network interface logic for transferring the data frame between the network transceiver and the buffer memory"

The FORMAC Plus included logic that transfers data frames between the buffer and the network. *Id.,* ¶ 18, Ex. 8 at RT008841 ("The receive demultiplexer in the FORMAC Plus formats four bytes of data into a 32-bit long word which is temporarily stored in the receive FIFO until the buffer memory is ready to receive it. The FORMAC Plus sets up addresses on the 16-bit address line to store the frame in buffer memory.")

    c) "threshold logic for allowing the period of time for the host processor to respond to the indication signal to occur during the transferring of the data frame, including:"

The FORMAC Plus controller includes threshold logic that informs the host that a frame is available for transfer while frame data is still being received into the buffer. Firoozmand Decl., ¶ 19. As will be detailed below, these SUPERNET 2 chipset included every element required by the "threshold logic."

      i. "a counter, coupled to the buffer memory, for counting the amount of data transferred to or from the buffer memory"

1      The FORMAC Plus included counters coupled to the buffer memory for counting the amount
2  of data received by the buffer.  In particular, buffer memory queue counters keep track of the number
3  of long (32-bit) words transferred into the buffer memory.  *Id.*, ¶ 19, Ex. 8 at RT008880.

                                   ii.    "an alterable storage location containing threshold value"

      The FORMAC plus included an alterable storage location containing a threshold value.  Firoozmand Decl., ¶ 19.  A Frame Threshold Register FRMTHR held both the receive threshold value RTHR and the transmit threshold value RTHR.  *Id.,* Ex. 8 at RT009006.  That register could be changed.  *Id.*

                               iii.    "means for comparing…and generating an indication signal to the host processor responsive to a comparison of the counter and the alterable storage location."

      Using 3Com's construction of this term, namely that the "indication signal" need not be sent to the host, this claim limitation is present in the SUPERNET 2 product.  *See* Realtek's Motion for Summary Judgment of Non-Infringement of the '459 Patent.  The SUPERNET 2 included circuitry that compared the number of long words transferred to the buffer memory to the receive threshold value RTHR.  Firoozmand Decl., ¶ 20.  If that comparison shows that a sufficient number of bytes have been received, the comparison means asserts the RDATA signal to the host.  *Id.*  The host responds with a HSREQ read request signal, and the host begins to read data out of the buffer before while frame data is still being written into the buffer.  *Id.*  In this way the host system is allowed time to respond to the interrupt before the entire frame is received into buffer memory 116.  Interrupt latency is therefore reduced.  To the extent that 3Com is correct in its position that a signal created by the comparing means and sent to the host interface logic, but not the host is an "indication signal," the means for comparing claim limitations is disclosed in the AMD SUPERNET 2 chipset.  That correspondence is set out in more detail in claim charts prepared by Mr. Firoozmand.  *Id.,* Exs. 5 and 6.

IV. **CONCLUSION**

For the reasons explained above, the Court should grant Realtek's Motion for Summary Judgment that Claim 1 of U.S. Patent No. 5,307,459 is invalid.

Dated:  November 16, 2007         AKIN GUMP STRAUSS HAUER & FELD LLP

By:_____/s/_____
                Elizabeth H. Rader

Attorneys For Defendant
REALTEK SEMICONDUCTOR CORPORATION