Yitai Hu (SBN 248085)
Sean P. DeBruine (SBN 165071)
Elizabeth H. Rader (SBN 184963)
S. H. Michael Kim (SBN 203491)
AKIN GUMP STRAUSS HAUER & FELD, LLP
Two Palo Alto Square
3000 El Camino Real, Suite 400
Palo Alto, CA  94306-2112
Telephone:      (650) 838-2000
Facsimile:      (650) 838-2001
Email:      mkim@akingump.com

Attorneys for Defendant
REALTEK SEMICONDUCTOR CORP.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| 3COM CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>D-LINK SYSTEMS, INC.<br><br>and<br><br>REALTEK SEMICONDUCTOR CORP.,<br><br>Defendants. | Case No. CV-03-2177-VRW ENE<br><br>**REALTEK'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENTS NO. 5,434,872 AND NO. 5,732,094**<br><br>Judge:      Vaughn R. Walker<br>Date:      December 20, 2007<br>Time:      9:00 a.m.<br>Courtroom:   6, 17th Floor |

**Table of Contents**

Page No.

I.   INTRODUCTION ......................................................................................1

II.   STATEMENT OF FACTS .......................................................................2

    A.   The '872 and '094 Patents ...........................................................2

    B.   The Firoozmand Patents ..............................................................3

    C.   The Commercial AMD SUPERNET 2 Products ......................................3

III.   ARGUMENT ...........................................................................................4

    A.   Legal  Standard ............................................................................4

    B.   The Asserted Claims of the '872 and '094 Patents Are Invalid. ............................5

        1.   Firoozmand was First to Conceive and First to Reduce to Practice. ...........5

        2.   The SUPERNET 2 Chipset Was On Sale More than One Year Before the '872 and '094 Applications Were Filed.....................................9

        3.   The Firoozmand Patents and the SUPERNET 2 Chip Set Disclose Every Element of the '872 and '094 Patent Claims.....................................6

IV.   CONCLUSION.............................................................................................12

## Table of Authorities

Page No.

### CASES

*Allen Eng'g Corp. v. Bartell Indus., Inc.,*
299 F.3d 1336 (Fed. Cir. 2002) .............................................................. 7

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ................................................................................ 4

*Avia Group Int'l v. LA Gear California, Inc.,*
853 F.3d 1557 (Fed. Cir. 1988) .............................................................. 4

*Bai v. L & L Wings, Inc.,*
160 F.3d 1350 (Fed. Cir. 1998) .............................................................. 4

*C.R. Bard Inc. v. Advanced Cardiovascular Sys., Inc.,*
911 F.2d 670 (Fed. Cir. 1990) ................................................................ 5

*Cruciferous Sprout Litigation,*
301 F.3d 1343 (Fed. Cir. 2002) .............................................................. 5

*Desper Prods., Inc. v. Qsound Labs,*
157 F.3d 1325 (Fed. Cir. 1998) .............................................................. 5

*Hazeltine Corp. v. United States,*
820 F.2d 1190 (Fed. Cir. 1987) .............................................................. 6

*Irdeto Access, Inc. v. Echostar Satellite Corp.,*
383 F.3d 1295 (Fed. Cir. 2004) .............................................................. 4

*KSR Intern. Co. v. Teleflex, Inc.,*
550 U.S. ____, 127 S.Ct. 1727 (2007) .................................................. 10

*Mahurkar v. C.R. Bard,Inc.,*
79 F.3d 1572 (Fed. Cir. 1996) ................................................................ 5

*Monsanto Co. v. Mycogen Plant Science, Inc.,*
261 F.3d 1356 (Fed. Cir. 2001) .............................................................. 6

*Oka v. Youssefyeh,*
849 F.2d 581 (Fed. Cir. 1988 .................................................................. 6

*Rotec Indus., Inc. v. Mitsubishi Corp.,*
215 F.3d 1246 (Fed. Cir. 2000) .............................................................. 5

