1   Jeffrey Ostrow (CSB No. 213118)
    SIMPSON THACHER & BARTLETT LLP
2   2550 Hanover Street
    Palo Alto, California 94304
3   Telephone: (650) 251-5000
    Facsimile: (650) 251-5002
4   E-mail: jostrow@stblaw.com

5   Henry B. Gutman (admitted *pro hac vice*)
    Kerry L. Konrad (admitted *pro hac vice*)
6   Victor Cole (admitted *pro hac vice*)
    SIMPSON THACHER & BARTLETT LLP
7   425 Lexington Avenue
    New York, New York 10017-3954
8   Telephone: (212) 455-2000
    Facsimile: (212) 455-2502
9   E-mail: hgutman@stblaw.com

10  Attorneys for Plaintiff-Counterdefendant

11              UNITED STATES DISTRICT COURT

12        FOR THE NORTHERN DISTRICT OF CALIFORNIA

13              SAN FRANCISCO DIVISION

14
    3COM CORPORATION,                        Case No. C 03-02177-VZW
15
                Plaintiff-Counterdefendant,   **3COM CORPORATION'S**
16                                            **OPPOSITION TO REALTEK**
                                              **SEMICONDUCTOR**
17        v.                                  **CORPORATION'S MOTIONS FOR**
                                              **SUMMARY JUDGMENT OF NON-**
18  REALTEK SEMICONDUCTOR                     **INFRINGEMENT OF U.S. PATENT**
    CORPORATION,                              **NOS. 5,307,459; 6,526,446; AND**
19                                            **6,570,884**
                Defendant - Counterclaim Plaintiff.
20                                            Date: December 20, 2007
                                              Time: 2:30 p.m.
21                                            Courtroom: 6

22                                            *********************
                                              FILED UNDER SEAL
23                                            *********************

24  **SEALED DOCUMENT: CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO**
                        **PROTECTIVE ORDER.**
25  THIS DOCUMENT IS NOT TO BE OPENED NOR THE CONTENTS THEREOF TO BE
            DISPLAYED OR DISCLOSED EXCEPT BY ORDER OF THE COURT.
26

27                          REDACTED

28

# **Table of Contents**

Page

Preliminary Statement ................................................................................................... 1

Statement of Facts ......................................................................................................... 3

I.     Features of Realtek Products that Infringe the '459 Patent ...................... 3

II.    Features of Realtek Products that Infringe the '446 Patent ...................... 4

III.   Features of Realtek Products that Infringe the '884 Patent ...................... 7

Argument......................................................................................................................... 9

I.     Legal Standard................................................................................................ 9

II.    The Court Should Deny Realtek's Motion for Summary Judgment of Non-Infringement of Claim 1 of the '459 Patent ............................................... 10

       A.    Realtek Ignores the Court's Construction of "Indication Signal" and Misinterprets the Term "Generating an Indication Signal to the Host" ...... 10

       B.    Realtek's "Means-Plus-Function" Argument Ignores the Revised Joint Claim Construction and Prehearing Statement and 3Com's Final Infringement Contentions........................................................................ 13

III.   The Court Should Deny Realtek's Motion for Summary Judgment of Non-Infringement of the '446 Patent ................................................................. 14

       A.    Realtek Misconstrues Claim 26 as Requiring Use of a "Set" of Frame Segment Descriptors ........................................................................... 14

       B.    Realtek's Products Contain a "Frame Segment Descriptor" as Described in Claim 26............................................................................ 15

IV.    Realtek's Motion for Summary Judgment of Non-Infringement of the '884 Patent Should Be Denied................................................................................ 16

       A.    Realtek's Descriptor-Based Products Process Data in a Packet While that Packet is in the Buffer. ................................................................... 16

       B.    Realtek's Descriptor-Based Products Read and Process Data from Identified Packets and Produce a Data Value Dependent Thereon............. 18

Conclusion............................................................................................................................ 19

**Table of Authorities**

**FEDERAL CASES**

*Am. Permahedge, Inc. v. Barcana, Inc.*, 105 F.3d 1441 (Fed. Cir. 1997)........................................9

*Berger v. Rossignol Ski Co., Inc.*, No. Cv-05-02523-CRB, 2006 WL 708943, 2006
  U.S. Dist. LEXIS 15764 (N.D. Cal. Mar. 21, 2006) .................................................................9

*Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048 (Fed. Cir. 1994)................15, 18

*Insituform Techs., Inc. v. Cat Contracting, Inc.*, 161 F.3d 688 (Fed. Cir. 1998)...........................9

*Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821 (Fed. Cir. 1991).........................4

