Yitai Hu (SBN 248085)
Sean P. DeBruine (SBN 168071)
Elizabeth H. Rader (SBN 184963)
S. H. Michael Kim (SBN 203491)
AKIN GUMP STRAUSS HAUER & FELD, LLP
Two Palo Alto Square
3000 El Camino Real, Suite 400
Palo Alto, CA 94306-2112
Telephone:      (650) 838-2000
Facsimile:      (650) 838-2001
Email:          erader@akingump.com

Attorneys for Defendant
REALTEK SEMICONDUCTOR CORP.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| 3COM CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>D-LINK SYSTEMS, INC.<br><br>and<br><br>REALTEK SEMICONDUCTOR CORP.,<br><br>Defendants. | Case No. CV-03-2177-VRW<br><br>**REALTEK'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**<br><br>Judge:      Vaughn R. Walker<br>Date:       December 20, 2007<br>Time:       2:30 p.m.<br>Courtroom:  6, 17th Floor |

# **Table of Contents**

**Page No.**

I. INTRODUCTION ...........................................................................................1

II. ARGUMENT ................................................................................................2

    A.    3Com Raises No Genuine Issues To Prevent Summary Judgment Of Invalidity of the '459, '872 and '094 Patents (the "Parallel Tasking" Patents)........................2

        1.    The Firoozmand Patents Are Prior Art........................................................2

        2.    The SUPERNET 2 Chipset is Prior Art. .....................................................5

        3.    The Firoozmand Patents Are Not Limited to FDDI, and SUPERNET 2 Chipset Disclose Every Limitation of the Asserted Claims of the Parallel Tasking Patents ...........................................................................................6

        4.    Firoozmand and the SUPERNET 2 Chipset Disclose CSMA/CD Networks, Invalidating Claim 28 of the '872 Patent and Claim 21 of the '094 Patent. ...........................................................................................10

        5.    Using the SUPERNET 2 Parallel Tasking Features in an Ethernet Adapter Would Have Been Obvious. ...........................................................11

    B.    Claim 26 of the '446 Patent Is Invalid Over the Osborne Patent...........................13

    C.    Claim 1 of the '884 Patent Is Invalid Over the Boucher and Muller II Patents.....13

        1.    The Muller Patent Is Prior Art ...................................................................13

        2.    The Muller Patent Discloses Every Limitation of Claim 1.........................14

        3.    The Boucher Patent Discloses Every Limitation of Claim 1 .....................15

III. CONCLUSION.............................................................................................15

# Table of Authorities

## CASES

*Arthrocare Corp. v. Smith & Nephew, Inc.*,
406 F.3d 1365, 1372 (Fed. Cir. 2005) ................................................................. 14

*Celeritas Techs., Ltd. v. Rockwell Int'l, Corp.*,
150 F.3d 1354, 1361 (Fed. Cir. 1998) ................................................................. 9

*Chen v. Bouchard*,
347 F.3d 1299 (Fed. Cir. 2003) ......................................................................... 5

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,
158 F.3d 1002, 1008 (9th Cir. 1998) ................................................................. 9

*Environ Prods., Inc. v. Furon Co.*,
215 F.3d 1261, 1266 (Fed. Cir. 2000) ................................................................. 6

*Hazeltine v. United States*,
820 F.2d 1190 (Fed. Cir. 1989) ......................................................................... 6

*In re GPAC*,
57 F.3d 1573 (Fed. Cir. 1995) ......................................................................... 13

*In re Graves*,
69 F.3d 1147 (Fed. Cir. 1995) ......................................................................... 11

*Mahurkar v. C.R. Bard, Inc.*,
79 F.3d 1572, 1576 (Fed. Cir. 1996) ................................................................. 4

*Monsanto Co. v. Mycogen Plant Sci., Inc.*,
261 F.3d 1356, 1362-63 (Fed. Cir. 2001) ......................................................... 5

*Radobenko v. Automated Equip. Corp.*,
520 F.2d 540, 543-44 (9th Cir. 1975) ............................................................... 9

## STATUTES

U.S.C. § 102(b) ................................................................................................. 7

Fed. R. Civ. P. 26(f) ......................................................................................... 15

