IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| 3COM CORP, | No   C 03-2177 VRW |
| Plaintiff, | ORDER |
| v |  |
| REALTEK SEMICONDUCTOR CORP, |  |
| Defendant. |  |

The court has before it motions in limine filed by both parties. As the court writes principally for the parties, it will simply address seriatim certain issues raised in those motions, without laying out the full factual background of each of the motions.

I

3Com has moved to preclude Realtek from calling Chi-Lie Wang at trial. Chi-Lie Wang was originally identified by 3Com as a witness for his role as an inventor of the '446 patent. Since that

patent claim was invalidated on summary judgment, 3Com notified Realtek that it no longer intended to have him appear at trial, but Realtek continues to seek Mr Wang's appearance.

3Com argues that the only reason Realtek could be seeking Mr Wang's appearance is to introduce to the jury the "irrelevant, confusing and prejudicial cause of the Court's prior sanction order," which is the subject of another of 3Com's motions in limine.

It appears that Mr Wang, who was involved in the testing of accused products in the early stages of this litigation, may be able to offer testimony that supports Realtek's argument that 3Com could not have given actual notice of infringement to Realtek by its January 27, 2003 letter because at that time, even 3Com was unclear as to which products allegedly infringed its patents.

3Com's motion in limine to preclude Realtek from calling Chi-Lie Wang at trial is DENIED.

II

3Com has moved to preclude Realtek from proffering witnesses first disclosed in its witness list. There are three individuals on Realtek's trial witness list that were not previously disclosed: Sun-Chien "Alex" Chiu (president of Realtek); Yee-Wei Huang (head of international marketing for Realtek); unnamed (AMD Custodian of Records).

3Com argues that none of these witnesses was identified in Realtek's initial disclosures or discovery responses as a witness with percipient knowledge of the issues. 3Com argues that failure to identify these witnesses early on was a violation of

FRCP 26, and that FRCP 37(c) precludes Realtek from now using these witnesses at trial.

Realtek counters that Messrs Chiu and Huang, the Realtek employees, will simply provide background information and introduce the company. This is a notably weak justification for calling these witnesses. Although the court declines to grant 3Com's motion in limine regarding Messrs Chiu and Huang, Realtek will have to provide a more substantial justification for their testimony.

As for the AMD Custodian of Records, Realtek argues that calling this witness would be unnecessary but for 3Com's hearsay and authentication challenges to certain documents, which 3Com has refused to settle by stipulation. The parties should either resolve this informally or take it up with the court at trial.

3Com's motion in limine to preclude Realtek from proffering witnesses first disclosed in its witness list is DENIED WITHOUT PREJUDICE.

III

3Com has moved to preclude Realtek from proffering witnesses first disclosed on the final day of fact discovery. This motion in limine now applies to two witnesses, as Realtek has removed Basil Alwan from its witness list.

3Com argues that because Realtek waited until the last day of the fact discovery period to disclose the names of two witnesses (Manohar Mahavadi and Gururaj Fingh a/k/a Gururaj Sing) with knowledge of the alleged AMD prior art, 3Com was unable to serve subpoenas on these non-parties before the discovery cut-off date.

3

Realtek offers mediocre justification for its late notice, and notes that it technically provided timely notice. More convincingly, Realtek notes that 3Com never requested Realtek's agreement or leave of court to subpoena those witnesses in the nearly five months since discovery cut-off.

3Com's motion in limine to preclude Realtek from proffering witnesses first disclosed on the final day of fact discovery is DENIED.

IV

3Com has moved to preclude Realtek from referring to or introducing the court's May 5, 2005 order and from proffering evidence relating thereto. 3Com argues that there is no probative value to the May 5, 2005 order (Doc #251), several declarations related to it and the adverse trial testimony of former 3Com employee Chi-Lie Wang. 3Com argues that the order, in which 3Com was sanctioned for conduct relating to the testing of products accused in preliminary infringement contentions against D-Link, is highly prejudicial.

Realtek appears to argue that the order is relevant because it will help Realtek argue that the January 27, 2003 letter from 3Com to Realtek could not have provided actual notice of infringement to Realtek because at that time even 3Com was confused about which products infringed its patents.

Any probative value of the order appears to be substantially outweighed by the danger of unfair prejudice and confusing the jury.

Nonetheless, the facts that led to the order are relevant

4

to whether 3Com knew which Realtek products were allegedly infringing at the time it purportedly notified Realtek of infringement.  The discovery dispute that led to sanctions involved 3Com submitting testing data for D-Link products that contained Realtek chipsets, even though those D-Link products were not the ones identified in 3Com's preliminary infringement contentions. Realtek should be able to introduce this evidence to the jury without using the order itself or the fact of sanctions.