### STATUTES

35 U.S.C. § 101 .......................................................................................... 5

35 U.S.C. § 102(g) ..................................................................................... 5

35 U.S.C. §102(g) ................................................................................... 5, 6

Fed. R. Civ. P. 56(e) ................................................................................... 4

1

**NOTICE OF MOTION AND MOTION**

2

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on December 20, 2007 at 9:00 a.m. in Courtroom 6 of this Court

4

located at 450 Golden Gate Avenue, San Francisco, California, or as soon thereafter as the matter may

5

be heard, Defendant Realtek Semiconductor Corporation ("Realtek") will and hereby does move this

6

Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment that claims

7

1, 10 and 21 of United States Patent No. 5,434,872 ("the '872 Patent") and claims 1, 19, 21, 28, 39 and

8

47 of U.S. Patent No. 5,732,094 ("the '094 patent") are invalid.

9

As basis for this motion, as set forth more fully in the Memorandum of Points and Authorities

10

below, Realtek states that every element of these claims was first invented in this country by Farzin

11

Firoozmand, as reflected in his U.S. Patent No. 5,210,749 ("the '749 patent" or "Firoozmand I") and

12

No. 5,488,724 ("the '724 patent" or "Firoozmand II").  Those patents were conceived of and the

13

applications filed before the conception by the inventions of the '872 and '094 patents and they are

14

therefore prior art.  Realtek also states that the claimed inventions were offered for sale in the United

15

States more than one year before the application for the '872 and '094 patents was filed, rendering

16

those patents invalid.  To the extent claims 21 of the '872 patent and 28 of the '094 patent are not

17

anticipated, they are invalid as obvious.

18

This motion is based upon this Notice of Motion and Memorandum of Points and Authorities,

19

the supporting declarations of Farzin Firoozmand ("Firoozmand Decl.") and S.H. Michael Kim ("Kim

20

Decl.") filed herewith, the other papers and pleadings on file and on such other argument and evidence

21

as may be presented to the Court at or prior to the hearing on this motion.

22

**MEMORANDUM OF POINTS AND AUTHORITIES**

23

**I.    INTRODUCTION**

24

3Com accuses Realtek of infringing several claims in each of its '872 and '094 patents.  Those

25

patents relate to a network adapter that will begin the transmission of a frame or packet of data over a

26

network medium before the network adapter receives all of the data for the packet.  This "early

27

transmit" function is intended to increase the speed at which data can be transferred by eliminating

28

delays.  3Com cannot prevail on these allegations for the simple reason that these patent claims are

invalid.  3Com was not the first to invent the improved network adapters as claimed in these patents.
Rather, Farzin Firoozmand at Advanced Micro Devices Corp. beat them to the punch by at least a year.
Mr. Firoozmand's network adapter design for AMD's SUPERNET 2 Chip Set product included every
element of the 3Com patent claims.  That design was reduced to practice in a chip that was tested and
found to be functional more than two years before 3Com filed its patent applications.  Samples of those
chips were provided to AMD customers more than two years before 3Com filed its patent applications.
AMD began commercial sales of the network adapter chips more than one year before 3Com filed its
patents.  For all of these reasons, 3Com's patent claims are invalid, and Realtek is entitled to summary
judgment.

## II.   STATEMENT OF FACTS

### A.   The '872 and '094 Patents

The application for the ''872 patent was filed on July 21, 1992.  The '094 patent issued from a
continuation application related to the application for the '872 patent and claims the same priority date.
The two patents share the same written description.  The '872 and '094 patents disclose and claim
alleged improvements to network interface adapters, often called network interface cards or "NICs."
In particular, the patents state that NICs will download a frame or packet of data from the host and,
after all of the data bytes of the frame are in memory in the NIC, begin to transmit that packet onto the
communication medium.  The '872 and '094 patents state that this process results in lower data
throughput.  '872 at 1:50-57.  The '872 and '094 patents purport to increase that throughput by starting
the transmission of packet data to the network before all of the packet data has been received into the
buffer memory.  *Id.* at 2:7-21.  A counter coupled to the buffer memory monitors packet data
transferred into the buffer and, once a sufficient threshold amount of data is received, the NIC initiates
the early transmission of the packet while still receiving the remaining data.  *Id.*  The patents also
discuss problems that could be encountered with this early transmission and ways to mitigate those
problems.  First, if the threshold is set too low, data transferred out of the buffer may outpace data
transferred in.  Such an "underrun" condition would cause an incomplete frame to be transmitted onto
the network. The patents discuss reporting such underrun conditions and using that data to optimize the