*Markman v. Westview Instr., Inc.*, 52 F.3d 967 (Fed. Cir. 1995)...................................................9

*Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340 (Fed. Cir. 2004) .................................12

*Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314 (Fed. Cir. 2003)...........................................13

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)...............................................................15

*Sandisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278 (Fed. Cir. 2005).....................................11

*Specialty Composites v. Cabot Corp.*, 845 F.2d 981 (Fed. Cir. 1988)..........................................15

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) .........................................11

**OTHER AUTHORITIES**

JOHN L. LANDIS, MECHANICS OF PATENT CLAIM DRAFTING (1974) .............................................11

**PRELIMINARY STATEMENT**

Realtek has moved for summary judgment of non-infringement with respect to three of the ten claims that 3Com currently asserts in this case.[1]  With respect to two of these claims—claim 1 of the '459 Patent and claim 26 of the '446 Patent—3Com agrees with Realtek that there is no genuine issue of material fact concerning Realtek's infringement and previously moved for summary judgment concerning them, demonstrating in detail precisely how Realtek's products meet each and every limitation of these claims.[2]  The only dispute now is whether the claim language, properly interpreted and applied, covers those products.

As we demonstrate in greater detail below, Realtek's arguments distort the claims by improperly reading limitations into them from descriptions of particular embodiments in the patents' specifications, and by attempting to give their terms idiosyncratic meanings that contradict both the language of the claims themselves as well as this Court's prior Claim Construction Order.  For example, Realtek seeks to impose a limitation on claim 1 of the '459 Patent that does not exist, citing to a description of an alternative embodiment to make the erroneous assertion that the claim requires the sending of two interrupt signals from an adapter directly to a host processor (Def. '459 Non-Infringement Br. at 3), when the Court has previously recognized that the claim language only requires one.  Dkt. No. 375 (Claim Construction Order) at 16–18.  Similarly, Realtek seeks to impose a false limitation on claim 26 of the '446 Patent to require the generation of a *set* of frame segment descriptors, reading again from a description of a

---

[1] Realtek's motion does not address asserted claims 1, 10, and 21 of U.S. Patent No. 5,434,872 (the "'872 Patent") or 9, 21, 28, and 47 of U.S. Patent No. 5,732,094 (the "'094 Patent").  In light of Realtek's prior admissions, we are not surprised that it chose not to move for summary judgment of non-infringement with respect to any of the claims of the '094 or '872 Patents.  As we demonstrated in our Motion for Summary Judgment of Infringement, filed November 16, 2007, 3Com is entitled to summary judgment of infringement on claim 21 of the '872 Patent and claim 28 of the '094 Patent—as well as claim 1 of U.S. Patent No. 5,307,459 (the "'459 Patent") and claim 26 of U.S. Patent No. 6,526,446 (the "'446 Patent")—based upon Realtek's admissions and the undisputed facts.  *See* 3Com Corporation's Motion for Summary Judgment of Infringement of U.S. Patent Nos. 5,307,459; 5,434,872; 5,732,094; and 6,526,446, filed Nov. 16, 2007.

[2] *See* 3Com Corporation's Motion for Summary Judgment of Infringement of U.S. Patent Nos. 5,307,459; 5,434,872; 5,732,094; and 6,526,446, filed Nov. 16, 2007; Declaration of Dr. Michael Mitzenmacher, dated Nov. 16, 2007 ("Mitzenmacher Nov. 16 Decl.") Exs. 2–5.

1   particular embodiment (Def. '446 Non-Infringement Br. at 9), when the claim language itself

2   speaks only of a single "frame segment descriptor." Declaration of Victor Cole, dated Nov. 16,

3   2007 ("Cole Decl.") Ex. 8 ('446 Patent) at claim 26; *see also* Dkt. No. 375 (Claim Construction

4   Order) at 20–21. Because Realtek's arguments can therefore be resolved by the Court as a matter

5   of law with what is, in effect, an analysis in the nature of claim construction, these claims are ripe

6   for summary adjudication.

7          The third claim at issue here—claim 1 of the '884 Patent—differs in that 3Com did

8   not previously move for summary judgment with respect to it. Nevertheless, Realtek's motion

9   makes clear that the issues concerning this claim are similar and that it, too, can be summarily

10  resolved. Again, Realtek's argument for non-infringement depends entirely upon its attempt to

11  persuade the Court to construe a particular claim term—"while the packet is in the buffer"—in a

12  peculiar way. Without any support in the claim language itself or in the Court's prior

13  constructions, Realtek argues that this limitation can be met only if the *entirety* of the packet is in

14  the buffer when it is being processed. We demonstrate below that this proposed interpretation of

15  the claim is, once again, improperly based on a description of an embodiment in the specification.