# I. **INTRODUCTION**

3Com's Opposition to Realtek's Motions for Summary Judgment of Invalidity ("Opp'n.") can be explained only as the act of a desperate party. Only desperation can explain 3Com's sudden presentation of a claim construction argument, namely that all of the asserted claims of the '459, '872 and '094 patents are limited specifically to network adapters for Ethernet networks. 3Com did not timely raise that position during claim construction and its expert's report and deposition testimony reveal no such contention. More importantly, there is absolutely no basis for that argument. With the exception of two, the claims contain no such express limitation. The patents mention Ethernet only in passing, and then with reference only to a preferred embodiments. In addition, 3Com raises this new and unsupported claim construction in order to argue that its patent claims are different than the FDDI network disclosed as the preferred embodiment in the prior art Firoozmand patents. However, 3Com essentially admits that the disclosure of the Firoozmand patent is not limited to FDDI networks. Thus, the alleged differences between these network standards is irrelevant to the invalidity of most of the asserted claims. Yet 3Com devotes a large portion of its brief, and its expert devotes fully seven pages of his declaration to this issue. Because this purported limitation is non-existent in all but two of the claims, the vast majority of 3Com's brief, and its expert's declaration, are irrelevant and must be disregarded.

Only desperation can explain 3Com's many other attempts to argue that claim elements are missing from the prior art based on interpretations of other of the asserted claim limitations that directly contradict this Court's claim construction order. Only desperation can one explain 3Com's expert proposing an entirely new basis for his opinion that the Muller II prior art does not anticipate the '884 patent not disclosed in his expert report or mentioned in his deposition. Because the substance of that opinion was never set out in his expert report, and Realtek was denied any opportunity to cross-examine him on the basis or rebut that new opinion, it should be stricken from the record and disregarded.

3Com clearly raises these new, unsupported and irrelevant arguments as a smoke screen to hide the clear invalidity of these claims. Among the glaring shortcomings in 3Com's opposition is its complete failure to meet its burden of presenting admissible evidence necessary to establish diligence

by 3Com in reducing it alleged inventions to practice. As a result of that failure, the Firoozmand patents and the Muller II patent are established as prior art as a matter of law. 3Com's smokescreen likewise fails to establish that any other actual claim limitations are missing from the disclosure of the prior art. As such, Realtek is entitled to summary judgment that these patent claims are invalid as it requests.

## II.  ARGUMENT

### A.  3Com Raises No Genuine Issues To Prevent Summary Judgment Of Invalidity of the '459, '872 and '094 Patents (the "Parallel Tasking" Patents).

#### 1.  The Firoozmand Patents Are Prior Art

3Com devotes three full pages of its opposition in an attempt to show that its inventors conceived of the "parallel tasking" patent claims before Mr. Firoozmand. As discussed below, that effort fails. However, that issue is not necessary for the Court's entry of summary judgment that these claims are invalid. That is because, even if the court concludes that there is an issue of fact regarding the date of conception, the Firoozmand patents are nevertheless prior art to the asserted 3Com patents as a matter of law. As the second party to reduce the claimed inventions to practice, 3Com bears the burden of establishing its diligence in reducing the claimed inventions to practice. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996). 3Com proffers no admissible testimony on which a trier of fact could conclude it was diligent.

The applications for the 3Com patents were filed on July 28, 1992. Absent sufficient corroborated evidence of an earlier actual reduction to practice, 3Com must show diligence during the entire time from May 1990 to July 1992. 3Com fails to adduce any admissible evidence sufficient to demonstrate either an earlier actual reduction to practice or the required diligence. First, 3Com relegates this dispositive issue to a footnote. Opp'n at 5, n. 7. It claims a reduction to practice on November 26, 1991 but provides no admissible evidence to support that statement. Rather, it relies on a declaration made by two of the inventors during the prosecution of the patent. Cole Decl., Ex. 3 at ¶ 15. That conclusory statement is itself based on hearsay ("I am informed and believe") and is made in an uncorroborated document that is inadmissible hearsay. As such the Court may not consider that document as evidence in for purposes of summary judgment. Even if admissible and accepted as true, that statement fails to establish that the alleged prototype included every element of the asserted patent

claims, or if so, that it was found to work for its intended purpose. Moreover, the statement of the inventors is not corroborated by any evidence whatsoever. As such, 3Com fails to provide any evidence regarding a reduction to practice prior to July, 1992.