3Com's motion in limine to preclude Realtek from referring to or introducing the court's May 5, 2005 order and from proffering evidence relating thereto is GRANTED only as to the order itself and the fact of sanctions against 3Com.

V

3Com has moved to preclude Realtek from proffering certain opinion testimony of Dr Alan J Cox.  Dr Alan J Cox is Realtek's damages expert, who will rebut 3Com's damages expert.

3Com argues first that Dr Cox relies on undisclosed methodology and data in his calculation of the reasonable royalties that Realtek hypothetically would pay for the patents-in-suit, in violation of FRCP 26(a)(2) and 37(c)(1) and FRE 702.  Dr Cox's opinions are based on his calculations of Realtek's "operating profit margin."  In addition, 3Com argues that Dr Cox, an economist, opines on technical matters about which he is not competent to testify, including the effect on the reasonable royalty of patent-stacking and the availability of non-infringing substitutes for the patents-in-suit.

Realtek responds first that Dr Cox did disclose the basis

for his calculations of a hypothetical operating margin (Realtek's annual reports), and notes that to the extent the data already provided is not fully clear, 3Com will have the opportunity to cross-examine Dr Cox and the jury will determine his reliability. As to 3Com's second argument, Realtek responds that Dr Cox's opinions regarding the potential effect of patent stacking and non-infringing alternatives do not require any technical expertise; his opinion merely serves to illustrate the potential effect of these important factors – which 3Com's expert, Dr Napper, did not include in his analysis – on reasonable royalty rates.

    3Com's motion in limine to preclude Realtek from proffering certain opinion testimony of Dr Alan J Cox is DENIED.

### VI

    3Com has moved to preclude Realtek from proffering the opinion testimony of Farzin Firoozmand. Mr Firoozmand is Realtek's expert who has submitted expert reports on the prior art to and invalidity of the patents-in-suit.

    3Com makes several arguments that all or part of his testimony should be excluded. First, 3Com argues that Mr Firoozmand's opinions as to anticipation and obviousness are impermissible legal conclusions; second, 3Com argues that his testimony regarding conception and reduction to practice are impermissible legal conclusions; third, 3Com argues that Mr Firoozmand's opinion as to what is prior art is an impermissible legal conclusion and is based on unreliable evidence (such as determining the sales date of a prior art reference from a date printed on a preliminary datasheet and using a 1994 datasheet to

6

opine on how a prior art reference worked in 1991).

3Com also argues that Mr Firoozmand's opinions are not based on claim definitions established in the Revised Joint Claim Construction and Prehearing Statement.

Regarding 3Com's allegations that various portions of Mr Firoozmand's testimony are impermissible legal conclusions, Realtek argues that they are permissible opinions about ultimate facts. See FRE 704(a). Realtek also argues that Mr Firoozmand's opinions regarding prior art references are based on reliable information (for instance, Mr Firoozmand's use of the 1994 datasheet was reliable because, as the architect of the prior art reference in question, Mr Firoozmand was qualified to testify that the datasheet described the same product he invented prior to 1991).

Regarding 3Com's argument that Mr Firoozmand's opinions were not based on the correct claim definitions, Realtek argues that 3Com bases its argument on Mr Firoozmand's deposition responses and that Mr Firoozmand simply didn't know what 3Com's attorneys were talking about during his deposition. Realtek notes that Mr Firoozmand did state that he relied on the court's claim construction order. Realtek notes that 3Com does not allege that Mr Firoozmand's understanding of any claim term differs from that found in the Revised Joint Claim Construction and Prehearing Statement.

All issues pertaining to Mr Firoozmand can be dealt with by the parties during his trial testimony. 3Com's motion in limine to preclude Realtek from proffering the opinion testimony of Farzin Firoozmand is DENIED.

# VII

3Com has moved to preclude Realtek from referring to or introducing evidence relating to patents and claims no longer asserted. During the course of litigation, 3Com dismissed with prejudice claims against Realtek relating to two patents (the '776 and '625 patents). See Doc ##374 and 389. In addition, 3Com has stated that it will not argue certain claims of the '094 patent at trial, but those claims have not been removed from the case by stipulation and 3Com has not covenanted not to sue on them in the future.

3Com argues that any reference to voluntarily withdrawn claims could improperly lead the jury to think that 3Com's claims are weak generally.

Realtek argues that it has no reason to mention the '776 and '625 patents, but should not be put to any extra effort to hide the fact that 3Com once asserted those claims. As for the '094 patent claims, since 3Com may assert them at any time in the future, Realtek has the right to try its counterclaims for declaratory judgment of invalidity and non-infringement of those claims.