1    threshold value.  In addition, the patents disclose transmitting a "bad frame" indication when an

2    incomplete frame is transmitted.

3        **B.    The Firoozmand Patents**

4        On May 29, 1990 Farzin Firoozmand filed several patent applications relating to NICs.

5    Firoozmand Decl., ¶ 9.  Two patents of particular interest here issued from those applications: U.S.

6    Patent 5,210,749 ("the '749 patent" or "Firoozmand I") and U.S. Patent 5,488,724 ("the '724 patent"

7    or "Firoozmand II").  *Id.,* Exs. 2 and 3.  Mr. Firoozmand was an engineer with Advanced Micro

8    Devices Corp. ("AMD") between 1985 and 1989.  *Id.,* ¶ 8. He was responsible for the project that led

9    to AMD's commercial introduction of its Supernet II NIC product.  *Id.* ¶¶ 2-4.  Mr. Firoozmand

10   provided an invention disclosure statement to AMD's patent counsel on May 15, 1989, which began

11   the process of preparing applications for those patents.  *Id.,* ¶ 11.

12       As disclosed in the patents, Mr. Firoozmand's NIC included a controller chip called the

13   FORMAC Plus.  Firoozmand Decl., ¶ 5.  That chip used a buffer 126 memory for storing data

14   temporarily as it was received from or transferred to the network.  *Id.,* ¶ 8.  Mr. Firoozmand's patents

15   disclose that the FORMAC Plus will initiate the transfer of data out of the buffer memory to the

16   network before an entire frame is received.  *Id.,* ¶ 8-9  That early transmission will begin when the

17   amount of data in the buffer memory exceeds a threshold value stored in an alterable memory location.

18   *Id.,* ¶ 8-9  Mr. Firoozmand's design also included the reporting of underrun conditions, optimizing the

19   threshold value and transmitting bad frame data.  *Id.,* ¶ 10-11.

20       **C.    The Commercial AMD SUPERNET 2 Products**

21       The NIC circuitry disclosed in the Firoozmand I and II patents was implemented in a

22   commercial product sold by AMD as the SUPERNET 2 chipset.  Firoozmand Decl., ¶ 14.  As disclosed

23   in the AMD Data Sheets published in 1991, the SUPERNET 2 chipset consisted of the FORMAC Plus

24   controller chip, a physical layer controller and physical data transmit/receiver chips.  *Id.,* Ex. 8 at

25   RT00839.  Just as described in the Firoozmand I and II patents, the FORMAC Plus chip includes a

26   buffer memory, a counter to determine the amount of data transferred to the buffer memory, and an

27   alterable storage location to store a threshold value.  *Id.,* ¶ 17-18.  In operation, the count of data

28   received by the buffer is compared to the threshold value stored in the register and, when a threshold

1    amount of data has been received, the transmission of the patent is initiated.  *Id.*, ¶ 18.  *Id.*, ¶ 17.  The

2    threshold value is alterable by the host and could be used to optimize the threshold based on the system

3    operation.  *Id.,* ¶ 10.  Underrun conditions were detected and reported to the hosts allowing the

4    optimization of the threshold.  *Id.,* ¶ 11.  In an underrun condition FORMAC Plus would send a bad

5    frame signal.  *Id.,* ¶ 12.  As discussed in more detail below, the FORMAC Plus included in every

6    element of the asserted patent claims.