16  Moreover, we respectfully submit that no reasonable jury could find that Realtek's Descriptor-

17  Based Products[3] do not, in fact, read and process data from an identified packet while at least a

18  portion of that packet is in the buffer, as described in claim 1 of the '884 Patent. Accordingly, the

19  Court has discretion to grant summary judgment in 3Com's favor with respect to this claim. At

20  minimum, a material issue of fact exists as to whether Realtek's products infringe this claim and

21  Realtek's motion for summary judgment should be denied.

22

23

24

25

26

27  [3]  *See* Mitzenmacher Nov. 16 Decl. Ex. 9 (listing Descriptor-Based Products). Dr. Rubin
    refers to these products in his Expert Report as the "Group II–V products." Declaration of
28  Victor Cole, dated Nov. 16, 2007 ("Cole Decl.") Ex. 9 ("Rubin Report") ¶ 54.

2

1

**STATEMENT OF FACTS**

2

**I.      Features of Realtek Products that Infringe the '459 Patent**

3              As set forth in greater detail in 3Com's opening brief in support of its motion for

4     summary judgment,[4] all of Realtek's accused products (except for the RTL8110SC and PCI-

5     Express Products) infringe claim 1 of the '459 Patent.[5]  3Com has demonstrated, and Realtek

6     admits, that Realtek's products include the required buffer memory, network interface logic, and

7     host interface logic. *See* Mitzenmacher Nov. 16 Decl. ¶¶ 39–42; Cole Decl. Ex. 10 (Realtek's

8     RFA Responses) at Nos. 6, 22, 113.  3Com has also shown that Realtek's products include

9     threshold logic including:

10

11

12                        REDACTED

13

14            •

15

16

17              Realtek does not deny that its products contain these elements.  To the contrary, as

18     Realtek itself explains, "[w]hen data received from the network is transferred to the host [in an

19     early receive operation], the number of PCI bus cycles is counted and, when that count reaches the

20     threshold value, the counter generates an "EROK," or "Early Receive OK" signal." Def. '459

21     Non-Infringement Br. at 5.  The EROK signal "sets a status bit within the Realtek controller chip,"

22     in response to which "the Realtek products generate the ROK, or "Receive OK," interrupt to the

23     ————————————

24     [4]      3Com Corporation's Motion for Summary Judgment of Infringement of U.S. Patent Nos.
        5,307,459; 5,434,872; 5,732,094; and 6,526,446, filed Nov. 16, 2007.

25     [5]      The RTL8110SC and PCI Express Products are excluded based on the absence of

26

27

28

1   host." *Id.* (citing Declaration of Jen-Che Tsai in Support of Realtek's Motion for Summary

2   Judgment of Noninfringement of U.S. Patent No. 5,307,459, dated Nov. 16, 2007 ("Tsai '459

3   Decl.") ¶¶ 9–10; Declaration of Izhak Rubin, Ph.D. in Support of Realtek's Motion for Summary

4   Judgment of Noninfringement of the '459 Patent, dated Nov. 16, 2007 ("Rubin '459 Decl.") ¶ 14).

5   Thus, the EROK indication signal is generated in response to the threshold comparison, and the

6   ROK interrupt signal is sent to the host in response to the EROK indication signal.

7           Realtek nevertheless argues that its products do not infringe the '459 Patent

8   because they generate only one interrupt signal directly to the host processor.[6] The factual

9   assertion is true, but it is irrelevant to the question of infringement. As discussed more fully

10  below, Realtek incorrectly assumes that claim 1 of the '459 Patent requires that two interrupts be

11  sent directly to the host processor, an assumption that is unsupported by the claim language and

12  inconsistent with the Court's Claim Construction Order.

13  **II.   Features of Realtek Products that Infringe the '446 Patent**

14          As set forth in greater detail in 3Com's opening brief in support of its motion for

15  summary judgment,[7] all of Realtek's Descriptor-Based Products infringe claim 26 of the '446

16  Patent. 3Com has shown that the Descriptor-Based Products:

17      • receive from a host device a descriptor signal which corresponds to data stored
         within memory (Mitzenmacher Nov. 16 Decl. ¶¶ 68–70 & Ex. 5; Cole Decl. Ex. 10
18       (Realtek RFA Responses) at No. 146);

19      • REDACTED

20                                                              (Mitzenmacher Nov. 16 Decl.

---

22  [6]  Realtek also notes in its statement of facts that "circuitry exists in the 8169 products

25          Thus, Realtek admits that its RTL8169 products contain the same
    infringing capability, which standing alone is sufficient for a finding of infringement of
26  this apparatus claim. *See Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821,
    832 (Fed. Cir. 1991).