Similarly, 3Com comes forward with no admissible evidence establishing any facts necessary to show diligence. Rather, it offers statements by Mr. Verhalen and Mr. Petersen that are no more than legal conclusions. Those statements simply aver that the inventors and "others" were diligent. There is not even an acknowledgement of the period of time covered by that alleged diligence. Verhalen Decl., ¶ 10; Scherer Decl., ¶ 9; 3Com was required to come forward with evidence showing the inventor's activities during the entire period from just before Mr. Firoozmand's conception date until their own reduction to practice. *Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1362-63 (Fed. Cir. 2001). That evidence must show that the inventors devoted themselves substantially and continuously to those efforts, and must account for all of the time in the diligence period. *Id.* at 1369. Rather than even attempting to meet that burden, 3Com relies on statements that are devoid of any facts. Rather, they merely parrot a legal conclusion. They do not even discuss the relevant period, much less account for the inventors' activities during that period. 3Com has therefore failed to meet its burden of producing competent evidence. *See Chen v. Bouchard,* 347 F.3d 1299 (Fed. Cir. 2003) (party who provided no evidence of who worked on the project on what days for any day in the period failed to meet burden of showing diligence). Because there is ***no*** evidence upon which a reasonable trier of fact could conclude that 3Com's inventors were diligent during the crucial period, as a matter of law the Firoozmand patents are prior art.

Even setting aside 3Com's dispositive failure to meet its burden of producing admissible evidence on diligence, the evidence is clear, convincing and not rebutted that Farzin Firoozmand was the first to invent the subject matter of the asserted claims of the '872, '094 and '459 patents. 3Com again fails to come forward with sufficient evidence to avoid summary judgment on this point. First, 3Com misstates the quantum of evidence required to establish Mr. Firoozmand's date of conception. 3Com is mistaken with regard to the standard of proof required to establish Mr. Firoozmand's earlier invention. Mr. Firoozmand's patents were applied for on May 29, 1990. Firoozmand I issued on May 11, 1993, while Firoozmand II issued on January 30, 1996. The 3Com "parallel tasking" patents were

applied for on July 28, 1992 and issued between 1994 and 1998. Declaration Of Farzin Firoozmand in Support of Realtek's Alternative Motion For Summary Judgment of Invalidity of The '872 And '094 Patents ("Firoozmand '872 and '094 Decl."), Ex. 6 ('872) and 7 ('094); Declaration of Ming-Tao Yang in Support of Realtek's Motion for Summary Judgment of Invalidity of U.S. Patent No. 5,307,459 ("Yang '459 Decl."), Ex. A ('459).

As such, the applications for the 3Com parallel tasking patents and the Firoozmand patents were co-pending before the PTO. On these facts, the proper burden of proof is the preponderance of the evidence. Where two parties have co-pending applications directed toward the same subject mater, the priority of the claimed inventions is determined based on the preponderance of the evidence. *Environ Prods., Inc. v. Furon Co.*, 215 F.3d 1261, 1266 (Fed. Cir. 2000). On that standard there is no question that Mr. Firoozmand was the first inventor.

Mr. Firoozmand filed at least two patent applications on May 29, 1990. Firoozmand '872 and '094 Decl.", Ex. 1 and 2. Those applications serve as a constructive reduction to practice of the inventions they disclose. *Hazeltine v. United States,* 820 F.2d 1190 (Fed. Cir. 1989). Mr. Firoozmand provides the following to corroborate his invention date. His inventions were conceived of while he was employed at AMD, and his patents are assigned to AMD. Mr. Firoozmand left AMD's employ in 1989. He completed his invention disclosure form to begin the process of applying for his patents in May, 1989. Based on the totality of the circumstances, the only reasonable conclusion to draw from this evidence is that his conception was complete no later than May 15, 1989.

3Com presents no evidence to establish an earlier date. Its inventors and others make vague references to meetings occurring between mid-1988 and mid-1989. *See* Connery, Peterson, Sherer, and Verhalen Declarations. None of these actually state when an adequate disclosure of the claimed inventions was made. Even taking them at face value, because they are stated in a range, the earliest date they support is the end of "mid-1989." Charitably, this would be June 30, 1989. As such, even accepting that the June 13, 1989 document is sufficiently detailed to support conception by that date, applying the required rule of reason analysis Mr. Firoozmand clearly predates 3Com's alleged invention.

## 2. The SUPERNET 2 Chipset is Prior Art.

3Com fails to rebut the uncontested evidence that the SUPERNET 2 chipset was offered for sale more than a year before its patent applications were filed, nor that the chipset included every element of its asserted patent claims.