3Com's motion in limine to preclude Realtek from referring to or introducing evidence relating to patents and claims no longer asserted is GRANTED with respect to the dismissed '776 and '625 patent claims and DENIED with respect to the non-asserted '094 patent claims.

# VIII

3Com has moved to preclude Realtek from referring to or

introducing evidence relating to 3Com's previous claim for lost profits. 3Com argues that its originally asserted claim for lost profits due to infringement should not be referred to during trial because it has no probative value and may be prejudicial in that its dismissal could lead the jury to believe 3Com's claims are weak generally.

Realtek states that it would agree not to mention 3Com's withdrawal of the lost profit claims if 3Com refrains from alleging that its failure in its networking business was caused by Realtek's infringement.

Given that lost profits are no longer claimed, it appears that neither 3Com's withdrawal of the claim nor Realtek's status as a low-cost provider that undercut and shrank 3Com's network interface card business are relevant. 3Com's motion in limine to preclude Realtek from referring to or introducing evidence relating to 3Com's previous claim for lost profits is GRANTED.

IX

3Com has moved to preclude Realtek from referring to settlement of claims between 3Com and D-Link in this and the related action. 3Com argues that introduction of its settlement agreements with D-Link in this and a related action would violate FRE 408 if offered to prove non-infringement or invalidity, and would violate FRE 403 if offered for any other reason.

Realtek argues that it only seeks to introduce the agreement because it provides an example of a licensing agreement probative of the reasonable royalty value of 3Com's patents that was not included in the analysis of 3Com's damages expert.

9

3Com's motion in limine to preclude Realtek from referring to settlement of claims between 3Com and D-Link in this and the related action is GRANTED.  The jury will be directed to disregard reference to any settlement of claims involved in this litigation.

### X

3Com has moved to preclude Realtek from referring to or introducing evidence relating to the Taiwan FTC proceeding.  3Com argues that any reference to the Taiwan FTC proceeding, which resulted in an approximately $75,000 fine against 3Com for expressing to Realtek's customers its belief that Realtek's products infringed 3Com's United States patents, would be highly prejudicial and not probative.

Realtek argues that it intends only to introduce the findings of fact in the FTC decision, and that courts have consistently admitted foreign official and administrative findings as evidence for trial.  Realtek does not deny that introducing the fact that a foreign court had fined 3Com for making the same charges it brings in this case would be highly prejudicial.

3Com's motion in limine to preclude Realtek from referring to or introducing evidence relating to the Taiwan FTC proceeding is GRANTED.

### XI

3Com has moved to preclude Realtek from introducing evidence or relying on documents produced after the September 24, 2007 fact discovery deadline.  3Com argues that a number of

documents listed in Realtek's trial exhibit list were not produced before the September 24, 2007 close of fact discovery or were described with insufficient specificity for 3Com to determine whether they had been produced.  3Com attempted to communicate with Realtek counsel about these exhibits, but Realtek counsel resolved the issues regarding only some of the documents.

Realtek responds that one of the documents targeted by 3Com's motion in limine was produced and that most of the rest are publicly available articles that were cited in Realtek's expert reports and are as easily available to 3Com as they are to Realtek. Realtek, however, does not respond to 3Com's allegations regarding exhibits 221 and PH-01 - PH-11, which appear to be ten photographs of Realtek products and two photographs of an "Excellence in Design" plaque awarded to one of Realtek's witnesses.

While there are perhaps grounds for a motion in limine as to these eleven exhibits, it does not appear that 3Com would be prejudiced by their use at trial (3Com has not argued that it would be), so exclusion is not required by FRCP 37(c).  3Com's motion in limine to preclude Realtek from introducing evidence or relying on documents produced after the September 24, 2007 fact discovery deadline is DENIED.

XII

Realtek has moved to preclude 3Com from introducing orders on summary judgment or issuing any press release concerning same until after trial.  Realtek's motion is based on its assertion that mentioning the orders to the jury (or to the public) in any way would unfairly prejudice it.

11

This motion in limine is largely mooted by the court's decision not to file an unsealed version of the summary judgment orders until after trial. To the extent that Realtek is requesting that the court's findings regarding summary judgment of infringement not be mentioned to the jury at all, the motion in limine is mooted by the court's decision to instruct the jury regarding its findings of infringement of certain claims.

Realtek's motion in limine to preclude 3Com from introducing orders on summary judgment or issuing any press release concerning same until after trial is DENIED AS MOOT.