7         AMD began providing samples of that chip to its customers for testing by the summer of 1990.

8    Firoozmand Decl., Ex.  10.  The SUPERNET 2 chipset was offered for sale in February 1991. That

9    month's issue of LAN: Local Area Network Magazine reported AMD's announcement of the

10    commercial availability of the SUPERNET 2 chipset, including the FORMAC Plus chip.  That article

11    states that AMD was offering to sell the SUPERNET 2 at a price of $225.00 in lots of one thousand.  In

12    AMD's own magazine distributed to its customers, AMD repeated the same offer.  *Id.,* Ex. 11 (AMD

13    00573).  A card dated June 3, 1991 invites readers to request "free technical material" about the

14    SUPERNET 2 product.  *Id.,* AMD 00573-00574.

15    **III.   ARGUMENT**

16        **A.    Legal  Standard**

17         Summary judgment may be appropriate when no genuine dispute of material fact exists.  *Irdeto*

18    *Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1299 (Fed. Cir. 2004), quoting *Bai v. L & L*

19    *Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).  Once one party moves for summary judgment and

20    supports its motion with admissible evidence, the non-moving party must set forth specific facts

21    showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  "A nonmovant must do more than

22    merely raise some doubt as to the existence of a fact" and must set forth enough evidence to enable a

23    jury to reasonably find for the nonmoving party.  *Avia Group Int'l v. LA Gear California, Inc.*, 853 F.3d

24    1557, 1560 (Fed. Cir. 1988); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-50.  When the

25    nonmoving party fails to make a showing sufficient to establish evidence of an element essential to its

26    case, the complete failure of proof concerning the essential element necessarily renders all other facts

27    immaterial and a summary judgment is warranted.  *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d

28    1246, 1250 (Fed. Cir. 2000).  Summary judgment is as appropriate in a patent case as it is in any other

case." *C.R. Bard Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990); *see also Desper Prods., Inc. v. Qsound Labs*, 157 F.3d 1325, 1332 (Fed. Cir. 1998).

A patent is not valid if the alleged invention claimed is not novel, or it would have been obvious to one of ordinary skill in the art. 35 U.S.C. § 101. A lack of novelty can be shown where the claim is anticipated, that is disclosed in a patent filed or a printed publication dated before the alleged invention. *Id.*, § 102(a) or if the invention was publicly known or on sale more than one year before the patent application was filed. *Id.*, § 102 (b). Finally, a patent claim is invalid if it was first invented in the U.S. by someone other than the patentee who did not abandon, suppress or conceal the invention. *Id.*, § 102(g). Anticipation requires a showing that a single prior art reference discloses, either expressly or inherently, each limitation of the claim. *In re Cruciferous Sprout Litigation,* 301 F.3d 1343, 1349 (Fed. Cir. 2002).

**B.     The Asserted Claims of the '872 and '094 Patents Are Invalid.**

1.     <u>Firoozmand's Patents Are Prior Art.</u>

A patent claim is invalid if it was invented in this country first by someone other than the named inventor(s). 35 U.S.C. § 102(g). A patent claim is also invalid if it is described in an application for a patent filed by another before the patentee's invention. 35 U.S.C. § 102(e). The inventions disclosed in the Firoozmand patents are prior art to 3Com's patents. Presumptively, the first-filed application is prior art to a later application.

The person who is first to reduce to practice is *prima facie* the first inventor. *Mahurkar v. C.R. Bard,Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996). Mr. Firoozmand's invention at least constructively reduced to practice effective on the May 20, 1990 filing of his application, because filing a patent application is a constructive reduction to practice. *Hazeltine Corp. v. United States*, 820 F.2d 1190, 1196 (Fed. Cir. 1987). Firoozmand therefore reduced his invention to practice no later than the May 20, 1990. Because 3Com's presumptive date of invention is the July 28, 1992 filing date for its patents, Mr. Firoozmand's patents are prior art.