27  [7]  3Com Corporation's Motion for Summary Judgment of Infringement of U.S. Patent Nos.
28  5,307,459; 5,434,872; 5,732,094; and 6,526,446, filed Nov. 16, 2007.

4

¶ 69; Declaration of Dr. Michael Mitzenmacher, dated Nov. 30, 2007 ("Mitzenmacher Opp. Decl.") ¶¶ 33–37); and

- receive the corresponding frame segment from host memory using a DMA download circuit  (Mitzenmacher Nov. 16 Decl. Ex. 5).

Realtek concedes that its Descriptor-Based Products "are descriptor-based and can perform TCP segmentation of large files."  Def. '446 Non-Infringement Br. at 4.  As Realtek explains,

REDACTED

1

2

3

4

5

6

7

8

9

10

11

REDACTED

12

13

14

15

16

17

18

19

20

21

22   8

23

24

25   9

26

27

28

6

1

2

3

4

5

6

7

8   **III.    Features of Realtek Products that Infringe the '884 Patent**

9           3Com has demonstrated, and Realtek admits, that Realtek's Descriptor-Based

10   Products include:

11

12

13

14

15                          REDACTED

16

17

18

19

20

21

22

23

24

25

26

27   ―――――――――――――――――――
     10
28

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REDACTED

11

8

1

2

3    REDACTED

4

5

6              As we demonstrate below, neither claim 1 of the '884 Patent nor

7    the Court's construction of the terms therein support any such limitation.

8                                    **ARGUMENT**

9    **I.       Legal Standard**

10             Claim construction is a matter of law for the Court, while the determination of

11   whether the asserted claims read on the accused products is a question of fact.  *See Markman v.*

12   *Westview Instr., Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (*en banc*); *Insituform Techs., Inc. v.*

13   *Cat Contracting, Inc.*, 161 F.3d 688, 692 (Fed. Cir. 1998).  Although many of the claim

14   construction issues in this case have been resolved by the Court, the Court is not precluded from

15   resolving remaining claim construction issues as a matter of law during the summary judgment

16   stage.  *See Markman*, 52 F.3d at 981.  ("[Pronouncing the meaning of the claim language] can be

17   accomplished by the court in framing its charge to the jury, but may also be done in the context of

18   dispositive motions such as those seeking judgment as a matter of law.");  *see also Am.*

19   *Permahedge, Inc. v. Barcana, Inc.*, 105 F.3d 1441, 1444–45 (Fed. Cir. 1997) (using a motion for

20   summary judgment as an appropriate forum for resolving the disputed construction of a claim

21   term); *Berger v. Rossignol Ski Co., Inc.*, No. Cv-05-02523-CRB, 2006 WL 708943, at *2, 2006

22   U.S. Dist. LEXIS 15764, at *5 (N.D. Cal. Mar. 21, 2006) (citing *Markman*, 52 F.3d at 981)

23   ("[T]he court has discretion to construe claims, if needed, in the context of a summary judgment

24   motion.").

25

26

27

28

9

II.    **The Court Should Deny Realtek's Motion for Summary Judgment of Non-Infringement of Claim 1 of the '459 Patent**

A.    **Realtek Ignores the Court's Construction of "Indication Signal" and Misinterprets the Term "Generating an Indication Signal to the Host"**

Realtek's non-infringement argument rests upon a misinterpretation of the language of claim 1 of the '459 Patent and is inconsistent with the Court's prior construction of its terms. The term in dispute is "generating an indication signal to the host processor." *See* Def. '459 Non-Infringement Br. at 7–10. Realtek contends that this language should be construed to require that "the indication signal is generated directly to the host" and that this signal "must also be followed by a second, subsequent interrupt." Def. '459 Non-Infringement Br. at 3. Because its products use an indication signal that is not an interrupt and is not sent directly to the host, Realtek argues that its products cannot meet the limitations of the claim.

The fatal flaw in Realtek's argument is that, as the Court clearly understood in its Claim Construction Order, "the indication signal and interrupt signal [described in claim 1] are different things." Dkt. No. 375 (Claim Construction Order) at 17.[12] While the indication signal "heralds the arrival of a subsequent" interrupt, it need not itself be an interrupt. Dkt. No. 375 (Claim Construction Order) at 17. Citing numerous examples in the specification of the '459 Patent where an interrupt is generated in response to an indication signal, thereby reducing interrupt latency, the Court held that an indication signal, for purposes of interpreting claim 1, simply means "a signal that indicates a subsequent interrupt." *Id.* at 18.