### (a) Realtek's Evidence that SUPERNET Was On Sale Is Clear and Convincing and Is Unrebutted.

3Com incorrectly applies the law of evidence in a futile attempt to deny that the SUPERNET 2 chipset was offered for sale in February 1991. In a well-known periodical published and circulated in February 1991, AMD offered to sell the SUPERNET 2 chipset at a stated price for a given quantity. Firoozmand '872 and '094 Decl., Ex. 9. 3Com attempts to dismiss this offer as hearsay, but it is mistaken. The magazine article is self-authenticating. F.R.E. 902. It is not hearsay because Realtek offers this document to prove simply that the statement was made – that AMD offered to sell the SUPERNET 2 chipset. Thus, this document is not hearsay and conclusively establishes that the chipset was offered for sale in February 1991. The same is true of the magazine published by AMD for its customers. As such, 3Com has failed to rebut the evidence of invalidating offers for sale under 35 U.S.C. § 102(b).

### (b) Realtek's Evidence Of The Actual Structure of SUPERNET 2 Is Competent and Unrebutted.

The undisputed evidence establishes that the relevant anticipating features of the SUPERNET 2 chipset were part or Mr. Firoozmand's initial conception of that product in or before 1988. Firoozmand '872 and '094 Decl., ¶ 6. They were fully disclosed in his May, 1990 patent applications and spelled out in detail in the 1991 datasheets accompanying the commercial release of that product. *Id.*, ¶ ¶ 5-6, Exs.1-2, 8. Based on this evidence there can be no genuine issue that the SUPERNET 2 chipset as offered for sale in 1991 contained those elements. 3Com does not rebut any of this evidence. Rather, it focuses only on the datasheets, and argues that because they are not definitively dated at the time of the offer for sale, there is insufficient evidence to demonstrate the features of the product that were present at the time of that February 1991 offer. In order to prevail on that argument 3Com essentially argues that the "parallel tasking" features, which were part of Mr. Firoozmand's initial concept for this product as early as 1988, that are described as features of the FORMAC Plus

chip in the May, 1990 patent applications were filed, and are fully described in the product datasheets as revised in the fall of 1991 were somehow taken out of the product for a brief time in early 1991, but put back in a few months later. That argument is based on speculation only. There is simply no evidence.

### 3. The Firoozmand Patents Are Not Limited to FDDI, and SUPERNET 2 Chipset Disclose Every Limitation of the Asserted Claims of the Parallel Tasking Patents

3Com attempts to avoid this invalidating prior art by raising a brand new and utterly baseless argument -- that "all of the asserted claims of the Parallel Tasking patents" require *Ethernet* network transceivers. Opp'n at 8. 3Com provides no support for this statement, because there is none. With the exception of claim 21 of the '872 patent and claim 28 of the '094 patent, there is no limitation whatsoever on the network protocol in any of the asserted claims. For example, claim 1 of the '459 patent refers simply to a "network transceiver." Likewise, none of claims 1 and 10 of the '872 patent nor claims 1, 9, 21, 39 and 47 specify any network protocol. Nowhere in the Court's claim construction Order are these claims so limited, and in fact 3Com never asked for such a restrictive interpretation. 3Com must not be permitted to avoid summary judgment by attempting to confuse the court with reference to non-existent claim limitations. Because claims are interpreted the same for infringement as for invalidity, the Court must disregard all of 3Com arguments regarding the supposed differences between FDDI and Ethernet protocols.

### (a) Firoozmand and the SUPERNET 2 Include the "Initiating Transmission" Limitation

3Com argues that the Firoozmand patents and the SUPERNET 2 chipset fail to meet the "initiating transmission" limitation in each of the asserted claims. Opp'n at 7. However, 3Com's argument is based entirely on the allegedly "fundamental differences" between adapters for FDDI networks and Ethernet network adapters. Opp'n at 7. That entire argument is irrelevant as a matter of law. With the exception of claims 28 of the '872 patent and claim 21 of the '094 patent, the asserted claims are not limited to Ethernet adapters. As such, any alleged distinction between these claims, the Firoozmand prior art and Ethernet adapters is irrelevant. This argument should therefore be disregarded. Moreover, as discussed below with respect to these two particular claims, 3Com's expert

opinion on these allegedly "radical differences" are demonstrably false.  As such, this limitation is literally present in the Firoozmand patents and the SUPERNET 2 chipset.