XIII

Realtek has moved to preclude 3Com from offering testimony of Andrew W Verhalen. 3Com seeks to use the testimony of Mr Verhalen, the general manager of 3Com's Network Adapter Division in the late 1980s and early 1990s, to corroborate the inventor's testimony regarding the dates of conception and reduction to practice dates of the '459, '872 and '094 patents and to provide background testimony about those patents.

Realtek argues that the testimony should be excluded because 3Com identified Mr Verhalen as a person having knowledge of these issues on the last day of fact discovery, leaving Realtek no time to depose him.

3Com argues that Realtek has long been on notice that Mr Verhalen was a person with percipient knowledge concerning conception of the inventions at issue; for example, from the June 2006 deposition testimony of inventor Paul Sherer. More importantly, 3Com argues that the identification of Mr Verhalen at

**12**

the end of the discovery period was caused by Realtek's failure to comply with its own discovery obligations.  According to 3Com, Realtek submitted Mr Firoozmand's invalidity reports just two weeks before the close of fact discovery.  These reports were Realtek's first assertion of the invalidity theories that necessitated Mr Verhalen's testimony.  Finally, it appears that Realtek never requested agreement from 3Com or leave of court to conduct a deposition of Mr Verhalen after the close of fact discovery.

Realtek's motion in limine to preclude 3Com from offering testimony of Andrew W Verhalen is DENIED.

XIV

Realtek has moved to preclude certain expected testimony of Brian Napper.  Mr Napper is 3Com's damages expert.

Realtek challenges Mr Napper's calculation of the range of numbers used to calculate the number of infringing Realtek products imported into the United States as using unreliable principles and methods and insufficient data, in violation of FRE 702.  An estimate was necessary because Realtek does not ship directly to the United States, but to other foreign manufacturers; as such, it keeps no records of the ultimate destination of its products.  Realtek specifically challenges two methodologies used by Mr Napper.

The method used by Mr Napper to calculate the lower limit of his damages range was to look at the two commodity categories in which the infringing products were sold, calculate the percentage of Taiwan and Hong Kong exports in these categories that are sold into the United States and then apply these weighted percentages to

13

Realtek's worldwide sales of the infringing products.

Realtek argues that this methodology is unreliable because it: (1) assumes that Realtek exports all of its product; (2) double-counts Realtek products that are exported from Taiwan to Hong Kong and then imported to the United States; (3) uses commodities categories that include sub-categories which do not include Realtek products.

3Com argues that Mr Napper accounted for non-export of some Realtek product and did not double-count product exported to the United States through Hong Kong. It notes that at Mr Napper's deposition, Realtek questioned Mr Napper about his use of the broader categories, and he replied that he felt the broader categories to be the most reliable and that he had tried the calculation using only the sub-categories, but that this resulted in a much higher percentage estimate of product sold into the United States. 3Com also notes that Realtek's expert conceded that he was aware of others using a similar approach to estimate damages.

To derive the upper end of the range for the royalty base, Mr Napper analyzed two license agreements for the patents-in-suit that 3Com had negotiated with two other Taiwanese semiconductor manufacturers.

Realtek argues that Mr Napper had no basis for assuming that Realtek was similar to these other manufacturers. But Realtek's challenge to Mr Napper's testimony can be adequately developed in cross-examination. Realtek's motion in limine to preclude certain expected testimony of Brian Napper is DENIED.

**14**

## XV

Realtek has moved to preclude Dr Michael Mitzenmacher from testifying about theories not set out in 3Com's final infringement contentions.  Realtek's basic argument is that 3Com's infringement expert, Dr Mitzenmacher, impermissibly changed his opinions from 3Com's final infringement contentions (FIC) to his expert report to his declarations in support of opposition to summary judgment.

Specifically, Realtek argues that in the FIC, 3Com identified the RX FIFO as the buffer element of claim 1 of the '884 patent.  Then, in his expert report, Dr Mitzenmacher claimed that the serial-to-parallel converter was also the buffer element, and finally, in his declaration in support of opposition to summary judgment of non-infringement of the '884 patent, Dr Mitzenmacher claimed that the serial-to-parallel converter and RX FIFO combined were the claimed buffer.

Realtek also argues that Dr Mitzenmacher impermissibly added an opinion, unseen before, about the level of ordinary skill in the art of network interface cards, and that in opposing Realtek's motion for summary judgment of non-infringement of the '459 patent, he impermissibly offered a new opinion of the meaning of "generating an indication signal to the host processor."

Realtek's position regarding Dr Mitzenmacher's testimony can be adequately developed in cross-examination.  Realtek's motion in limine to preclude Dr Michael Mitzenmacher from testifying about theories not set out in 3Com's final infringement contentions is **DENIED**.