In order to avoid the Firoozmand prior art during prosecution of the '872 and '094 patents, 3Com claimed that its inventors conceived of the claimed inventions before May 20, 1990. While the bare statements of the inventors, along with redacted documents, was sufficient for the PTO, to prevail

on that claim here, 3Com has the burden of coming forward with sufficient credible and corroborated evidence to support any claimed earlier date of conception. *C.R. Bard*, 79 F.3d at 1577. 3Com has not produced or pointed to any evidence to establish a date of conception before Mr. Firoozmand's filing. Because Mr. Firoozmand was the first to conceive and the first to reduce to practice, he is the first inventor under 35 U.S.C. §102(g). In addition, even if 3Com could somehow produce evidence to establish its date of conception before Mr. Firoozmand's, 3Com would then bear the burden of providing evidence to prove that its named inventors worked diligently to reduce the invention to practice. *C.R. Bard*, 79 F.3d at 1578. Such a showing requires proof that the inventors worked throughout the entire period from a date just prior to Firoozmand's reduction to practice until their own. *Monsanto Co. v. Mycogen Plant Science, Inc.*, 261 F.3d 1356, 1368-69 (Fed. Cir. 2001). 3Com cannot provide the required evidence to show either that it was the first to invent or, even if so, that its inventors were diligent.[1] As such, Mr. Firoozmand's prior invention, as described in his patents, constitutes prior art to the '459 patent.

           2.    The Firoozmand Patents Disclose Every Element of the '872 and '094 Patent Claims

As will be shown below, the network adapter design conceived of by Mr. Firoozmand, described in his patent and implemented in the SUPERNET 2 Chip Set included every element of the asserted claims of the '872 and '094 patent. The correspondence between that design and the patent claims is summarized below. In addition, detailed charts showing the presence of each claim limitation in this prior art are provided as Exhibits 5, 6 and 9 to Mr. Firoozmand's declaration and are incorporated herein by reference.

           a)    "buffer memory"

Claims 1, 10 and 21 of the '872 patent require a "buffer memory" for storing data transferred between the host and the network. '872 patent at 30:7-9; 31:12; 32:63-65; '094 patent at 28:32-32:45.

---

[1] Should 3Com attempt to come forward with evidence to establish an earlier date of invention, this issue would become a dispute when each party conceived of the claimed invention under 35 U.S.C. § 102(g). Realtek reserves the right to establish a date of actual invention for Mr. Firoozmand earlier than his patent filing date.

1    Firoozmand I and II discloses the buffer memory as required in each of the '872 patent claims,

2    Firoozmand Decl, ¶ 8.

3                    b)      "transferring data of frames to the buffer memory"

4            Claims 1, 10 and 21 require means or circuitry for transferring the data of frames from the host

5    into the buffer memory. '872 patent at 30:10-11; 31:13-15; and 32:66-18. Claims 1, 9, 21, 28, 39 and

6    42 of the '094 patent require the step of transferring data to, or receiving data into, a buffer memory.

7    '094 patent at 28:32-32:45. Firoozmand I and II disclose circuitry means for transferring data of

8    frames from the host to the buffer memory as required by the '872 patent claims. Firoozmand Decl.,

9    ¶¶ 8-9, Exs. 6 and 7. Firoozmand I and II also discloses the operation of the buffer memory and

10   related circuitry to perform the step of transferring data to or receiving data into the buffer as required

11   by the claims of the '094 patent. *Id.*

12                   c)      "a threshold determination of an amount of data of the frame transferred
                             to the buffer memory"

13

14           Claims 1, 10 and 21 each require means or logic coupled to the buffer memory that monitors

15   the transfer of data to the buffer memory and to make a threshold determination of the amount of data

16   transferred. '872 patent at 30:11:16; 31:16-21 and 33:1-5. Claim 10 further requires that the threshold

17   value is stored in a host accessible alterable storage location. Firoozmand I and II disclose a host

18   alterable storage location for a threshold value and a means for making the comparison of that value to

19   the amount of data transferred to the buffer memory. Firoozmand Decl., ¶ 10, Exs. 6-7. Claims 9, 21,