Nor does claim 1 require that the indication signal be sent *directly* to the host, as Realtek suggests. Def. '459 Non-Infringement Br. at 7–8. The claim language uses the word "generating," which connotes the initiation of an action, rather than its completion.[13] The

---

[12] Brian Petersen, the first-named inventor of the '459 Patent, explains in his declaration: "an interrupt is a hardware signal that is driven directly to the host or microprocessor, generally through an interrupt controller, which causes a change of state in the host or microprocessor. An indication signal indicates only that a change of state has occurred on the adapter. It may or may not result in an interrupt signal to the host." Declaration of Brian Peterson, dated Nov. 30, 2007 ("Petersen Decl.") ¶ 6.

[13] "Generated," according to Merriam-Webster's Ninth New Collegiate Dictionary, means "to bring into existence," "to originate by a vital or chemical process," "to define or originate (as a mathematical or linguistic set or structure) by the application of one or more

10

1  limitations of the claim are met if the device contains "threshold logic for allowing the period of

2  time for the host processor to respond to the indication signal during the transferring of the data

3  frame" (Cole Decl. Ex. 7 ('459 Patent), claim 1), without any requirement that the host processor

4  must respond *directly* to that indication signal.  Indeed, Realtek can point to nothing in the patent

5  specification to support its misreading of the claim beyond the "Summary of the Invention" (Def.

6  '459 Non-Infringement Br. at 3), which does little more than restate the claim language virtually

7  *in haec verba*.  *See* Cole Decl. Ex. 7 ('459 Patent) 2:30–54; claim 1.

8          Realtek further errs when it argues that claim 1 must be read as limited to devices

9  in which the indication signal is sent directly to the host in light of dependent claim 5, which

10  specifically describes a device in which the indication signal preceding the interrupt signal is sent

11  to the host interface logic located at the boundary between the adapter and the host, rather than to

12  the host processor itself.  Def. '459 Non-Infringement Br. at 3–4.  According to Realtek, "[t]he

13  inventors clearly understood these two methods to be different, and they claimed them as distinct

14  inventions." *Id.* at 3.  What Realtek appears not to appreciate is that, because claim 5 depends

15  from claim 1, it is not a "different method" or "distinct invention" but simply a particular

16  embodiment of the same invention described in claim 1.  In other words, claim 5 is subsumed in

17  claim 1 and any infringement of claim 5 must necessarily infringe claim 1 as well.

18          It is axiomatic that an independent claim must be construed to encompass within its

19  scope all of its dependent claims.  As the leading treatise concerning claim drafting states, a

20  dependent claim is "[a] claim which refers back to and further restricts (i.e. makes more narrow) a

21  single preceding claim (the parent claim)."  JOHN L. LANDIS, MECHANICS OF PATENT CLAIM

22  DRAFTING 521 (1974).  Indeed, the Federal Circuit has repeatedly affirmed that "[a] claim

23  construction that excludes a preferred embodiment . . . is 'rarely, if ever, correct.'"  *Sandisk Corp.*

24  *v. Memorex Prods., Inc.*, 415 F.3d 1278, 1285 (Fed. Cir. 2005) (quoting *Vitronics Corp. v.*

25  *Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)).  Thus, the Federal Circuit has not

26  hesitated to overturn claim constructions that would effectively exclude from the scope of an

27  _____

rules or operations to given quantities" or "to be the cause of."  WEBSTER'S NINTH NEW

28  COLLEGIATE DICTIONARY 510 (1986).

11

1  independent claim one or more of its dependent claims. *See, e.g., Microsoft Corp. v. Multi-Tech*

2  *Sys., Inc.*, 357 F.3d 1340, 1353–54 (Fed. Cir. 2004) (reversing district court's claim construction

3  of "speakerphone" as a traditional speakerphone in claim 1 because such an interpretation

4  excluded the embodiments of dependent claims 2 and 5, which required "respectively, a 'deskset

5  microphone' and a 'deskset speaker,' or a 'headset microphone' and a 'headset speaker'").

6  Far from proving that claim 1 must be read to exclude what Realtek characterizes

7  as "indirect generation" of an indication signal to the host, Realtek's reference to dependent claim

8  5 establishes only that claim 1 does, in fact, encompass such devices. Indeed, the patent's

9  specification discloses that the "threshold value represents the amount of a data frame which will

10  be transferred into or out of buffer 9 before an early indication signal will be generated *which may*

11  *cause host interface logic 8 to send an interrupt to host processor 5*." Cole Decl. Ex. 7 ('459

12  Patent), 6: 34–38 (emphasis supplied).[14] Even Realtek's own expert concedes, albeit in the

13  context of offering an opinion concerning indefiniteness, that he cannot find any support in the

14  specification to suggest that the host processor must receive two distinct signals.[15]

15  Both the intrinsic and extrinsic evidence therefore demonstrate not only that the

16  Court's construction of "indication signal" was correct, but that the term "generating an indication

17  signal to the host processor," as used in claim 1, reads literally on the capability of the accused

18  products. As Realtek concedes, Realtek's products generate an EROK, or "Early Receive OK"

19  indication signal, in response to a threshold value comparison. An "ROK interrupt signal" is

20  subsequently sent to the host in response to the EROK indication signal. Thus, the two signals

21  required under the Court's construction of claim 1 are present in Realtek's products and there can

22  be no genuine dispute that these products literally infringe the '459 Patent.