      **(b)**      **Firoozmand and the SUPERNET 2 Include the Bad Frame Signal Limitation of Claim 1 of the '872 Patent and Claim 21 of the '094 patent**

3Com's argument with respect to the "bad frame signal" is also utterly without basis in law or fact.  The "bad frame signal" is a requirement of Claim 1 of the '872 patent and claim 21 of the '094 patent.  3Com does not actually challenge the presence of this claim element in either the Firoozmand patents or the SUPERNET 2 chipset..  Opp'n at 13.  That is likely because its own expert expressly admitted as much:

> Q.  Dr. Williams, in the FDDI protocol, when a frame is aborted is there any
>
> information or signal going out on the communication medium?
>
> MR. KONRAD:  Object to the form.
>
> THE WITNESS:  ***There's a bad-frame signal supplied to the medium, yes***.

Declaration of Sean P. DeBruine in Support of Realtek's Reply in Support of Motion for Summary Judgment of Invalidity ("DeBruine Decl"), Ex. A (Williams Tr. at 174:24- 175:1 (emphasis added)).  In light of this sworn admission there can be no triable issue of fact.  *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1008 (9th Cir. 1998) ("party cannot create a triable issue of fact, and thus survive summary judgment, merely by contradicting his or her own sworn deposition testimony with a later declaration"); *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 543-44 (9th Cir. 1975) ("a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony").

Rather than directly contradict the admitted presence of this claim limitation in the prior art, 3Com somehow argues that the Firoozmand patents "Teach away" from the asserted claims.  That argument is irrelevant as a matter of law.  Realtek argues that these claims are anticipated, which 3Com does not genuinely challenge.  "Teaching away" is irrelevant to the anticipation analysis.  *Celeritas Techs., Ltd. v. Rockwell Int'l, Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998)**.**  This is just another example of 3Com's attempt to avoid the clear invalidity of its patent claims by raising legally irrelevant arguments.

(c)     **The Firoozmand Patents and SUPERNET 2 Disclose "Posting Status Information" as Required by Claim 10 of the '872 Patent and Claims 21 and 47 of the '094 Patent**

3Com's argument that Firoozmand and the SUPERNET 2 do not disclose posting status information similarly ignores the claim limitations as construed by this Court. There is no dispute that Firoozmand patents and the SUPERNET 2 chipset set an underrun bit, which can be read by the host. Firoozmand '872 and '094 Decl., ¶ 11. There is no dispute that this host-readable information may be used to optimize the threshold value. *Id.* Quite clearly a threshold value that results in repeated underrun conditions is not optimal. 3Com points to no evidence to the contrary. Rather, its expert opines that Firoozmand did not disclose "how to provide a host with enough information to change the threshold value based on real-time operating conditions." Williams Decl., ¶ 32. In other words, Dr. Williams reads the claim to require ***dynamic*** altering of the threshold value, that reading was opposed by 3Com and rejected by the this Court in its claim construction. Claim Construction Order at 11. Similarly, the Court expressly rejected Realtek's reading of the claims to require that the threshold value be altered more than once. *Id.* at 12-13. Again, because this opinion does not address the claim limitation in light of the Court's claim construction, it is irrelevant to the anticipation analysis.

(d)     **Firoozmand and the SUPERNET 2 Include the Network Interface Logic and Threshold Logic Limitations of Claim 1 of the '459 patent**

3Com argues that the evidence proffered by Realtek fails to establish the existence of the either the "network interface logic" or the "indication signal" limitations of claim 1 of the '459 patent in the Firoozmand patents or the SUPERNET 2 prior art. Opp'n. at 13-14. 3Com's argument with regard to the "network interface logic" is based on the false premise that the "network transceiver" required by this claim element is limited to *Ethernet* transceivers. Opp'n. at 13. Again, there is nothing in claim 1 that expressly limits the recited "network transceiver" to and "***Ethernet*** network transceiver." Claim 1 is limited 3Com fails to explain how that can be the case, since the very evidence cited by 3Com stands for the shows that these claim limitations are, in fact, disclosed in that prior art. As disclosed in the Firoozmand I patent, in response to a threshold determination the FORMAC Plus chip 120 generates the RDATA signal. In the preferred embodiment that signal is sent to the DMA controller 124. The DMA controller interfaces with the host and indicates to the host when there is data in the buffer memory to be transferred to the host. The description of DMA controller 124 confirms what one of

ordinary skill in the art would know – that the DMA controller communicates with the host CPU by asserting and de-asserting interrupt. Firoozmand '872 and '094 Decl., Ex. 1 at 12:25-31. With respect to the SUPERNET 2 chipset, after RDATA is asserted, a host acknowledge signal is returned that starts the transfer of data from the buffer to the host. As Mr. Firoozmand explained, there can be no such acknowledgement from the host without a first interrupt to the host. It is the interrupt that is acknowledged by the host signal. Cole Decl., Ex. 2 at 197-198. Thus, there is no genuine dispute that the Firoozmand patents and SUPERNET 2 chipset disclose both the "network interface logic" and the "indication signal" limitations.