15

## XVI

Realtek has moved to preclude Dr Tim Williams from offering opinions not previously disclosed. Realtek alleges that Dr Williams, 3Com's validity expert, offered opinions in his declaration in support of 3Com's opposition to summary judgment of invalidity of the '459, '872 and '094 patents that he did not offer in his expert rebuttal report or his deposition. This, Realtek argues, is a FRCP 26(a)(2)(B) violation entitling Realtek to exclusion of the opinions from evidence under FRCP 37(c)(1).

Specifically, Realtek argues that Dr Williams offered at least three new opinions regarding differences between the Firoozmand I and II and Supernet 2 chipset prior art references and the '459, '872 and '094 patents.

3Com's response is that the opinions in Dr Williams's declaration were merely expansions and more detailed restatements of earlier stated opinions. Realtek's motion in limine to preclude Dr Tim Williams from offering opinions not previously disclosed is **DENIED**.

## XVII

Realtek has moved to preclude testimony from Annette Davis regarding the marking of 3Com patents. Realtek argues that Annette Davis, a former 3Com employee, is a surprise witness on 3Com's marking policies. It notes that, although Ms Davis was a 30(b)(6) witness on marketing and other general topics, Richard Baker, 3Com's Director of IP, was the designated witness on marking. Baker testified that he knew of no policy on marking, and 3Com only came forward with Ms Davis's testimony in response to

16

1 Realtek's motion for partial summary judgment limiting damages for
2 failure to notify.

3 　　　　3Com argues that Ms Davis is not a surprise witness
4 because she was identified in its initial disclosures; this
5 disclosure only identifies her as someone who has generally
6 relevant knowledge, not knowledge relevant to marking.
7 Nonetheless, Ms Davis has been made available for deposition and
8 Realtek has deposed her.  Realtek may explore the scope of her
9 knowledge at trial with the information Realtek was able to develop
10 at Ms Davis's deposition.  Realtek therefore suffers no prejudice
11 and Realtek's motion in limine to preclude testimony from Annette
12 Davis regarding the marking of 3Com patents is DENIED.

## XVIII

15 　　　Realtek has moved to preclude 3Com from presenting new
16 evidence regarding the marking of 3Com products.  This motion in
17 limine relates to the table of "Sales for Products for Which a
18 Marking Sample Has Been Located."  The table was submitted as an
19 exhibit in support of 3Com's opposition to partial summary judgment
20 limiting damages.  Doc #496, Exh 5.
21 　　　　3Com represents that it has produced all evidence of
22 marking within many of the families listed on the table.
23 　　　　3Com represents that it has produced all evidence of
24 marking that it intends to produce, and that no new evidence will
25 be produced at trial.  Realtek's motion in limine to preclude 3Com
26 from presenting new evidence regarding the marking of 3Com products
27 is DENIED AS MOOT.

28

**17**

### XIX

Realtek has moved to preclude labeling specifications exhibiting marking of products not at issue. Realtek argues that 3Com produced nine labeling specifications for five families of 3Com products that were not listed in its FIC. Realtek further argues that there is no evidence that these specifications were ever actually followed.

3Com responds that it may have produced labeling specifications for products not at issue, and represents that it does not intend to use them at trial. To the extent that Realtek objects to the introduction of label specifications generally because there is no evidence that a label conforming to those specifications was ever attached to a 3Com product, 3Com argues that this is a foundational objection better dealt with at trial.

Realtek's motion in limine to preclude labeling specifications exhibiting marking of products not at issue is **DENIED AS MOOT**.

### XX

Realtek has moved to preclude the offering of or reference to Realtek's superseded responses to 3Com's requests for admission (RFAs). On January 24, 2008, the court granted Realtek's motion to amend 16 of its RFAs. Realtek argues that its original responses to those RFAs should be excluded as irrelevant. Realtek argues further that even if they are relevant, the original responses should be excluded under FRE 403 because they are unfairly prejudicial, would mislead or confuse the jury and would be a waste of time.

3Com argues that it does not intend to offer the original admissions as binding admissions, but as evidence that, contrary to expected testimony from Realtek's expert, Dr Rubin, a person of ordinary skill in the art would understand that there is no substantive difference between Realtek's original responses and its amended responses. 3Com argues that this is not unfairly prejudicial to Realtek, but a natural consequence of its own shifting positions. The court agrees. Realtek's motion in limine to preclude the offering of or reference to Realtek's superseded responses to 3Com's requests for admission is DENIED.

IT IS SO ORDERED.

VAUGHN R WALKER
United States District Chief Judge