20   28, 39 and 42 of the '094 patent are method claims requiring the performance of the function required

21   for the means or logic for monitoring the transfer of data set out in the '872 patent claims. '094 patent

22   at 31:14-34:49. Firoozmand I and II disclose the operation of the necessary circuitry to perform these

23   required steps. *Id.*

24                   d)      "initiating transmission of the frame prior to transfer of all of the data of
                             the frame to the buffer memory"

25           Claims 1, 10 and 21 require means or logic responsive to the threshold determination for

26   initiating the transfer of the frame prior to transfer of all of the data of the frame to the buffer memory

27   from the host system. 30:17-21; 31:23-27; and 33:10-18. Firoozmand I and II disclose circuit means

28   responsive to the threshold determination that begins the transfer of a frame data before all of the

frame data is received into the buffer memory from the host system.  Firoozmand Decl., ¶¶ 8-9, Exs. 6 and 7., Ex. 9.  Claims 1, 9, 21, 28, 39 and 42 of the '094 patent are method claims with limitations that correspond to the apparatus limitations in the '872 patent.  Firoozmand I and II disclose the operation of circuitry to perform the steps required to "initiate transmission of the frame" as required by each of these claims.  *Id.*

> e)   "posting status information for use by the host system for optimizing the threshold value"

Claim 10 also requires a "control means . . . for posting status information for use by the host system for optimizing the threshold value."  31:34-17.  Firoozmand Decl., ¶ 11, Exs. 6-7.  Claims 21 and 49 of the ''094 patent require the step of "posting status information for use by the host system for optimizing the threshold value."  30:30-31; 32:55-56.  Firoozmand I and II disclose circuitry necessary to perform this function and instruct one of skill in the art to carry out this step.  *Id.,* ¶ 11, Exs. 6-7.

> f)   "underrun control logic which . . . supplies a bad frame signal"

Claim 1 also requires underrun control logic which . . . supplies a bad frame signal to the communication medium in response to the underrun condition."  30:26-31.  Firoozmand I and II include the underrun control logic as required by claim 1.  Firoozmand Decl., ¶ 12, Ex. ___.

> g)   CSMA/CD Network

Claim 21 of the '872 patent and claim 28 of the '094 patent are limited to a NIC for use in a carrier sense multiple access collision detection, or CSMA/CA network.  In particular, claim 21 requires a CSMA/CD medium access controller.  '872 patent at 33:6-9. The SUPERNET 2 chipset was designed for a fiber distributed data interface, or FDDI, network and therefore does not anticipate claim 21.  The Firoozmand patents, however, "are not so limited."  Ex. 1 '749 patent at 6:63-68.  Rather, the patent stresses that the intended application of the disclosed invention is "for passing data arranged at in frames through the buffer of a network adapter."  FDDI is described as only "one utilization" of the invention. *Id.* 1:29-37.  The claims also disclose that the invention applied to the transfer of frames through a network adapter generally.  The first 31 claims are worded so broadly.  It is not until claim 32 that the invention is expressed as limited to FDDI network adapters.  Firoozmand Decl., Ex. 1 at 18-40-23:27;  As such, the Firoozmand patents teach one of ordinary skill in the art that

1   the claimed early transmission invention could be used to improve the performance of any frame-based

2   data network.  CSMA/CD was a very broadly adopted and well-known frame-based network.  As such,

3   Firoozmand I and II discloses every element of claim 21.  Firoozmand Decl., ¶ 13, Exs. 6 and 7.  At a

4   minimum, the Firoozmand patents combined with prior art CSMA/CD network adapters, suggest and

5   motivate one of skill in the art to make the claimed invention.  Firoozmand Decl., ¶ 13.  Therefore

6   these claims are obvious if not anticipated.  *KSR Intern. Co. v. Teleflex, Inc.*, 550 U.S. ____, 127 S.Ct.