23

---

24  [14] As Mr. Petersen explains, "[o]ne way to generate these interrupts was to use an interrupt
25  controller, which would gather indications from other parts of the adapter and consolidate
    them into a concise form to be presented to the host or microprocessor, both as software
26  accessible registers and as a hardware interrupt signal." Petersen Decl. ¶ 6.

27  [15] *See* Rubin Report ¶ 89 ("In the '459 patent, the structure consisting of threshold logic 10
    and host interface logic 8 is not described as generating an indication signal to the host
28  processor.").

B.    **Realtek's "Means-Plus-Function" Argument Ignores the Revised Joint Claim Construction and Prehearing Statement and 3Com's Final Infringement Contentions.**

In its Claim Construction Order, the Court construed the language in claim 1 reciting a "means for comparing the counter to the threshold value in the alterable storage location and generating an indication signal to the host processor responsive to a comparison of the counter and the alterable storage location" as a "means-plus-function" element subject to 35 U.S.C. § 112 ¶ 6, and held that the structure disclosed in the '459 Patent must both "compare" and "generate." *See* Dkt. No. 375 (Claim Construction Order) at 18–19.  Under Section 112 ¶ 6, 3Com must therefore demonstrate that there is some structure in the Realtek Products that literally performs the function recited in the claim limitation, and that it does so using the identical or equivalent circuit structure disclosed in the patent specification as performing that function." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1328 (Fed. Cir. 2003).

Realtek erroneously contends that 3Com "has never identified any specific structure in the accused Realtek product as identical or equivalent to the structure in the '459 patent." Def. '459 Non-Infringement Br. at 7.  This is simply untrue.  To the contrary, 3Com has identified, on numerous occasions, the "Early Interrupt Control Logic" described in Realtek's datasheets as the claimed means for comparing a counter to an alterable storage location and generating an EROK signal responsive thereto, and, more specifically,

REDACTED                              . *See, e.g.,*

Mitzenmacher Decl. Ex. 2.

Realtek further contends that "3Com has never identified the structure in the patent it contends performs the claimed function." Br. at 7.  In fact, *both* parties have identified numerous examples of structure—including 10-bit comparators—disclosed in the '459 Patent specification that perform the claimed functions of comparing a counter to a threshold value and generating an output responsive thereto. *See* Dkt. No. 327 (Revised Joint Claim Construction and Prehearing Statement Pursuant to Patent Local Rule 4-3, filed March 10, 2006) (the "RJCCS") at 84–85.  Realtek's own expert certainly had no difficulty in identifying one such structure, going so

13

1   far as to rely upon it in his expert report in connection with his indefiniteness opinion. Rubin

2   Report ¶ 89.

3          Claim 1 of the '459 Patent has been construed and both parties have identified

4   numerous structures in the specification of the '459 Patent that correspond to the claimed means.

5   After being given the opportunity to review the hardware description language code that precisely

6   describe Realtek's products, 3Com has identified the exact collection of gates, referred to as

7   ~~REDACTED~~, that infringes the "means for comparing . . . and generating" element of claim 1. Thus,

8   3Com has fully met its burden with respect to this means-plus-function element of this claim.

**REDACTED**

9   **III.   The Court Should Deny Realtek's Motion for Summary Judgment of Non-
         Infringement of the '446 Patent**

10

11         **A.   Realtek Misconstrues Claim 26 as Requiring Use of a "Set" of Frame Segment
                Descriptors**

12         Realtek's summary judgment argument misconstrues the language of claim 26 as

13   well as the Court's Claim Construction Order interpreting that claim.  To begin with, Realtek

14   contends that the claim element "using said descriptor signal to generate a frame segment

15   descriptor using a segmentation circuit" requires using the descriptor to generate a *set* of multiple

16   frame segment descriptors.  Def. '446 Non-Infringement Br. at 9.  The language of claim 26,

17   however, speaks only of generating "a frame segment descriptor" in the singular.  Realtek can

18   point to nothing in the claim language or specification that even remotely suggests that this plain

19   language should be disregarded, or provides any rational reason for the Court to read one to mean

20   two.