Thus, there is no actual dispute that the RDATA signal is an indication signal and it is followed by an interrupt.

### 4. Firoozmand and the SUPERNET 2 Chipset Disclose CSMA/CD Networks, Invalidating Claim 28 of the '872 Patent and Claim 21 of the '094 Patent.

As discussed above, the alleged differences between FDDI networks and Ethernet networks are relevant only to claim 28 of the '872 patent and claim 21 of the '094 patent. Those claims, and only those claims, are limited to NICs designed for a Carrier Sense Multiple Access/Collision Detection ("CSMA/CD") networks. Firoozmand '872 and '094 Decl., Ex. 6 ('872) and 7 ('094). Ethernet is one form of a CSMA/CD network. 3Com argues that Firoozmand and the SUPERNET 2 chipset do not disclose CSMA/CD networks because they were conceived and designed for use in FDDI networks. This is not true with respect to the Firoozmand patents, which expressly state they apply to other network formats. With respect to the SUPERNET 2 chipset, this argument is irrelevant.

A prior art reference anticipates a claim of it discloses every element of the claim to one of ordinary skill in the art. As such, the relevant inquiry includes the words used by the reference and the knowledge of one skilled in the art. *In re Graves*, 69 F.3d 1147 (Fed. Cir. 1995), *cert. denied* 517 U.S. 1124 (1996). Thus a reference will anticipate where every element of the claim is disclosed, even if it then disparages the claimed invention. *Id.* Here, the Firoozmand patents expressly state that the FDDI implementation is nothing more than a preferred embodiment, and that the parallel tasking circuits and methods in that patent are applicable to "[v]arious types of network controller architectures . . . based on the network operating system employed and on other considerations." Firoozmand '872 and '094 Decl., Ex. 1 at 1:57-60. As such, Firoozmand I ('749) expressly teaches that it "has general

applicability in the field of framed or packet data manipulation" and it is **not limited** to FDDI

networks. *Id.* at 6:63-68. 3Com's characterization of these teachings as "boilerplate" is irrelevant.

That characterization can not and does not refute the teaching that the concepts disclosed in the

Firoozmand patents are "generally applicable" to networks using "frame[] or packet data." *Id.* 3Com

does not, and can not, refute the fact that CSMA/CD networks such as the Ethernet standard were a

very common network controller architecture that manipulated data in frames or packets. As such,

there is no issue of fact. As a matter of law the Firoozmand patents disclose the parallel tasking

features for use with CSMA/CD networks.

### 5. Using the SUPERNET 2 Parallel Tasking Features in an Ethernet Adapter Would Have Been Obvious.

3Com's attempt to differentiate Ethernet and FDDI network standards is relevant only to the

issue of whether the asserted claims of the parallel tasking patents would have been obvious in light of

the prior art. Again, there is no genuine issue of fact to support 3Com's argument to the contrary.

Based solely on the opinion of its expert, Dr. Williams, 3Com repeatedly argues that the FDDI

networks and Ethernet networks are "fundamentally different." However, that statement does not stand

up to even the most cursory inspection.

In support of this assertion 3Com and its expert, Dr. Williams, argue first that FDDI and

Ethernet use "different transmission media." Opp'n at 7; Williams Decl., ¶¶ 11-21. In particular, they

assert that FDDI uses optical fibers, while Ethernet uses copper cable. Williams Decl., ¶¶ 13-14. That

assertion is simply false and made without regard to any of the objective contemporaneous evidence of

record. First, this assertion simply ignores the 3Com's own patents, which are expressly disclosed as

applicable for use with any transmission media, including "coaxial cable, a twisted pair conductor, a

fiber optic, satellite, wireless or other communication medium. Firoozmand '872 and '094 Decl., Ex.6

('872) at 4:3-7 (emphasis added). FDDI networks could be implemented using either "fiber optic, or

copper twisted pair" as a transmission medium. *Id.*, Ex. 8 (Supernet datasheet) at RT008840 (citing

ANSI X3T9.5 FDDI standard); see also Firoozmand Rebuttal Decl., ¶ 4.