7   1727, 1740 (2007) ("[I]f a technique has been used to improve one device, and a person of ordinary

8   skill in the art would recognize that it would improve similar devices in the same way, using the

9   technique is obvious unless its actual application is beyond his or her skill.")  As such, under either §

10  102 or § 103, these claims are invalid.

11              3.      The SUPERNET 2 Chipset Was On Sale More than One Year Before the '872
                        and '094 Applications Were Filed.

12           A patent is invalid under 35 U.S.C. § 102(b) if, more than one year before the patent

13  application is filed, the invention was 1) offered for sale in the United States and 2) the invention was

14  reduced to practice or ready for patenting.  *Pfaff*, 525 U.S. at 67.  The first prong requires a showing of

15  a commercial offer for sale.  *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1352 (Fed. Cir.

16  2002).  Whether there has been an offer is determined under general principles of commercial law.  *Id.*

17           By February 1991 AMD publicly and widely announced the availability of the SUPERNET 2

18  chipset, including the price at which it would sell that product.  Firoozmand Decl., Ex. 7, Kim Decl.,

19  Ex. B.  For example, the February 1991 issue of "LAN: Local Area Network Magazine" included an

20  article entitled "AMD Introduces FDDI Chip for Half-Size Cards."  That article describes the SuperNet

21  2 chipset as including the FORMAC Plus media access controller chip, a physical layer controller chip

22  and transmit and receive chips.  *Id.*  The article, which quotes AMD's FDDI product marketing

23  manager Basil Alwan at length, states that AMD is offering the chipset at a price of $225.00 in lots of

24  one thousand, that "commercial quantities" of the chips would be available by the end of March, 1991.

25  *Id.*  That same offer was repeated in June 1991 in AMD's own magazine sent to its customers.  Kim

26  Decl., Ex. B (AMD00574).  That article again states that the SUPERNET 2 was available at the price

27  of $225.00 when ordered in quantities of one thousand.  These announcements constitute offers to sell

28

the SUPERNET 2 chipset.  The include both price and quantity and thus are sufficiently detailed that an acceptance of these terms would bind AMD.  As such, the first prong of the on-sale bar test is satisfied.

The second prong considers whether the item offered for sale is sufficiently definite that it could be described in a patent application.  *Id.*  That prong is obviously met here as the patent applications were filed, and the chips were fabricated and tested well before the offers for sale.

4. The SUPERNET 2 Chip Set Included Every Element of the '872 and '094 Patent Claims

As will be shown below, the network adapter design conceived of by Mr. Firoozmand, described in his patent and implemented in the SUPERNET 2 Chip Set included every element of the claims 1 and 10 of the '872 and claims 1, 9, 21, 39 and 47 of the '094 patent.  The correspondence between that design and the patent claims is summarized below.  In addition, detailed charts showing the presence of each claim limitation in this prior art are provided as Exhibits 5, 6 and 9 to Mr. Firoozmand's declaration and are incorporated herein by reference.

a) "buffer memory"

Claims 1 and 10 of the '872 patent and claims 1, 9, 21, 39 and 42 of the '094 patent require a "buffer memory" for storing data transferred between the host and the network.  '872 patent at 30:7-9; 31:12; 32:63-65; '094 patent at 28:32-32:45.  The Firoozmand patents, the Data Sheets and other articles confirm that the SUPERNET 2 chipset as offered for sale prior to July 1991 included the claimed buffer memory.  *Id.* ¶ 17.  *See also Id.,* Exs. 5,6,9 and 10.

b) "transferring data of frames to the buffer memory"

Claims 1 and 10 of the '872 patent require means or circuitry for transferring the data of frames from the host into the buffer memory.  '872 patent at 30:10-11; 31:13-15; and 32:66-18.  Claims 1, 9, 21, 39 and 42 of the '094 patent require the step of transferring data to, or receiving data into, a buffer memory.  '094 patent at 28:32-32:45.  The Firoozmand patents, the Data Sheets and other articles confirm that the SUPERNET 2 chipset as offered for sale prior to July 1991 included the claimed circuitry for transferring data of frames to the buffer memory.  *Id.,*  ¶¶ 8-9, Exs. 11-12.