21         Instead, Realtek points to a description in the specification of one embodiment, in

22   which a set of frame segment descriptors is, in fact, generated.  *Id.* at 2–3.[16]  Realtek commits a

23   fundamental error, however, by seeking to use that description to impose an additional limitation

24   in the claim itself.  It is well-established that "particular embodiments appearing in a specification

25

---

26   [16]  At the same time, the specification also describes another embodiment in which a single
          frame segment descriptor is generated, after which the corresponding data is downloaded
27        and the process repeats itself.  *See* '446 Patent, 10:25–67, Fig. 4.  Thus, no inference can
          be drawn that the inventors contemplated that the patented method could be practiced only
28        by using a *set* of frame segment descriptors.

1   will not be read into the claims when the claim language is broader than such embodiments."

2   *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994); *see also*

3   *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987 (Fed. Cir. 1988) (noting that limitations

4   "should not be read from the specification into the claims"); *Phillips v. AWH Corp.*, 415 F.3d

5   1303, 1323 (Fed. Cir. 2005) (same).  By asking the Court to read the language "a frame segment

6   descriptor" in claim 26 to mean "a set of frame segment descriptors" based upon the description of

7   a particular embodiment in the specification, Realtek is explicitly (and impermissibly) asking the

8   Court to narrow the scope of that claim in direct contravention of this fundamental principle.

9       **B.**    **Realtek's Products Contain a "Frame Segment Descriptor" as Described in**

10              **Claim 26**

11      Realtek apparently means to contend that the

12      cannot be a "frame segment descriptor"

13  within the scope of claim 26 because it is purportedly

14      Def. '446 Non-Infringement Br. at 7.

# REDACTED

27  [17]  *See* Rubin Report ¶ 65 ("To determine where a data file is located, not only is the starting

    memory address is [sic] needed, but at least data file size is needed, which can be used to

28  derive the end memory address for the data file.").

15

# REDACTED

Accordingly, 3Com respectfully submits that there is no genuine issue of material fact concerning infringement of claim 26 of the '446 Patent by Realtek's Descriptor-Based Products. At the very least, 3Com has made the necessary showing that material issues of fact exist sufficient to preclude summary judgment of non-infringement.

## IV. Realtek's Motion for Summary Judgment of Non-Infringement of the '884 Patent Should Be Denied

### A. Realtek's Descriptor-Based Products Process Data in a Packet While that Packet is in the Buffer.

In opposing Realtek's motion, 3Com has proffered evidence sufficient to sustain a finding that that Realtek's Descriptor-Based Products meet each and every element of claim 1 of the '884 Patent. As the accompanying declaration of Dr. Mitzenmacher shows, Realtek's Descriptor-Based Products include both claimed ports, a buffer, logic to transfer packets from the buffer to the host port, a packet filter for identifying packets, and logic to read and process identified packets and produce a data value prior to the packet's transfer to the host port. Mitzenmacher Opp. Decl. ¶¶ 39–45 & Ex. 2. Indeed, Realtek has admitted that most of the elements of the claim are, in fact, present in its products. *Id.* at ¶¶ 39, 40, 42, 44. This is sufficient to preclude summary judgment in Realtek's favor.[19]

---

[18]

[19] Realtek also challenges the validity of claim 1 based on indefiniteness, stating that "[t]he patent specification, however, never explains what is meant by the 'data value dependent on the contents of the packet' which the second logic must be capable of generating." Def. '884 Non-Infringement Br. at 3. This is incorrect, as a review of the specification readily reveals. The term "data value" is a common one, easily understood by lay persons as well as persons of ordinary skill in the art. The '884 Patent specifically discloses two types of data value that the processing logic may produce in preferred embodiments. In each, the processing logic stores the data values in a register by setting one or more bits. *See* '884 Patent, 10:30–33 (teaching that the processing logic may "issu[e] either an [sic] discard command or an [sic] continue command via the Command register").

1    Going further, it is clear that Realtek's non-infringement position depends entirely

2    upon its idiosyncratic interpretation of the claim language "while the packet is in the buffer,"

3    which it reads as requiring that the *entire* packet must be in the buffer when the VLAN data is read

4    and processed.

5

6    # REDACTED

7

8    ,[20] Realtek's expert opines that these

9    products do not infringe.