Next, 3Com asserts that transmission of data onto the physical medium (fiber or copper wire)

will not occur in an FDDI network unless the adapter has the "token." Opp'n at 8. While that is true,

this fact is neither relevant, nor does it differentiate the two network types. First, the asserted claims

do not require "immediate transmission" onto the physical medium. In fact, the claims refer to "initiating" that transfer, which connotes a number of steps that culminate in the actual transmission of the data. Again 3Com is arguing new claim limitations not in the Court's claim construction order and not in any way justified by the intrinsic evidence. For this reason alone this alleged difference may be disregarded. Even so, this alleged difference simply does not exist. In the FDDI environment, the first step in initiating transfer of data onto the physical medium is to check for the token. Firoozmand Rebuttal Decl., ¶ 4. If the token is present, transmission begins immediately. If the adapter does not have the token, it waits until it is received and then transmits. *Id.* In this there is no difference between FDDI and Ethernet. In Ethernet, the first step in initiating data transmission is to check the network for availability. *Id.* If access is granted, transmission begins immediately. If not, the adapter waits for the network to clear before data is put onto the medium. *Id.* Thus, in both cases the first step after transmission is initiated is to check whether data may be transmitted immediately. *Id.* There is simply no factual basis to argue any relevant differences between the two network standards.

Finally, 3Com's entire argument that one skilled in the art would consider the two standards incompatible is belied by the simple fact that, in order to achieve the increased speed demanded by users, the Ethernet standard adopted the FDDI encoding schemes and transceiver specification as the Ethernet standard. Firoozmand Rebuttal Decl., ¶ 5. Thus, Dr. Williams' opinions are unfounded. They can not, as a matter of law, raise any genuine issue of material fact. Based on the objective facts, as shown in 3Com's own patents and in the contemporaneous industry standard publications, there was little if any difference between the two network standards, and no differences that would teach away from using the parallel tasking inventions made by Firoozmand in a CSMA/CD network environment.

Thus, the facts, rather than Dr. Williams' objectively baseless opinion, disclose that there was no difference between the prior art and the claimed inventions. The Firoozmand patents contain an express suggestion to alter the SUPERNET 2 and to implement the Firoozmand patents in a CSMA/CD network environment. 3Com's alleged secondary considerations are insufficient to overcome this showing. First, 3Com fails to establish the required nexus between the any of the patent claims and the alleged commercial success. *See In re GPAC*, 57 F.3d 1573 (Fed. Cir. 1995). As such, the record is devoid of evidence as to what weight to give this evidence for any one of the many

different inventions in the asserted claims. In addition, 3Com fails to show that the commercial success is attributable to the patents at all, rather than cost ("the goal of the Vulcan project was to develop a ***very low cost adapter,***" Scherer Decl., ¶9) or the popularity of Ethernet networks over FDDI networks due to their lower cost. *Id.*, *see also* Firoozmand Decl., Ex. 9 (2/81 LAN article). 3Com presents no evidence to show that others attempted buy failed to make the invention or the alleged long-felt need in the industry. Finally, as discussed above 3Com's argument that Firoozmand "teaches away" from the invention or that the invention is counter to the conventional wisdom in the industry has no basis in fact. As such this attempted showing is insufficient to overcome Realtek's prima facie showing that the claims are, at a minimum, obvious.

### B.    Claim 26 of the '446 Patent Is Invalid Over the Osborne Patent

3Com's attempt to dispute the invalidity of claim 26 of the '446 patent in light of the Osborne prior art is similarly without basis. 3Com's argument ignores the fundamental premise that a prior art reference must be examined for its entire disclosure. It is error to limit the disclosure of a prior art patent to its preferred embodiment. *Arthrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1372 (Fed. Cir. 2005) (citing *Ultradent Prods., Inc. v. Life-Like Cosmetics, Inc.,* 127 F.3d 1065, 1068 (Fed. Cir. 1997). 3Com here invites just that error. It contends that the Osborne prior art discloses data segmentation by the host. Opp'n. at 16. While that citation is correct as far as it goes, it describes only one embodiment disclosed by Osborne. Elsewhere in the patent Osborne expressly states that frame segmentation occurs in the network interface controller (NIC). *See* Firoozmand '446 Decl., ¶ 8 (quoting Osborne '915 Patent at 20:8-14). 3Com does not dispute this disclosure, it simply ignores it. However, ignoring it does not make it go away, and does not raise an issue of fact. On the undisputed evidence, claim 26 of the '446 patent is anticipated as a matter of law.