c)      "a threshold determination of an amount of data of the frame transferred to the buffer memory"

Claims 1 and 10 of the '872 patent each require means or logic coupled to the buffer memory that monitors the transfer of data to the buffer memory and to make a threshold determination of the amount of data transferred. '872 patent at 30:11:16; 31:16-21 and 33:1-5. Claim 10 further requires that the threshold value is stored in a host accessible alterable storage location. Firoozmand I and II disclose a host alterable storage location for a threshold value and a means for making the comparison of that value to the amount of data transferred to the buffer memory. Firoozmand Decl., ¶ 10, Exs. 6-7. Claims 9, 21, 39 and 42 of the '094 patent are method claims requiring the performance of the function required for the means or logic for monitoring the transfer of data set out in the '872 patent claims. '094 patent at 31:14-34:49. The Firoozmand patents, the Data Sheets and other articles confirm that the SUPERNET 2 chipset as offered for sale prior to July 1991 included including circuitry and performed the step of making the threshold determination as required by of the asserted claims of the '872 and '094 patents. *Id.*

d)      "initiating transmission of the frame prior to transfer of all of the data of the frame to the buffer memory"

Claims 1 and 10 of the '872 patent require means or logic responsive to the threshold determination for initiating the transfer of the frame prior to transfer of all of the data of the frame to the buffer memory from the host system. '872 patent at 30:17-21; 31:23-27; and 33:10-18. Claims 1, 9, 21, 39 and 42 of the '094 patent require the step of initiating transmission before all of the frame data is received. ''094 patent at 28:33-32:54. The Firoozmand patents, the Data Sheets and other articles confirm that the SUPERNET 2 chipset as offered for sale prior to July 1991 included circuity that acted to initiate transmission of a frame prior to transfer of all of the data of the frame into the buffer memory. *Id.,* Exs. 11 and 12.

e)      "posting status information for use by the host system for optimizing the threshold value"

Claim 10 of the '872 patent also requires a "control means . . . for posting status information for use by the host system for optimizing the threshold value." 31:34-17. Firoozmand Decl., ¶ 11, Exs. 6-7. Claims 21 and 49 of the ''094 patent require the step of "posting status information for use

1   by the host system for optimizing the threshold value."  30:30-31; 32:55-56.  The Firoozmand patents,

2   the Data Sheets and other articles confirm that the SUPERNET 2 chipset as offered for sale prior to

3   July 1991 included circuitry that performed the step of posting status information as required by the

4   asserted claimed.  *Id.,* Exs. 11 and 12.

5              f)        "underrun control logic which . . . supplies a bad frame signal"

6          Claim 1 of the '872 patent also requires underrun control logic which . . . supplies a bad frame

7   signal to the communication medium in response to the underrun condition."  '872 patent at 30:26-31.

8   Firoozmand patents, the Data Sheets and other articles confirm that the SUPERNET 2 chipset as

9   offered for sale prior to July 1991 included the required underrun control logic.  *Id.,* Exs. 11 and 12.

10         As set forth above, and as demonstrated in detail in the Firoozmand declaration and the claim

11  charts attached as Exhibits 11 and 12 thereto, the SUPERNET 2 product included every element of

12  asserted claims 1 and 10 of the '872 patent and claims 1, 9, 21, 39 and 47 of the '092 patent.

13  **IV.    CONCLUSION**

14         For the reasons explained above, the Court should grant Realtek's Motion for Summary

15  Judgment that Claim 1 of the '872 patent is invalid.

16
17  Dated:  November 16, 2007                    AKIN GUMP STRAUSS HAUER & FELD LLP

18                                               By:_____/s/_____
19                                                       Sean P. DeBruine

20                                               Attorneys For Defendant
                                                 REALTEK SEMICONDUCTOR CORPORATION
21
22
23
24
25
26
27
28