10    Nothing in claim 1 or the Court's construction of its terms, however, suggests that

11    the buffer must be of any particular size or configuration, let alone that the entire packet must be

12    in the buffer at the time of processing.  To the contrary, the Court construed the term "buffer" in

13    the '884 Patent to mean "a temporary storage device connected to the first port for received

14    packets," specifically rejecting the notion that the buffer must also be "of sufficient size to store a

15    plurality of received packets." Dkt. No. 375 (Claim Construction Order) at 25–26.  This ruling

16    alone moots the opinion of Realtek's expert, as that opinion is based upon the contradictory

17    premise that "[o]ne of ordinary skill would not consider the serial-to-parallel converter [in

18    Realtek's Descriptor-Based Products] to be the temporary storage for received packets, but would

19    consider the RX FIFO to be the temporary storage for received packets *because it can store one or*

20    *more packets*." Rubin '884 Decl. ¶ 13 (emphasis supplied).   Moreover, the specification of the

21    '884 Patent itself teaches that the packet filter may notify the processing logic of a match "before

22    the packet [is] completely received." Declaration of S.H. Michael Kim in Support of Realtek's

23    Notice of Motion and Motion for Summary Judgment of Noninfringement U.S. Patent No.

24    6,570,884, dated Nov. 16, 2007 ("Kim Decl.") Ex. A ('884 Patent), 7:18–19.

25

26    _____

27    [20]

28

17

1    Realtek also points to the description in the specification of an embodiment in

2    which an entire packet is resident in the buffer before the packet is processed.[21]  As noted above,

3    however, it is improper to use the description of a particular embodiment to narrow the scope of a

4    claim, as Realtek plainly seeks to do here. *Electro Med.*, 34 F.3d at 1054.  Any inference to be

5    drawn from that embodiment is negated by the specification's description of a different

6    embodiment in which the packet filter is able to notify the processing logic of a match via an on-

7    chip interrupt signal, which "could [be] issue[d] . . . to the [NIC] processor as soon as the match is

8    detected, rather than waiting for the packet to get to the top of the FIFO."  Kim Decl. Ex. A ('884

9    Patent), 7:12–14.

10   **B.    Realtek's Descriptor-Based Products Read and Process Data from Identified**
       **Packets and Produce a Data Value Dependent Thereon.**

11

12    Realtek contends that "        **REDACTED**

13    cannot be the 'reading and processing' required to be carried out by the second

14   [processing] logic" because the patent specification describes such actions as part of the filtering

15   process. Def. '884 Non-Infringement Br. at 9.  Realtek then asserts that

16   cannot be the second [processing] logic because it performs a filtering operation." *Id.*  As best we

17   understand it, Realtek does not deny that its products perform the functions of "reading and

18   processing."  Rather, it contends that the "reading and processing" must occur in a process distinct

19   from the "filtering" process and must be performed by logic that is not also involved in that

20   process. There is simply no support for this in the claim, and Realtek proffers none. [22]

21

22

---

23   [21]  In that embodiment, the patent teaches "when a packet is identified with a pattern match
       module, a flag is written in the packet as the packet passes through the receive FIFO.
24      When that flagged packet reaches the top of the receive FIFO, the processor accesses the
       packet for processing." Def. '884 Non-Infringement Br. at 3 (citing '884 Patent, 6:30–37).

25   [22]  Realtek cites to an embodiment in which packet types other than VLAN packet types are
       identified based on the identity of certain bits that are not in the VLAN header.  In this
26      embodiment, the VLAN header is removed so that a filter which has not been designed to
       process VLAN packets can disregard the extra bytes contained in a VLAN header that
27      precede the targeted bytes in that embodiment. Mitzenmacher Opp. Decl. ¶ 14 n.1.  This
       embodiment is irrelevant here.
28

18

1          Thus, there is no genuine issue of material fact as to whether Realtek's products

2    contain the necessary logic for "reading and processing" data, and that this "reading and

3    processing" occurs while at least some of the packet is in the buffer.  The Court, in its discretion,

4    would therefore be justified in granting summary judgment in 3Com's favor.  In all events,

5    Realtek's motion for summary judgment of non-infringement of the '884 Patent should be denied.

6                                        **CONCLUSION**

7          For the foregoing reasons, the Court should deny Realtek's Motion for Summary

8    Judgment of Non-Infringement of U.S. Patent No. 5,307,459, Realtek's Motion for Summary

9    Judgment of Non-Infringement of U.S. Patent No. 6,526,446, and Realtek's Motion for Summary

10   Judgment of Non-Infringement of U.S. Patent No. 6,570,884.

11

12   Dated:  November 30, 2007

13                                    SIMPSON THACHER & BARTLETT LLP

14

15

16                                    By   /s/ Henry B. Gutman
                                          Henry B. Gutman
17                                        Attorneys for 3Com Corporation

18

19

20

21

22

23

24

25

26

27

28