### C.    Claim 1 of the '884 Patent Is Invalid Over the Boucher and Muller II Patents.

#### 1.    The Muller Patent Is Prior Art

As with the Firoozmand patents discussed above, the application for the Muller patent was filed before the application for the '884 patent. As such, it is presumed to be prior art. In order to overcome that presumption, 3Com bore the burden of coming forward with evidence sufficient to show either that 1) it has actually reduced the claimed invention to practice before the March 1, 1999 filing date of

the Muller application; or 2) that its inventors had conceived of the invention prior to the Muller application *and* its inventors were diligent in working to reduce the invention to practice from a time just before the Muller filing until their own reduction to practice. *Mahurkar*, 79 F.3d at 1576. 3Com has come forward with no evidence whatsoever to demonstrate the required diligence. Its opposition brief is silent on this issue. Because there is no evidence whatsoever to support a finding of diligence, Realtek is entitled to summary determination that the Muller patent is indeed prior art.

## 2.      The Muller Patent Discloses Every Limitation of Claim 1

3Com fails to raise any genuine issue with regard to the anticipation of claim 1 of the '884 patent in light of the Muller II patent. First, 3Com argues that Muller II does not disclose the "packet filter" limitation, citing its expert's declaration. Opp'n at 18; Williams Decl., ¶¶ 47-48. However, Dr. Williams has never before expressed or even hinted at such an opinion. In his expert report he nowhere addresses the "packet filter" limitation. DeBruine Decl., Ex. B. Similarly, while Dr. Williams did previously address the "second logic" element, the basis for his present opinion is not disclosed in his report. Rather, his new opinion that Muller does not disclose the "second logic" relies entirely on his new opinion that the "packet filter" is not met. Williams Decl., ¶ 49. Because this new basis for his opinion was not disclosed in his expert report, as required by Fed. R. Civ. P. 26(f) and this Court's scheduling order, and because Realtek is prejudiced by not being able to cross-examine Dr. Williams on those basis or prepare a rebuttal, paragraphs 47-49 of the Williams declaration should be stricken.

Even if allowed, this argument is yet another irrelevant straw man 3Com sets up and knocks down. Again, 3Com argues that its '884 patent is somehow limited to Ethernet networks. *Id.* Again, there is no such limitation in the patent or the claims and the claims have not been construed so narrowly. In fact, the patent states that its scope is for an adapter card for any "network or other communication channel." Neither 3Com nor its expert discusses the disclosure of the Muller II patent in light of the claim language as construed by the Court. Because the patent as limited as 3Com would have it, and because a comparison of a preferred embodiment of the patent, rather than the patent claim itself, to the prior art is irrelevant for an anticipation analysis, the Court must simply disregard 3Com's

entire argument. Realtek cites to evidence showing that every element of asserted claim 1, as construed by the Court, is disclosed in the Muller II prior art. Motion at 7; Firoozmand '884 Decl., ¶ ¶ 4-7. 3Com fails to rebut that showing, arguing only that the preferred embodiments of the two patents are different. That argument is insufficient to raise any genuine issue of fact. Therefore, summary judgment should be granted.

### 3. The Boucher Patent Discloses Every Limitation of Claim 1

The same is true of the Boucher prior art patent. Again, 3Com argues that Boucher does not disclose the processing of VLAN tags. Opp'n. at 19; Williams Decl., ¶ 50. Again, the "variant format" of data packets called out in the claim is not limited to VLAN tags. As such, the opposition fails to address the only relevant question. Realtek has established that Boucher does, in fact, process data packets having "variant formats" as actually required by the claim. Motion at 8-10; Firoozmand '884 Decl., ¶ ¶ 8-13. In the absence of any relevant argument or evidence to the contrary, summary judgment should therefore be granted on the Boucher prior art as well.

## III. CONCLUSION

For the reasons discussed above and in Realtek's Motions for Summary Judgment of Invalidity of the '872, '094, '459, '446 and '884 patents, the motions should be granted.

Dated: December 10, 2007   AKIN GUMP STRAUSS HAUER & FELD LLP


By:_____/s/_____
     Elizabeth H. Rader
Attorneys For Defendant
REALTEK SEMICONDUCTOR CORPORATION